UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAVID C. LETTIERI,

                                 Plaintiff,

                                                                    3:23-CV-1099
                    v.                                              (GLS/ML)

FED. BUREAU OF INVESTIGATION,

                                 Defendant.
_____

APPEARANCES:                                        OF COUNSEL:


DAVID C. LETTIERI
   *Pro Se* Plaintiff
Niagara County Jail
5526 Niagara Street Exd.
Lockport, New York 14094

MIROSLAV LOVRIC, United States Magistrate Judge


## <u>ORDER and REPORT-RECOMMENDATION</u>

The Clerk has sent a *pro se* complaint in the above captioned action together with an

application to proceed *in forma pauperis* ("IFP") filed by David Lettieri ("Plaintiff") to the Court

for review.  (Dkt. Nos. 1, 2, 7.)  For the reasons discussed below, I grant Plaintiff's *in forma*

*pauperis* application and recommend that Plaintiff's Complaint be dismissed in its entirety

without leave to amend.  (Dkt. Nos. 1, 2, 7.)

## I.     BACKGROUND

### A.     Procedural History

Plaintiff commenced this action on August 30, 2023, by the filing of a complaint and

motion for leave to proceed IFP.  (Dkt. Nos. 1, 2.)  On September 1, 2023, Senior United States

District Judge Gary L. Sharpe administratively closed this action with an opportunity to comply with the filing fee.  (Dkt. No. 3.)  Judge Sharpe directed Plaintiff to, within thirty days either (1) pay the filing fee in full, or (2) submit a completed IFP application with a completed and signed inmate authorization form.  (*Id*.)  Judge Sharpe's order of September 1, 2023, was served on Plaintiff via regular mail.  (*Id*.)  On September 12, 2023, the Court received as undeliverable Judge Sharpe's order dated September 1, 2023.  (Dkt. No. 4.)

On October 4, 2023, Plaintiff filed a letter stating that he did not receive an inmate authorization form.  (Dkt. No. 5.)  On October 5, 2023, the Court directed the Clerk of the Court to mail Plaintiff a blank inmate IFP application and inmate authorization form.  (Dkt. No. 6.)

On October 30, 2023, Plaintiff filed an inmate authorization form.  (Dkt. No. 7.)  On November 7, 2023, the Clerk of the Court was directed to reopen this action and restore it to the Court's active docket.  (Dkt. No. 8.)  On November 13, 2023, the undersigned issued an order to show cause why this action should not be transferred to the United States District Court for the Western District of New York.  (Dkt. No. 9.)  On November 29, 2023, Plaintiff filed a response to the Court's order to show cause.  (Dkt. No. 10.)

## B.    Complaint

Construed as liberally[1] as possible, Plaintiff's Complaint appears to allege that his civil rights were violated by Defendant Federal Bureau of Investigations ("Defendant").  (*See generally* Dkt. No 1.)  More specifically, Plaintiff alleges that on November 5, 2020, Defendant came to his house—which, according to Plaintiff's response to the Court's order to show cause, is located in Harpursville, New York (Dkt. No. 10 at 1)—with a search warrant.  (Dkt. No. 1 at

---

[1]    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

12.)  The Complaint alleges that the search warrant permitted a search of Plaintiff's house and vehicle but did not include the sheds located on the property.  (*Id*.)  Plaintiff alleges that two of Defendant's agents entered his brown shed and seized "a bunch of cell phones."  (*Id*.)

  Based on these factual assertions, Plaintiff appears to assert the following two claims: (1) a claim that his right to be free from an unlawful search and seizure pursuant to the Fourth Amendment and *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), was violated; and (2) a claim that his due process rights pursuant to the Fifth Amendment and *Bivens*, 403 U.S. 388, was violated.  (Dkt. No. 1 at 4.)  As relief, Plaintiff seeks the return of his property and $1,000,000 in compensatory damages.  (*Id*. at 5.)

  Plaintiff seeks leave to proceed IFP.  (Dkt. No. 2.)

## II.    PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

  "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged."  *Cash v. Bernstein*, 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[2]  "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate

---

[2]      Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(g).  The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service.  *See* http://pacer.uspci.uscourts.gov.  It does not appear from that review that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.  However, the Court notes that Plaintiff did accumulate his third strike on September 21, 2023, after the filing of this action.  *Lettieri v. Broome Cnty. Humane Society*, 20-CV-7777, 23-CV-7830, 2023 WL 8003478, at *1 (E.D.N.Y. Nov. 17, 2023).

accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, the Court finds that Plaintiff has submitted a completed IFP application which has been certified by an appropriate official at his facility (Dkt. No. 2), and which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization required in the Northern District. (Dkt. No. 7.)

Accordingly, Plaintiff's application to proceed with this action IFP is granted. (Dkt. No. 2.)

## III. LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

"[E]xtreme caution should be exercised in ordering sua sponte dismissal of a . . . complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).  The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee).  "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based

on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## IV.    ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

"It is well-settled that a [42 U.S.C.] § 1983 claim does not lie against the federal government, its agencies, or employees." *Feldman v. Lyons*, 852 F. Supp. 2d 274, 278 (N.D.N.Y. 2012) (collecting cases). In 1971, in *Bivens*, "the Supreme Court recognized an implied private cause of action for damages against federal officers who violate a citizen's constitutional rights." *Feldman*, 852 F. Supp. 2d at 278. "*Bivens* actions, although not precisely parallel, are the federal analog to § 1983 actions against state actors." *Id*. (citing *Chin v. Bowen*, 833 F.2d 21, 24 (2d Cir. 1987)). Yet, "[b]ecause implied causes of action are disfavored, the Court has been reluctant to extend *Bivens* liability 'to any new context or new category of defendants." *Krul v. Brennan*, 501 F. Supp. 3d 87, 101 (N.D.N.Y. 2020) (Hurd, J.) (quotation marks omitted) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).

Importantly, *Bivens* remedies, in the few circumstances under which they are available, are only available against federal agents in their individual capacities. A *Bivens* remedy is unavailable against a federal agency or federal agents in their official capacities. *See Rivera v. Fed. Bureau of Investigation*, 16-CV-0997, 2016 WL 6081435, at *4 (N.D.N.Y. Sept. 13, 2016) (citation omitted) (Dancks, M.J.) ("The only remedy available in a *Bivens* action is an award of monetary damages from defendants in their individual capacities."), *report and recommendation*

*adopted*, 2016 WL 6072392 (N.D.N.Y. Oct. 17, 2016) (Mordue, J.). This is "[b]ecause an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived." *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994); see *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *Mikhaylov v. United States*, 29 F. Supp. 3d 260, 272-73 (E.D.N.Y. 2014) (citations omitted) ("*Bivens* merely permits constitutional tort claims for monetary relief against federal agents in their personal capacities. Similar claims, however, may not be brought against the United States, federal agencies, or, by the same token, federal agents in their official capacities."); *see also Ross v. Dempsey Unif. & Linen Supply*, 16-CV-1208, 2016 WL 8652438, at *7 (N.D.N.Y. Dec. 29, 2016) (Stewart, M.J.), *report and recommendation adopted*, 2017 WL 1207832 (N.D.N.Y. Mar. 31, 2017) (Mordue, J.), *aff'd*, 739 F. App'x 59 (2d Cir. 2018) (summary order); *Bullock v. DSS, CPS, Comm'r*, 17-CV-1302, 2018 WL 1115218, at *7 (N.D.N.Y. Jan. 18, 2018) (Dancks, M.J.), *report and recommendation adopted*, 2018 WL 1111059 (N.D.N.Y. Feb. 26, 2018) (Sannes, J.).

As a federal agency, Defendant cannot be liable under *Bivens*. As a result, I recommend that Plaintiff's *Bivens* claims against Defendant be dismissed.

## V.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem

with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."
*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend."  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[3]

In this case, because "[t]he problem[s] with [plaintiff's] causes of action [are] substantive[,] better pleading will not cure [them,]" and any attempt to amend would, therefore, be futile.  *Cuoco*, 222 F. 3d at 112.; *see, e.g., Mahmood v. United States Gov't*, 20-CV-0207, 2020 WL 3965125, at *2 (N.D.N.Y. Mar. 17, 2020) (Stewart, M.J.) ("As such, his claims against the United States should be dismissed with prejudice."), *report and recommendation adopted sub nom.*, 2020 WL 1808206 (N.D.N.Y. Apr. 9, 2020) (D'Agostino, J.); *Praileau v. United States*, 18-CV-1196, 2018 WL 5811426, at *3 (N.D.N.Y. Nov. 6, 2018) (Stewart, M.J.) (recommending the dismissal of claims against the United States and its agencies with prejudice because such claims were barred by sovereign immunity), *report and recommendation adopted*, 2019 WL 422528 (N.D.N.Y. Feb. 4, 2019) (D'Agostino, J.); *Moore v. Samuel S. Stratten Veterans Admin. Hosp.*, 16-CV-0475, 2016 WL 3659909, at *1 (N.D.N.Y. June 30, 2016) (Kahn, J.) (dismissing

---

[3]     *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

claims against agency of the United States with prejudice and without leave to amend). Because Plaintiff's *Bivens* claims are barred by sovereign immunity, no change to his pleading will cure this bar. *Cox v. New York State*, 2023 WL 2770368, at *10 (N.D.N.Y. Apr. 4, 2023) (Hummel, M.J.), *report and recommendation adopted*, 2023 WL 6862505 (N.D.N.Y. Oct. 18, 2023) (D'Agostino, J.).

As a result, I recommend that Plaintiff's Complaint be dismissed in its entirety without leave to amend.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court (1) provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 7) and notify that official that Plaintiff has filed this action and is required to pay the Northern District of New York the entire statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and (2) provide a copy of Plaintiff's inmate authorization form (Dkt. No. 7) to the Financial Deputy of the Clerk's office; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[4]

---

[4]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[5]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).


Dated: December  15 , 2023
       Binghamton, New York


Miroslav Lovric
U.S. Magistrate Judge

---

[5]      If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,

v.

BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION* [1]

PITMAN, United States Magistrate Judge.

**\*1** TO THE HONORABLE BARBARA S. JONES, United States District Judge,

## I. *Introduction*

By notice of motion dated March 4, 2010 (Docket Item 11), defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke plaintiff's *in forma pauperis* ("IFP") status on the ground that plaintiff has previously had at least three Section 1983 actions dismissed as frivolous, malicious or failing to state a claim upon which relief could be granted, and has not shown that he is in imminent danger of serious physical injury. Defendant further seeks an order directing that the action be dismissed unless plaintiff pays the full filing fee within thirty (30) days. For the reasons set forth below, I respectfully recommend that defendant's motion be granted.

## II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New York State Department of Correctional Services, commenced this action on or about January 12, 2009 by submitting his complaint to the Court's Pro Se office. Plaintiff alleges, in pertinent part, that he has "a non-healing ulcer that is gane green [*sic* ]" and that defendant Bernstein "did not want to treat the ulcer right" (Complaint, dated March 3, 3009 (Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants —Dr. Bernstein and Dr. Finkelstein. The action was dismissed as to Dr. Finkelstein because the complaint contained no allegations whatsoever concerning Dr. Finkelstein (Order dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr. Bernstein—filed the current motion. Plaintiff failed to submit a response. Accordingly, on August 20, 2010, I issued an Order advising plaintiff that if he wished to oppose the motion, he must submit his opposition by September 15, 2010 and that after that date I would consider the motion fully submitted and ripe for decision (Order dated August 20, 2010 (Docket Item 15)). The only submission plaintiff has made in response to my Order is a multi-part form issued by the New York State Department of Correctional Services entitled "Disbursement or Refund Request." [2] By this form, plaintiff appears to request that the New York State Department of Correctional Services pay the filing fee for this action. The form is marked "Denied."

## III. *Analysis*

28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged. Although an indigent, incarcerated individual need not prepay the filing fee at the time at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v. City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent abuse of the judicial system by inmates, paragraph (g) of this provision denies incarcerated individuals the right to proceed without prepayment of the filing fee if they have repeatedly filed meritless actions, unless such an individual shows that he or she is in imminent danger of serious physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility,

brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

- In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson[3] v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at *1–*2.

- In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had

been dismissed on the merits. 2008 WL 3836387 at *1, *7.

- In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM) (RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at *1–*2.

- Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

*3  As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009). [4]

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in

imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury. [5]

## IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therefore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

## V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS *WILL* RESULT IN A WAIVER OF OBJECTIONS AND *WILL* PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 5185047

## Footnotes

1    At the time the action was originally filed, the Honorable Leonard B. Sand, United States District Judge, granted plaintiff's application for *in forma pauperis* status based on plaintiff's *ex parte* submission (Docket Item 1). Although the present application seeking to revoke plaintiff's *in forma pauperis* status is non-dispositive, I address it by way of a report and recommendation to eliminate any appearance of a conflict between the decision of a district judge and that of a magistrate judge.

2    Plaintiff sent this form directly to my chambers, and it has not been docketed by the Clerk of the Court. The form will be docketed at the time this Report and Recommendation is issued.

3    It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies

himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

4    Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

5    Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

> Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

*Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4.

Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

---

**End of Document**                                            © 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.   4

KeyCite Yellow Flag - Negative Treatment

Distinguished by   U.S. v. $6,787.00 in U.S. Currency,   N.D.Ga.,   February 13, 2007

1999 WL 1067841

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

Francisco AGUILAR, Plaintiff,

v.

UNITED STATES OF AMERICA, Defendant.

Nos. 3:99–MC–304 (EBB), 3:99–MC–408 (EBB).

|

Nov. 8, 1999.

*Dismissal of Plaintiff's Complaints*

BURNS, Senior J.

**\*1** Francisco Aguilar, pro se, seeks leave to proceed in forma pauperis ("IFP") to press two meritless complaints against the government, which is prosecuting related civil forfeiture actions against his properties. Although Aguilar is otherwise financially eligible, the court dismisses these complaints sua sponte pursuant to 28 U.S.C. § 1915(e)(2)(B) because the purported claims are frivolous, baseless and irremediable.

*Background*

Would-be plaintiff Aguilar is no stranger to this court. He is currently serving a forty-year sentence for drug trafficking at the federal penitentiary in Leavenworth, Kansas. *See United States v. Tracy,* 12 F.3d 1186, 1189 (2d Cir.1993) (affirming conviction and sentence). In connection with his conviction for narcotics offenses, the government filed civil forfeiture actions pursuant to 21 U.S.C. § 881(a) in 1990 and 1991 against four of Aguilar's Connecticut properties, which have since been sold. With the help of CJA-appointed counsel, Aguilar has vigorously defended each of these four actions, three of which remain pending before this court, and are scheduled for trial in January 2000. [1]

Now Aguilar seeks to take the offensive by filing these purported claims against the government, and serving the current property owners as well as the Assistant United States Attorney who is prosecuting the related forfeiture cases. This court denied without prejudice Aguilar's initial complaint, which was erroneously captioned "United States v. One Parcel Of Property Located At 414 Kings Hwy.," one of the cases already docketed and then pending. *See* Order of June 15, 1999. Upon refiling an amended complaint (the "Amended Complaint") with the appropriate caption, Aguilar also filed a second complaint (the "Second Complaint"), seeking the same relief and asserting essentially the same claims against the government for bringing the other three forfeiture cases. The clerk returned these pleadings because Aguilar failed to complete the IFP forms. *See* Order of August 25, 1999. After Aguilar cured these pleading deficiencies, miscellaneous docket numbers were assigned to the complaints.

In Aguilar's Amended Complaint—the one originally filed against his own property at 414 Kings Highway—Aguilar seeks return of the property, compensatory damages and $100,000,000 in punitive damages "to deter the United States of America from committing a similar Abuse of Power." Aguilar pleads his case in four "Articles," asserting sundry state and federal "constitutional" claims, including conversion, false pretenses, mail fraud, and breach of fiduciary duty. The Amended Complaint also suggests an allegation that the government falsified and deliberately omitted known material facts from its probable cause affidavit in "disregard" of 19 U.S.C. § 1615, the statute outlining the burden of proof in administrative forfeiture proceedings.

The Second Complaint—the one related to the government's seizure of the other three properties—seeks similar equitable and monetary relief, including return of the properties, compensation for "suffering," "usurpation," denial of his use and enjoyment of the properties and lost rents, and one billion dollars in punitive damages. Liberally construed, the Second Complaint simply repeats the claims of the Amended Complaint except for one additional allegation: that Aguilar was entitled to, and did not receive, a hearing prior to the seizure and sale of his properties.

*Discussion*

A. § 1915(e)(2)(B) *Standards*

**\*2** The Prisoner Litigation Reform Act ("PLRA") mandates dismissal of an IFP action if it: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune

from such relief." 28 U.S.C. § 1915(e)(2)(B) (as amended in 1996). Prior to the adoption of the PLRA, district courts had discretion to dismiss frivolous actions; now they are required to do so. *See* Pub.L. 104–134, 110 Stat. 1321 (1996) (making dismissal of frivolous actions mandatory, and also requiring dismissal for failing to state a claim or seeking damages from an immune defendant). Because Aguilar's claims qualify for dismissal under all three of these prongs, the standards for each are set out in turn.

### 1. *Frivolous or Malicious*

A complaint is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989) (interpreting § 1915(d), later redesignated as § 1915(e)(2)(B)(i), to preclude "not only the inarguable legal conclusion, but also the fanciful factual allegation"). Factual frivolity occurs where "the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy." *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (quoting *Neitzke,* 490 U.S. at 327, 109 S.Ct. at 1833). Legal frivolity, by contrast, occurs where "the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Livingston,* 141 F.3d at 327 (internal quotes and citation omitted); *see also Tapia–Ortiz v. Winter,* 185 F.3d 8, 11 (2d Cir.1999) (upholding dismissal as frivolous where "[t]he complaint's conclusory, vague, and general allegations ... d[id] not [ ] suffice to establish" plaintiff's claims).

In addition to frivolous claims, the court must also dismiss any malicious claims, i.e., where "[t]he manifest purpose of appellant's complaint [i]s not to rectify any cognizable harm, but only to harass and disparage." *Tapia–Ortiz,* 185 F.3d at 11.

### 2. *Failure To State A Claim*

An IFP action must also be dismissed sua sponte if it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see also Star v. Burlington Police Dep't,* 189 F.3d 462, 1999 WL 710235 (2d Cir.1999) (summarily affirming dismissal made pursuant to § 1915(e)(2)(B)(ii)

of purported due process challenge that failed to state a claim). As in a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a § 1915(e)(2)(B)(ii) dismissal is warranted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

**\*3** Pro se complaints, such as these, however, must be read broadly, *see Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam), and may not be dismissed "simply because the court finds the plaintiff's allegations unlikely." *Denton v. Hernandez,* 504 U.S. 25, 33, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1982) (construing pre-PLRA complaint as frivolous). Therefore,

> a pro se plaintiff who is proceeding in forma pauperis should be afforded the same opportunity as a pro se fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim [under § 1915(e)(2)(B)(ii) ], unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim.

*Gomez v. USAA Federal Sav. Bank,* 171 F.3d 794, 796 (2d Cir.1999) (per curiam) (vacating § 1915(e)(2)(B)(ii) dismissal where "the district court did not give th[e] pro se litigant an opportunity to amend his complaint, and because [the court] cannot rule out the possibility that such an amendment will result in a claim being successfully pleaded").

### 3. *Relief Against An Immune Defendant*

Dismissal of an IFP case is also required where plaintiff seeks monetary damages against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(iii); *see also,* *Spencer v. Doe,* 139 F.3d 107, 111 (2d Cir.1998) (affirming dismissal pursuant to § 1915(e)(2)(B)(iii) of official-capacity claims in § 1983 civil rights action because

"the Eleventh Amendment immunizes state officials sued for damages in their official capacity"). Here, even if Aguilar's claims had any merit, the complaints must be dismissed nevertheless because each seeks monetary damages from the United States, which is immune from such relief. *See Presidential Gardens Assocs. v. United States,* 175 F.3d 132, 139 (2d Cir.1999) (noting "[t]he sovereign immunity of the United States may only be waived by federal statute").

### B. *Dismissal Standards Applied*

Aguilar's complaints are devoid of any arguable basis in law or fact. Most of his factual allegations—to the extent they are even comprehensible—are conclusory, vague and baseless. For example, he purports to allege: "The United States of America has misused its power against the Francisco Aguilar's Intangible Rights." (Amended Complaint at 2); and "The United States of America overpassed its bound of its authority and make a tyrannic use of its powers." (Second Complaint at 4). Even the Second Circuit has recognized Aguilar's prior handiwork to be "so indisputably lacking in merit as to be frivolous within the meaning of 28 U.S.C. § 1915(e)." *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 97–6004 (2d Cir. April 23, 1997) (mandate [Doc. No. 167] dismissing appeal of Aguilar's motion to enjoin state default proceedings).

Only two allegations asserted by Aguilar are even arguably actionable: the lack-of-probable-cause argument in the Amended Complaint and the due process claim in the Second Complaint. Both of these, however, must be dismissed because each fails to state a claim for which relief may be granted.

### 1. *Probable Cause*

**\*4** The one potentially cogent legal claim that can be derived from a liberal reading of the Amended Complaint has already been conclusively decided by the court and is therefore barred from relitigation. *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158 (denying lack-of-probable-cause argument in motion to dismiss [Doc. No. 64] in 1993, and in motions for summary judgment [Doc. Nos. 55, 96] in 1996). Here again, Aguilar reiterates his allegation that the government's affidavit in support of probable cause was tainted because it failed to disclose that the 414 Kings Highway property was subject to a mortgage held by People's Bank, and therefore could not have been purchased with funds traceable to drug sales.

After the government voluntarily dismissed that forfeiture action, this court initially ordered the sale proceeds of the property disbursed to Aguilar. *See id.,* Order of Oct. 25, 1996 [Doc. No. 151]. The bank appealed the order and, during the pendency of the appeal, secured a default judgment in state court against Aguilar. *See People's Bank v. Aguilar,* No. CV–96–0337761–S (Conn.Super.Ct.1997). On the Bank's appeal from this court's disbursal of proceeds to Aguilar, the Second Circuit reversed and remanded. *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* 128 F.3d 125, 128 (2d Cir.1997). On remand, in accordance with the Second Circuit mandate, this court disbursed the proceeds from the sale of 414 Kings Highway to the bank in partial satisfaction of Aguilar's debt owed on the defaulted mortgage. *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158, 1999 WL 301704 (D.Conn. May 11, 1999).

Because the lack-of-probable-cause claim, perfunctorily adverted to in Aguilar's otherwise meritless Amended Complaint, has already been addressed in the *414 Kings Highway* forfeiture case, the court will not consider it again. As such, it must be dismissed because it fails to state a claim for which this court could grant further relief.

### 2. *Due Process*

In addition to his now-stale probable cause allegation about 414 Kings Highway, Aguilar claims in the Second Complaint that he was wrongfully denied a hearing prior to the seizure and sale of the other three properties. However, the constitutional right to a preseizure hearing in civil forfeiture proceedings was not recognized until 1993, two years after the seizure in this case. *See United States v. James Daniel Good Real Property,* 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (holding that Fifth Amendment Due Process protections apply to civil forfeiture proceedings against real property). Even if such due process protections applied retroactively, Aguilar's challenge to the sale of the properties would lack merit because exigent circumstances required their interlocutory sale.

In civil forfeiture proceedings "[u]nless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture." *Id.* at 62, 114 S.Ct. at 505; *see also United States v. One Parcel Of Property Located At 194 Quaker*

*Farms Rd.,* 85 F.3d 985, 988 (2d Cir.1996) ("[a]bsent exigent circumstances, a hearing, with notice to record owners, is held before seizure."). "To establish exigent circumstances, the Government must show that less restrictive measures— i.e., a lis pendens, restraining order, or bond—would not suffice to protect the Government's interest in preventing the sale, destruction, or continued unlawful use of the 🚩real property." *Id.* at 62, 114 S.Ct. at 505.

**\*5** Aguilar's properties addressed in the Second Complaint were seized because there was probable cause that each had been used to facilitate the offenses for which he was convicted. *See* 🚩21 U.S.C. § 881(a)(7) (1999). This civil forfeiture statute authorizes interlocutory sale of seized properties by two methods, which are incorporated by reference into the statute. *See* 🚩21 U.S.C. § 881(b) (authorizing seizure of property subject to civil forfeiture upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims; 🚩21 U.S.C. § 881(d) (authorizing seizure and summary sale governed by the customs laws codified in the Tariff Act of 1930, 19 U.S.C. §§ 1602–1619). Though the source of authority differs, the standards for sale under each are virtually indistinguishable.

Rule E(9)(b) of the Maritime Rules permits the interlocutory sale of seized property if such property

> is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action, or if the expenses of keeping the property is [sic] excessive or disproportionate, or if there is unreasonable delay in securing the release of property....

Supplemental Rule for Certain Admiralty and Maritime Claims E(9)(b). Section 1612(a) of the customs laws, by contrast, provides for seizure and summary sale whenever it appears that such property

> is liable to perish or to waste or to be greatly reduced in value by keeping, or

> that the expense of keeping the same is disproportionate to the value thereof....

19 U.S.C. § 1612(a) (1999).

Here, the Chief Deputy United States Marshal certified that the properties located at both 2030–32 Main St., Bridgeport (No. 5:90–cv–544), and 8 Drumlin Rd., Westport (No. 5:90– cv–545), were abandoned and therefore subject to vandalism, deterioration and depreciation. *See* 2/20/91 Declaration in Support of Motion for Interlocutory Sale [Doc. Nos. 28 (5:90– cv–544), 31 (5:90–cv–545) ] at ¶¶ 4, 5. The marshal also certified that the mortgage obligations exceeded by over $ 1,000 per month the rental income of the 2034–38 Main St., Bridgeport (No. 5:90–cv–546), property, which was several months in arrears and had little or no equity. *See* 2/21/90 Declaration in Support of Motion for Interlocutory Sale [Doc. No. 27 (5:90–cv–546) ] at ¶ 4. This court found these reasons sufficiently exigent to order the interlocutory sales. *See* 8/1/90 Order for an Interlocutory Sale [Doc. Nos. 34 (5:90–cv–544), 50 (5:90–cv–545), 31 (5:90–cv–546) ]. Interlocutory sale was thus warranted under both Rule E(9)(b) and § 1612(a) because the two abandoned properties were liable to deteriorate or lose value and the mortgage liabilities of the rented property were disproportionate in comparison to its value. *Cf. United States v. Esposito,* 970 F.2d 1156, 1161 (2d Cir.1992) (vacating order of interlocutory sale of forfeited home where "there was no finding that t[he amount expended for maintenance and repairs] was excessive or disproportionate").

**\*6** Aguilar's claim that he was wrongfully denied an opportunity to be heard prior to the sale of his properties is therefore not a cognizable due process challenge because the exigency of the properties' abandonment and disproportionate cost of upkeep required their interlocutory sale. Thus, sua sponte dismissal is warranted because Aguilar's due process claim fails to state a remediable cause of action.

### 3. *Other Claims*

The remainder of Aguilar's claims are frivolous and can be disposed of readily. To the extent Aguilar's claim invoking 🚩19 U.S.C. § 1615 can be construed as challenging the constitutionality of shifting the burden to the claimant upon the government's showing of probable cause, the Second Circuit has "h[e]ld that it does not violate due process to place the burden of proving an innocent owner affirmative

defense on the claimant." 🚩 *194 Quaker Farms Rd.,* 85 F.3d at 987. In addition, the tort claims for false pretenses and conversion are not actionable as these are intentional torts to which the limited waiver of sovereign immunity of the Federal Tort Claims Act ("FTCA") is inapplicable.

*See* 28 U.S.C. § 2680(h); *see also* 🚩 *Bernard v. United States,* 25 F.3d 98, 104 (2d Cir.1994) ("the FTCA does not authorize suits for intentional torts based on the actions of Government prosecutors"). Furthermore, because the United States government is not a fiduciary and owes no associated duties to Aguilar, his breach of fiduciary duty allegation against the government fails to state a claim. Finally, Aguilar also fails to state a valid mail fraud claim as that criminal code provision, 🚩 18 U.S.C. § 1341, may only be prosecuted by the government, not against it.

## Conclusion

For the foregoing reasons, Aguilar's complaints [Nos. 3:99–mc–304 and 3:99–mc–408] are dismissed pursuant to 🚩 28 U.S.C. § 1915(e)(2)(B) because they present frivolous allegations, none of which state a cognizable claim, and seek monetary relief from an immune defendant. Because the court cannot definitively rule out the possibility that amendment to the pleadings might result in an actionable claim, *see* 🚩 *Gomez,* 171 F.3d at 796, these dismissals are made without prejudice and may be replead after the conclusion of the related forfeiture proceedings.

## All Citations

Not Reported in F.Supp.2d, 1999 WL 1067841

## Footnotes

1    *See United States v. One Parcel Of Property Located At 2030–32 Main St.,* No. 5:90–cv–544(EBB) (pending); *United States v. One Parcel Of Property Located At 8 Drumlin Rd.,* No. 5:90–cv–545 (EBB) (pending); *United States v. One Parcel Of Property Located At 2034–38 Main St.,* No. 5:90–cv–546(EBB) (pending); *see also United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158(EBB) (closed).

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 6081435
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Mitchell RIVERA, Plaintiff,

v.

FEDERAL BUREAU OF
INVESTIGATION, et al., Defendants.

5:16-CV-00997 (NAM/TWD)

|

Signed 09/13/2016

**Attorneys and Law Firms**

MITCHELL RIVERA, 117 Irving Ave., Liverpool, New York
13088, Plaintiff pro se.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge

**\*1** The Clerk has sent to the Court for initial review pursuant
to 28 U.S.C. § 1915(e)(2)(B) two complaints filed in
one action at the request of pro se Plaintiff Mitchell Rivera.
(Dkt. Nos. 1 and 1-1.) The first complaint alleges claims for
violation of Plaintiff's civil rights under *Bivens* and 42
U.S.C. § 1983 and has been submitted on a complaint form
entitled "Complaint for Violation of Civil Rights." (Dkt.
No. 1.) The second complaint contains essentially the same
allegations of wrongdoing by Defendants and has been
submitted on a complaint form entitled "Complaint and
Request for Injunctive Relief." [1] (Dkt. No. 1-1.)

Plaintiff has also filed two applications to proceed *in
forma pauperis* ("IFP application") one short form and one
long form which have been consolidated by the Court for
consideration. (Dkt. Nos. 2 and 2-1.) For the following
reasons, the Court will grant Plaintiff's consolidated IFP
application (Dkt. Nos. 2 and 2-1), and recommend that
Plaintiff's complaints be dismissed on the following grounds:
(1) sovereign immunity; (2) failure to state a claim; and
(3) frivolous claims, and that the dismissal be in part with
prejudice and in part without prejudice.

**I. IFP APPLICATION**
A court may grant *in forma pauperis* status if a party
"is unable to pay" the standard fee for commencing an
action. 28 U.S.C. § 1915(a)(1). After reviewing Plaintiff's
consolidated IFP application, the Court finds that Plaintiff
meets this standard. Therefore, Plaintiff's consolidated IFP
application (Dkt. Nos. 2 and 2-1) is granted.

**II. LEGAL STANDARDS FOR INITIAL REVIEW**
Even when a plaintiff meets the financial criteria for *in forma
pauperis*, 28 U.S.C. § 1915(e) directs that when a plaintiff
proceeds *in forma pauperis*, "the court shall dismiss the case
at any time if the court determines that ... the action ... (i)
is frivolous or malicious; (ii) fails to state a claim on which
relief may be granted; or (iii) seeks monetary relief against a
defendant who is immune from such relief." 28 U.S.C. §
1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must
look to see whether the complaint lacks an arguable basis
either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319,
325 (1989). "An action is frivolous when either: (1) the factual
contentions are clearly baseless such as when the claims are
the product of delusion or fantasy; or (2) the claim is based
on an indisputably meritless legal theory." *Livingston v.
Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)
(citations and internal quotation marks omitted). Although
extreme caution should be exercised in ordering *sua sponte*
dismissal of a pro se complaint before the adverse party
has been served and the parties have had an opportunity to
respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir.
1983), the court still has a responsibility to determine that a
claim is not frivolous before permitting a plaintiff to proceed.
*See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991)
(per curiam) (holding that a district court has the power to
dismiss a complaint *sua sponte* if the complaint is frivolous).

**\*2** To survive dismissal for failure to state a claim, a
complaint must plead enough facts to state a claim that is
"plausible on its face." *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 570 (2007). "A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable
for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

Case 3:23-cv-01099-GTS-ML   Document 11   Filed 12/15/23   Page 21 of 85

Rivera v. Federal Bureau of Investigation, Not Reported in Fed. Supp. (2016)

662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds pro se, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A pro se complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III. PLAINTIFF'S COMPLAINTS

### A. Allegations of Wrongdoing

In his two complaints, Plaintiff has sued the Federal Bureau of Investigation ("FBI"); FBI Director James B. Comey, Jr. ("Comey"); FBI Special Agent in Charge Andrew Vale ("Vale"); and FBI Assistant Directors Diego Rodriguez ("Rodriguez") and George Venizelos ("Venizelos"); and Eric T. Schneiderman, New York State Attorney General/NYPD/SuffolkPolice/Onondaga Sheriff ("Schneiderman"). [2] (Dkt. Nos. 1 at 1-4; 1-1 at 1-3.) Plaintiff claims that Defendants are "involved directly or indirectly in a supervisory position in the deprivation of [his] rights" in violation of *Bivens* and 42 U.S.C. § 1983. (Dkt. No. 1 at 6.)

Plaintiff has alleged that since at least 2006, and possibly since 1999, he has been under investigation by the FBI for insurance fraud arising out of a $50,000 insurance policy on his late mother's life under which he was the sole beneficiary. (Dkt. Nos. 1 at 7-8; 1-1 at 6.) According to Plaintiff, investigation of the alleged fraud fell under the jurisdiction of the FBI because of multi-state involvement. (Dkt. No 1-1 at 6.) Plaintiff has alleged that in 2008, an unidentified FBI agent told him that they would get him. *Id.* at 7.

Plaintiff, who has described himself as "Afro Puerto Rican," claims that the FBI probably already knew his family because his father was the first Puerto Rican Director at Citibank; his maternal uncles had cartel ties and served time in the 1980s, and one uncle was being probed by the FBI for murder; and Plaintiff has friends who are associated with famous musicians like Eminem and 50 Cent. (Dkt. No. 1 at 6-7; 1-1 at 7-8.)

**\*3** Plaintiff, who makes music, claims that unidentified FBI agents have: (1) illegally blocked two songs he had at SONY in 2011, and he has still not received them; (2) tried to get information to investigate 50 Cent or Plaintiff's lawyer without telling Plaintiff anything; (3) started hacking Plaintiff's on-line business because it was doubling profits too quickly in 2008 and forced Plaintiff out of business; (4) rerouted his internet search results; (5) admittedly posed as tenants, roommates, and landlords in order to illegally torture Plaintiff; (6) threatened and harassed artists so that they would not purchase anything from Plaintiff without notice; (7) deleted Plaintiff exes' and friends' Facebook accounts over and over again and blocked his Facebook messages and friend requests strategically, while having the police play dumb; (8) told prospective employers Plaintiff committed fraud so they would not hire him; (9) somehow been involved in Plaintiff being unable to get his cavities taken care of the by his dentist; (10) illegally blocked Plaintiff's paid advertising and confiscated business materials; (11) assaulted Plaintiff; (12) had Plaintiff illegally removed from stores and blocked him from suing Dollar General and other stores for illegally aiding the FBI; (13) and attempted to force Plaintiff to admit guilt for something he did not do. (Dkt. No. 1 at 7-8; 1-1 at 7-9.)

Plaintiff claims that Defendant New York State Attorney General Eric Schneiderman is responsible for overseeing civil rights for New York State. (Dkt. No. 1 at 5.) Plaintiff has alleged that his "suit originates with a (sic) FBI probe from 06 – Present so state officials have been under FBI instruction in the states he has resided in since then," including New York. *Id.*

Case 3:23-cv-01099-GTS-ML    Document 11    Filed 12/15/23    Page 22 of 85

Rivera v. Federal Bureau of Investigation, Not Reported in Fed. Supp. (2016)

### B. Claimed Injuries

Plaintiff claims that he has been injured in the following ways by the alleged wrongdoing of the Plaintiffs: (1) has sleep apnea, poor sinus drainage, and un-removed cavities as a result of being forced to see a different dentist; (2) been blacklisted in the music business by Defendants' lies and destruction of businesses, and of songs he had with former SONY artists; (3) destroyed his relationship with his daughter, a girl from high school, and his sister; (4) forced exes not to talk to him by deleting their social media accounts over and over; (5) made his entertainment lawyer go from wanting to represent him to blocking Plaintiff without the two even talking; (6) illegally froze his on-line activities causing irreparable harm; (7) destroyed Plaintiff's relationships with several cousins, close friends, ex-girl friends, and his brother and father by forcing Plaintiff to talk to an agent who is supposed to represent a murdered figure, without notice; and (8) pretending to involve Plaintiff in drug and internet security probes that do not involve him. (Dkt. Nos. 1 at 7; 1-1 at 10.)

### C. Relief Requested

Plaintiff has not specifically requested relief in the form of money damages in either complaint. (*See* Dkt. Nos. 1 at 8; 1-1 at 11.) Plaintiff has requested injunctive relief directing unidentified FBI agents to: (1) stop living in the same building as Plaintiff or posing as his landlord; (2) stop tampering with his on-line business, advertising, and communication; (3) stop talking behind his back; (4) give Plaintiff his mother's Freedom of Information Act ("FOIA") records; (5) stop talking to Plaintiff's potential employers; (6) stop preventing Plaintiff from obtaining a part-time job as a result of the stress due to the FBI agents and their false fraud probe; (7) stop interfering with Plaintiff and any industry without notice; (8) stop trying to prevent Plaintiff from complaining about law enforcement to doctors in order to make suing the FBI agents more difficult; and (9) stop blocking Plaintiff from obtaining counsel to represent him on the claims being pursued in this action. *Id.*

## IV. ANALYSIS

### A. Official Capacity *Bivens* Claims

In his civil rights complaint (Dkt. No. 1), Plaintiff has alleged claims for violation of his constitutional rights against Federal Defendants the FBI, FBI Director Comey, Vale, Rodriguez, and Venizelos under 🔖 *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).[3] (Dkt.

No. 1.) More specifically, Plaintiff alleges that Defendants violated his constitutional rights under the First, Third, Fourth, Fifth, Sixth, Eighth, Ninth, and Tenth Amendments to the Constitution.[4] *Id.*

**\*4** "A *Bivens* action is a judicially-created remedy designed to provide individuals with a cause of action against federal officials who have violated their constitutional rights," 🔖 *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (citing 🔖 *Ellis v. Blum*, 643 F.2d 68, 84 (2d Cir. 1981)). "The only remedy available in a *Bivens* action is an award of monetary damages from defendants in their individual capacities." *Id.* Since a court may award only money damages on a *Bivens* claim, claims for injunctive relief are unavailable. *See Kurzberg v. Ashcroft*, 619 F.3d 176, 179 n.2 (2d Cir. 2010); *Higazy,* 505 F.3d at 129.

*Bivens* money damages claims may not be brought against the United States, federal agencies, or federal agents in their official capacities. *See* 🔖 *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994) (confirming that under *Bivens*, a "direct action against the Government [is] not available," and further declining to recognize a "*Bivens*-type cause of action directly against a federal agency"); 🔖 *Kentucky v. Graham,* 473 U.S. 159, 166 (1985) ("[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity"); 🔖 *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) (a *Bivens* action "must be brought against the federal officers involved in their individual capacities. Under the doctrine of sovereign immunity, an action for damages will not lie against the United States absent consent. Because an action for money damages against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are barred under the doctrine of sovereign immunity, unless such immunity is waived.") (citing 🔖 *Meyer,* 510 U.S. 471).

Because sovereign immunity is jurisdictional in nature, the Court recommends that Plaintiff's *Bivens* claims be dismissed with prejudice against the FBI, and against Comey, Vale, Rodriguez and Venizelos in their official capacities, for lack of subject matter jurisdiction. *See* 🔖 *Wake v. United States,* 89 F.3d 53, 57 (2d Cir. 1996) (sovereign immunity is jurisdictional in nature).

Case 3:23-cv-01099-GTS-ML   Document 11   Filed 12/15/23   Page 23 of 85

Rivera v. Federal Bureau of Investigation, Not Reported in Fed. Supp. (2016)

**B. Individual Capacity *Bivens* Claim**

Plaintiff has failed in both of his complaints to identify the FBI agents he claims committed unconstitutional acts against him. (*See generally* Dkt. Nos. 1 and 1-1.) Plaintiff alleges that the individual Federal Defendants violated his constitutional rights under *Bivens* because they were involved "directly or indirectly in a supervisory position in the deprivation of rights to force an outcome, use me against my will, and cover up contract violations." (Dkt. No. 1 at 6.)

A *Bivens* cause of action has been found to be the federal analog of a suit against state officials under 42 U.S.C. § 1983. *Iqbal*, 556 U.S. at 675-76. "Because vicarious liability [respondeat superior] is inapplicable to *Bivens* ... suits, a plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution. *Id.* at 676. Supervisory officials are not liable under *Bivens* based solely on the alleged misconduct of their subordinates. [5] *Sash v. U.S.*, 674 F. Supp. 2d 531, 543 (S.D.N.Y. 2009).

**\*5** Plaintiff's civil rights complaint is devoid of factual allegations describing any personal involvement of Defendants Comey, Vale, Rodriguez, and Venizelos with respect to any of the alleged violations of Plaintiff's constitutional rights described in the complaint. Moreover, Plaintiff is not seeking monetary damages, the only remedy available in a *Bivens* action. *See* Higazy, 505 F.3d at 169. Therefore, the Court recommends that Plaintiff's *Bivens* claims against Defendants Comey, Vale, Rodriguez, and Venizelos be dismissed. However, in light of Plaintiff's pro se status, and because the Court cannot rule out the possibility that Plaintiff may decide to seek monetary damages from the federal Defendants in their individual capacities, the Court recommends that dismissal of the *Bivens* claims against those Defendants be without prejudice, and that Plaintiff be granted leave to amend to set forth facts plausibly showing the personal involvement of the individual Federal Defendants in the violation of his constitutional rights.

**C. Section 1983 Claim Against Schneiderman**

The sole allegation against New York State Attorney General Schneiderman in Plaintiff's civil rights complaint is that he is the attorney general overseeing civil rights for the State of New York, and his suit "originates with a (sic) FBI probe from 06-Present so state officials have been under FBI instruction in the states I have resided in since then." (Dkt. No. 1 at 5.)

Section 1983, which itself creates no substantive rights, is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights and rights under the laws of the United States. *See* *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). State officials have immunity under the Eleventh Amendment for § 1983 claims for money claims asserted against them in their official capacity. [6] *See* *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993).

The Eleventh Amendment does not bar official capacity claims seeking prospective relief. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984); *Adler v. Pataki*, 204 F. Supp. 2d 384, 390 (N.D.N.Y. 2002). However, the defendant must have the authority to perform the act required. *Adler*, 204 F. Supp. 2d at 390. The injunctive relief Plaintiff seeks in his civil rights actions involved alleged wrongful acts of unidentified FBI agents, and there are no allegations in the complaint suggesting that Schneiderman, who has allegedly been under FBI instruction, has the authority to enforce the injunctive relief Plaintiff is seeking against the FBI, Comey, Vale, Rodriguez and Venizelos. (*See* Dkt. No. 1.)

As with *Bivens* claims, a plaintiff alleging an individual capacity claim under § 1983 must show personal involvement by the Defendant in the alleged violation of the plaintiff's constitutional rights. *See* Colon, 58 F.3d at 873 ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") Plaintiff has alleged no facts in his complaint showing any personal involvement by Schneiderman, supervisory or otherwise, in the alleged violation of Plaintiff's constitutional rights by unidentified FBI agents. [7] Therefore, the Court recommends that Plaintiff's § 1983 claim against Defendant Schneiderman be dismissed.

If the Court were to limit its consideration solely to the single allegation in the civil rights complaint arguably involving Schneiderman that New York State officials were under FBI jurisdiction when Plaintiff resided in New York, it would recommend dismissal with prejudice. However, given the conclusory allegation in the complaint for an injunction that there was a joint federal/state probe of Plaintiff regarding

Case 3:23-cv-01099-GTS-ML    Document 11    Filed 12/15/23    Page 24 of 85

Rivera v. Federal Bureau of Investigation, Not Reported in Fed. Supp. (2016)

his alleged insurance fraud (Dkt. No. 1-1 at 6), the Court recommends that the dismissal against Schneiderman be without prejudice.

### D. Claim for Injunctive Relief Against Federal Defendants

**\*6**  As discussed above, injunctive relief is not available on *Bivens* claims. *Higazy* 505 F.3d at 129. In light of the liberality with which pro se complaints are to be construed, the Court is compelled to assess whether the waiver of sovereign immunity set forth in Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, applies to Plaintiff's claim for injunctive relief against the federal defendants inasmuch as he is alleging violation of his constitutional rights, thereby giving the federal court subject matter jurisdiction under 28 U.S.C. § 1331.

Section 702 provides in part that

> A person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702. The Second Circuit has read § 702 "as a waiver of immunity where a proper action is brought under 28 U.S.C. § 1331," the general federal question jurisdiction statute. *Sprecher v. Graber*, 716 F.2d 968, 973-74 (2d Cir. 1983); *see also* *Beller v. Middendorf*, 632 F.2d 788, 797 (9th Cir. 1980) (section 702 waives sovereign immunity not only for suits brought under the APA, but also for constitutional claims brought under the general federal question jurisdiction statute), *overruled on other grounds,*

*Witt v. Department of Air Force*, 527 F.3d 806 (9th Cir. 2008). Because the waiver under § 702 extends only to suits asking for other than monetary relief, the waiver does not apply where monetary relief is sought in addition to equitable relief. *See* *Polanco v. U.S. Drug Enforcement Admin.*, 158 F.3d 647, 652 (2d Cir. 1998) ("Section 702 waives sovereign immunity in an action seeking equitable relief from wrongful agency action, except where ... the action also seeks monetary relief.") The waiver is also unavailable where there "is an adequate remedy at law." *Id.* As noted above, Plaintiff has not asked for monetary relief in either complaint.[8] (Dkt. Nos. 1 and 1-1.)

Courts have recognized the availability of the § 702 waiver in actions against the FBI and its officials for various alleged constitutional violations. *See, e.g.,* *Platsky v. C.I.A.*, 953 F.2d 26 (2d Cir. 1991) (court found it not beyond doubt that plaintiff could prove no set of facts in support of his claim for interference with the constitutional right to free association based upon the CIA. and FBI depriving him of the opportunity to join a political organization of his choice and harassing him in applications for government services, on his job, and in every day life, and on one occasion approaching plaintiff's landlord to have him evicted from his home); *Raz v. Lee*, 343 F.3d 936 (8th Cir. 2003) (recognizing waiver of sovereign immunity for plaintiff's claim for injunctive relief prohibiting the FBI from continuing violation of his constitutional rights by surveillance activities based upon his expression of unpopular political beliefs, including tapping his phone and placing electronic tracers in his car; issuing alerts to other law enforcement agencies; causing him to be ostracized by issuing warnings to stores and other businesses he frequented; hog-tying and beating him; turning his acquaintances into spies against him; causing him severe stress and deterioration of health; and destroying relationships with friends).

**\*7**  Plaintiff has alleged the violation of his rights under the First, Fourth, and Fifth Amendments in both of his complaints. (Dkt. Nos. 1 at 5; 1-1 at 4.) However, other than conclusory allegations that the individual Defendants have been acting in a supervisory capacity with regard to the wrongdoing alleged in Plaintiff's complaints, the complaints are devoid of allegations showing specific involvement or wrongdoing against the Federal Defendants from 2006 to the present. Moreover, the allegations in the complaints are all entirely too vague and conclusory as to such things as time frames; persons and businesses involved; businesses

Case 3:23-cv-01099-GTS-ML    Document 11    Filed 12/15/23    Page 25 of 85

Rivera v. Federal Bureau of Investigation, Not Reported in Fed. Supp. (2016)

harmed; and factual detail regarding the circumstances of the various instances of alleged wrongdoing, to state a plausible claim for injunctive relief for the alleged violation of his constitutional rights. *See* *Twombly,* 550 U.S. at 570 (conclusory statements without any supporting factual allegations are insufficient to state a claim).

Therefore, the Court recommends that Plaintiff's claim for injunctive relief against the Federal Defendants for violation of his constitutional rights be dismissed for failure to state a claim, and that the dismissal be without prejudice.

## V. CONCLUSION

Based upon the foregoing, the Court has made the following recommendations: (1) Plaintiff's claims under the Second, Third, Eighth, Ninth, and Tenth Amendments and under 15 U.S.C. §§ 2, 13; 17 U.S.C. §§ 5, 11; and 18 U.S.C. §§ 241, 242, 245, 247, and 249 be dismissed with prejudice; (2) Plaintiff's *Bivens* claim against the FBI and the Federal Defendants in their official capacities be dismissed with prejudice; (3) to the extent, if at all, Plaintiff may have intended to assert a *Bivens* claim for money damages against Comey, Vale, Rodriguez, and Venizelos in their individual capacities, the claims be dismissed without prejudice; (4) Plaintiff's claim for injunctive relief against the FBI, Comey, Vale, Rodriguez, and Venizelos for violation of his constitutional rights be dismissed without prejudice; and (5) Plaintiff's § 1983 claim against Defendant Schneiderman be dismissed without prejudice for failure to state a claim.

Mindful of the Second Circuit's instruction to liberally construe a pro se plaintiff's pleadings, *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir. 2008), and to "[give] leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Gomez,* 171 F.3d at 795, the Court recommends that Plaintiff be granted leave to amend his complaint with regard to a *Bivens* claim for money damages against Defendants Comey Vale, Rodriguez, and Venizelos in their individual capacities; his claim for injunctive relief against the FBI, Comey Vale, Rodriguez, and Venizelos; and his § 1983 claim against Schneiderman. The Court further recommends that Plaintiff be reminded that should he amend his *Bivens* claim to seek money damages, sovereign immunity will not

be waived under 5 U.S.C. § 702 with regard to his claims for injunctive relief and those claims will be subject to dismissal on sovereign immunity grounds.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's consolidated IFP application be **GRANTED** (Dkt. Nos. 2 and 2-1); and it is

**RECOMMENDED** that Plaintiff's complaints (Dkt. Nos. 1 and 1-1) be **DISMISSED** on initial review under 28 U.S.C. § 1915(e)(2)(B)(i)-(iii) in part on sovereign immunity grounds, in part as frivolous, and in part for failure to state a claim; and it is further

**RECOMMENDED** that Plaintiff's claims against Defendants under the Second, Third, Eighth, Ninth, and Tenth Amendments and under 15 U.S.C. §§ 2, 13; 17 U.S.C. §§ 5, 11; and 18 U.S.C. §§ 241, 242, 245, 247, and 249, and *Bivens* claims against the FBI and against Defendants Comey, Vale, Rodriguez, and Venizelos in their official capacities be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED** that the following claims be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**: (1) *Bivens* claims, if any, for money damages against Comey, Vale, Rodriguez, and Venizelos in their individual capacities; (2) claims for injunctive relief against the FBI, Comey, Vale, Rodriguez, and Venizelos; and (3) Plaintiff's § 1983 claim against Defendant Schneiderman; and it is further

**\*8 RECOMMENDED** that in the event Plaintiff is granted leave to amend that he be instructed to include all of his claims in a single amended complaint which shall supercede and replace his two original complaints in their entirety; and that he include in his amended complaint factual allegations describing the incidents of alleged wrongdoing and the role of each named defendant therein sufficiently to allow the Court to assess whether a plausible claim has been stated against them; and it is hereby

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with a copy of the unpublished decision in *Lopez-Media v. Lynch,* No. 1:16-CV-549 (T.B.), 2016 WL 2937479 (S.D. Ohio Wester

Case 3:23-cv-01099-GTS-ML    Document 11    Filed 12/15/23    Page 26 of 85

Rivera v. Federal Bureau of Investigation, Not Reported in Fed. Supp. (2016)

Division May 20, 2016) in accordance with the Second Circuit's decision in LeBron v. Sanders, 557 F.3d 76 (2d Cir. 2009).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan*

v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: September 13, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 6081435

---

## Footnotes

1    The Court will treat the two complaints as a single pleading for purposes of this initial review.

2    Plaintiff has not indicated in the complaints whether he is suing the individual defendants in their individual or official capacity or both. In light of Plaintiff's pro se status, for purposes of initial review, the Court will deem Plaintiff's *Bivens* claim against Comey, Vale, Rodriguez, Venizelos, and § 1983 claim against Schneiderman to have been asserted against them in both their individual and official capacities.

3    Plaintiff has also alleged claims under 18 U.S.C. §§ 241, 242, 245, 247, and 249; 15 U.S.C. §§ 2, 13; and 17 U.S.C. §§ 5, 11. The civil rights provisions of Title 18 of the U.S. Code (sections 241-248) do not allow private rights of action. *See Tsabbar v. Booth*, 293 F. Supp. 2d 328, 335 (S.D.N.Y. 2003). Even with the most liberal construction, neither of Plaintiff's complaints can be construed to state a claim under Title 15 of the U.S.C., which deals with antitrust violations, or Title 17 of the U.S.C., which deals with copyright. The Court finds Plaintiff's claims under Titles 15, 17, and 18 of the U.S.C. to be frivolous and recommends dismissal with prejudice as against all Defendants.

4    Plaintiff alleges the same violation of his constitutional rights in both complaints. (Dkt. Nos. 1 at 5; 1-1 at 4.) The Second Amendment protects the right to keep and bear arms. U.S. Const. amend. II. There are no allegations in either of Plaintiff's complaints alleging infringement on that right by Defendants. The Third Amendment prohibits the quartering of soldiers in any house during time of peace without consent of the owner, U.S. Const. amend. III, and is clearly irrelevant to Plaintiff's claims. The Eighth Amendment protects against excessive bail and fines and the infliction of cruel and inhuman punishments. U.S. Const. amend. VIII. The protection from cruel and inhuman punishment applies only to convicted prisoners and is, therefore, inapplicable to Plaintiff. *See Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989). The Ninth Amendment, which provides that the enumeration of certain rights in the Constitution shall not be construed to deny or disparage others retained by the people, is a rule of construction and does not give rise to individual rights. U.S. Const. amend IX; *Jenkins v. C.I.R.*, 483 F.3d 90, 92 (2d Cir. 2007). The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." Const. amend. X. There is no private right of action under the Tenth Amendment. *See Lopez-Mejia v. Lynch*, No. 1:16-CV-549 (TSB), 2016 WL 2937479, at * 3

n.6 (S.D. Ohio, Western Division May 20, 2016). The Court therefore recommends that Plaintiff's claims under the Second, Third, Eighth, Ninth, and Tenth Amendments to the Constitution be dismissed with prejudice.

5    Prior to *Iqbal*, the Second Circuit held that personal involvement of supervisory defendant may be shown by evidence that "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *see also Vazquez-Mentado v. Buitron*, 995 F. Supp. 2d 93, 96 (N.D.N.Y. 2014) (finding *Colon* factors applicable to *Bivens* claims). The Second Circuit has thus far expressly declined to determine whether *Iqbal* heightened the requirements for showing a supervisor's personal involvement with regard to certain constitutional violations. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). The Court need not reach the issue of *Iqbal's* impact on *Colon* because Plaintiff has not plead the Federal Defendants' personal involvement even under *Colon*.

6    There are no allegations in the complaints plausibly suggesting that Plaintiff has a claim against Schneiderman in his individual capacity, or that Plaintiff intended to assert such a claim.

7    In his complaint requesting an injunction, Plaintiff alleges that "[t]he persons I listed as defendants [including Schneiderman] oversee people both at a federal and state level via joint federal/state probes." (Dkt. No. 1-1 at 6.) That conclusory assertion is insufficient to state a claim for supervisory liability against Schneiderman under any of the *Colon* factors. *See Colon*, F.3d at 873.

8    If Plaintiff were granted leave to amend his complaint to plead a *Bivens* claim for money damages against the Federal Defendants, and he thereafter filed an amended complaint seeking money damages, he would not be entitled to the waiver of sovereign immunity under § 702 for purposes of his claim for injunctive relief. *Polanco*, 158 U.S. at 652.

---

**End of Document**          © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-01099-GTS-ML Document 11 Filed 12/15/23 Page 28 of 85

Rivera v. Federal Bureau of Investigation, Not Reported in Fed. Supp. (2016)

2016 WL 6072392
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Mitchell RIVERA, Plaintiff,

v.

FEDERAL BUREAU OF
INVESTIGATION, et al., Defendants.

5:16-CV-00997 (NAM/TWD)
|
Signed 10/17/2016

**Attorneys and Law Firms**

MITCHELL RIVERA, 117 Irving Ave., Liverpool, New York
13088, Plaintiff, pro se.

### ORDER

NORMAN A. MORDUE, SENIOR U. S. DISTRICT JUDGE

**\*1** The above matter comes to me following a Report-
Recommendation by Magistrate Judge Therese Wiley
Dancks, duly filed on the 13th day of September 2016.
Following fourteen (14) days from the service thereof, the
Clerk has sent me the file, including any and all objections
filed by the parties herein.

After careful review of all of the papers herein, including
the Magistrate Judge's Report-Recommendation, and no
objections submitted thereto, it is

ORDERED that:

1. The Report-Recommendation is hereby adopted in its
entirety.

2. The Plaintiff's complaints (Dkt. Nos. 1 and 1-1) are
DISMISSED on initial review under 28 U.S.C. § 1915(e)
(2)(B)(i)-(iii) in part on sovereign immunity grounds, in part
as frivolous, and in part for failure to state a claim.

3. Plaintiff's claims against Defendants under the Second,
Third, Eighth, Ninth, and Tenth Amendments and under
15 U.S.C. §§ 2, 13; 17 U.S.C. §§ 5, 11; and 18
U.S.C. §§ 241, 242, 245, 247, and 249, and
Bivens claims against the FBI and against Defendants Comey,
Vale, Rodriguez, and Venizelos in their official capacities are
DISMISSED WITH PREJUDICE.

4. The following claims are DISMISSED WITHOUT
PREJUDICE AND WITH LEAVE TO AMEND: (1) Bivens
claims, if any, for money damages against Comey, Vale,
Rodriguez, and Venizelos in their individual capacities; (2)
claims for injunctive relief against the FBI, Comey, Vale,
Rodriguez, and Venizelos; and (3) Plaintiff's § 1983 claim
against Defendant Schneiderman.

5. If plaintiff wishes to proceed with the claims referenced in
the previous paragraph, he must file an amended complaint
within thirty (30) days from the date of filing of this order.

6. If plaintiff chooses to file an amended complaint, he should
include all of his claims in a single amended complaint
which shall supercede and replace his two original complaints
in their entirety; and that he include in his amended
complaint factual allegations describing the incidents of
alleged wrongdoing and the role of each named defendant
therein sufficiently to allow the Court to assess whether a
plausible claim has been stated against them.

7. The Clerk of the Court shall serve a copy of this Order upon
all parties and the Magistrate Judge assigned to this case.

**IT IS SO ORDERED.**

Dated: October 17, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 6072392

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-01099-GTS-ML    Document 11    Filed 12/15/23    Page 29 of 85

Ross v. Dempsey Uniform and Linen Supply, Not Reported in Fed. Supp. (2016)

2016 WL 8652438
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Paul Raymond ROSS, Plaintiff,

v.

DEMPSEY UNIFORM AND LINEN SUPPLY;
James Greenwald, Asst. Federal Public Defender;
Matthew Brown, Senior U.S. Probation Officer
in the Federal Probation Office in Syracuse, NY;
Dorcas Brandon; Craig Benedict; Thomas McAvoy,
Federal Court Judge; Robert Lyons, FBI Agent;
Paul Bokol; Kristen Dempsey O'Donnell, Vice
President of Dempsey Uniform and Linen Supply;
Thomas O'Donnell, FBI Agent; and Federal Public
Defender's Office in Syracuse, NY, Defendants.

Civ. No. 3:16-CV-1208 (NAM/DJS)
|
Signed 12/29/2016

**Attorneys and Law Firms**

PAUL RAYMOND ROSS, 14 Cartwright St. #2, Sidney, New
York 13838, Pro Se.

**REPORT-RECOMMENDATION and ORDER**

Daniel J. Stewart, U.S Magistrate Judge

### I. INTRODUCTION

**\*1** The Clerk has sent for review a civil rights Complaint
filed by *pro se* Plaintiff Paul Raymond Ross. Dkt. No. 1,
Compl. Plaintiff has not paid the filing fee, but instead
submitted a Motion to Proceed *In Forma Pauperis* ("IFP").
Dkt. No. 2, IFP App. By separate Order, dated December 13,
2016, this Court granted Plaintiff's Application to Proceed
IFP. Now, in accordance with 28 U.S.C. § 1915(e), the
Court reviews, *sua sponte*, the sufficiency of the Complaint.
Distilled to its essence, the Complaint seeks damages as a
result of two convictions and associated sentences, imposed
after pleas of guilty by Mr. Ross, where those convictions and
sentences have never been vacated nor overturned on appeal
or review. For the reasons that follow, I recommend dismissal
of the present Complaint in its entirety.

### A. Applicable Standards of Review

Section 1915(e) of Title 28 of the United States Code
directs that, when a plaintiff seeks to proceed *in forma
pauperis*, "the court shall dismiss the case at any time if the
court determines that ... the action or appeal (i) is frivolous
or malicious; (ii) fails to state a claim on which relief can be
granted; or (iii) seeks monetary relief against a defendant who
is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).
Thus, it is a court's responsibility to determine that a plaintiff
may properly maintain his complaint before permitting him
to proceed with his action.

In reviewing a *pro se* complaint, this Court has a duty to
show liberality toward *pro se* litigants, *see Nance v. Kelly,
912 F.2d 605, 606 (2d Cir. 1990)*, and should exercise
"extreme caution ... in ordering sua sponte dismissal of a
pro se complaint *before* the adverse party has been served
and both parties (but particularly the plaintiff) have had
an opportunity to respond." *Anderson v. Coughlin, 700
F.2d 37, 41 (2d Cir. 1983)* (emphasis in original) (citations
omitted). Therefore, a court should not dismiss a complaint
if the plaintiff has stated "enough facts to state a claim to
relief that is plausible on its face." *Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 570 (2007)*. "A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." *Ashcroft
v. Iqbal, 556 U.S. 662, 678 (2009)* (citing *Bell Atl.
Corp. v. Twombly, 550 U.S. at 556*). Although the court
should construe the factual allegations in the light most
favorable to the plaintiff, "the tenet that a court must accept
as true all of the allegations contained in a complaint is
inapplicable to legal conclusions." *Id.* "Threadbare recitals
of the elements of a cause of action, supported by mere
conclusory statements, do not suffice." *Id.* (citing *Bell
Atl. Corp. v. Twombly, 550 U.S. at 555*). "[W]here the well-
pleaded facts do not permit the court to infer more than the
mere possibility of misconduct, the complaint has alleged
—but it has not 'show[n]'—'that the pleader is entitled to
relief.' " *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).
Furthermore, Federal Rule of Civil Procedure 8 "demands
more than an unadorned, the-defendant- unlawfully-harmed-

me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 Fed.Appx. 102, 104 (2d Cir. 2009).

### B. The Prior Criminal Prosecutions

**\*2** Because many of the allegations contained in the Complaint relate to prior federal prosecutions against Plaintiff in the Northern District of New York, the Court initially takes judicial notice [1] of the fact that Ross has been criminally prosecuted twice in this District: *United States v. Ross*, Crim. No. 5:07-CR-572 (DNH) and *United States v. Ross*, Crim. No. 3:13-CR-418 (TJM). With regard to the earliest prosecution, on December 19, 2007, Ross was charged by a three-count indictment of theft and extortionate sale of stolen customer clients, fraudulent activity with a computer, and interstate transport of stolen property, all in violation of 18 U.S.C. §§ 875 (6a) and 2; 1030(a)(4) and 2; and 2314(a). *United States v. Ross*, Crim. No. 5:07-CR-572 (DNH), Dkt. No. 1, Indictment. On April 18, 2008, Ross pled guilty to the first count of the indictment, admitting to engaging in extortion by threatening communications in interstate commerce in violation of 18 U.S.C. § 875(b). *Id.* at Dkt. No. 13. During the plea hearing, Ross, who was then represented by Assistant Federal Public Defender Lisa Peebles, admitted that he dug up invoices from a company's dumpster and sold them to Kristen Dempsey, whom later, with the help of an individual living in Africa, he threatened in order to get her to pay the money she owed to him. [2] *Id.* at Dkt. No. 31, Plea Tr. at pp. 14-16. Ross was thereafter sentenced, on September 28, 2008, to twenty-seven months of imprisonment and three years supervised release; a special condition of that supervised release was that Ross not have any direct or indirect contact with the victim, Ms. Dempsey-O'Donnell. *Id.* at Dkt. Nos. 19 & 20.

On September 21, 2009, Ross moved to vacate that conviction. *Id.* at Dkt. Nos. 23 & 30. Within that motion, Plaintiff argued, *inter alia*, that the Government selectively prosecuted him, while ignoring the real perpetrator of criminal conduct, Ms. Dempsey, and that she received special treatment because she is the wife of an FBI agent. *See*

*generally id.* On June 17, 2010, Judge Hurd denied Ross's motion to vacate. *Id.* at Dkt. No. 36. In a letter, dated May 7, 2010, and submitted by the Plaintiff to Judge Hurd as part of the sentencing proceeding, Plaintiff decried the perceived injustice of his conviction while Ms. Dempsey was not similarly prosecuted and vowed to ensure that she investigated for her lies, which were responsible for sending him to prison, and that he intended to pursue civil action against her and her husband to compensate him. *Id.* at Dkt. No. 35. Judge Hurd cautioned Plaintiff that he is to "refrain from engaging in any conduct which violates the sentence imposed on him by th[e] Court." *Id.* at p. 9.

Next, on October 15, 2013, a criminal complaint, signed by Special Agent John P. Bokal Jr., [3] was issued charging Ross with retaliating against a witness [4] who had provided information relating to Ross in connection with the earlier federal prosecution, in violation of 18 U.S.C. § 1513(e). *United States v. Ross*, Crim. No. 3:13-CR-418 (TJM). James F. Greenwald, [5] an Assistant Federal Public Defender, was appointed to represent Ross in that matter, and appeared alongside Ross on October 22, 2013, before the Honorable David E. Peebles, United States Magistrate Judge, for a detention hearing. *Id.* at Dkt. No. 8, Order of Detention. At the conclusion of that hearing, Ross was remanded to the custody of the United States Marshal pending trial. *Id.* On October 31, 2013, Ross was charged by a two-count indictment of retaliating against a witness, in violation of 18 U.S.C. § 1513(e), and of interstate stalking, in violation of 18 U.S.C. § 2261A(2). *Id.* at Dkt. No. 10, Indictment. A plea agreement was later entered into, which was signed by Mr. Ross, Mr. Greenwald, and Craig A. Benedict, [6] the Assistant United States Attorney ("AUSA") assigned to the matter. *Id.* at Dkt. No. 17, Plea Agreement. On March 7, 2014, Ross pled guilty, before the Honorable Thomas J. McAvoy, Senior United States District Judge, [7] to count two of the indictment, relating to interstate stalking. *See id.* at Min. Entry, dated Mar. 7, 2014. During the plea colloquy, the Government explained, and Ross admitted, that from July 18, 2013, upon Ross's release from prison relating to the earlier conviction, until October 16, 2013, Ross engaged in various forms of communication "with the intent to harass, inure and intimidate K.O.D.," and that in the course of such conduct, he "caused substantial emotional distress to K.O.D., her family and her employees." *Id.* at Dkt. No. 46, Plea Tr. at pp. 13, 15, & 16-17. On June 4, 2014, after hearing an impact statement from the victim, Judge McAvoy sentenced Ross to thirty-three months imprisonment with a three-year term of

Case 3:23-cv-01099-GTS-ML    Document 11    Filed 12/15/23    Page 31 of 85

Ross v. Dempsey Uniform and Linen Supply, Not Reported in Fed. Supp. (2016)

supervised release, which included, *inter alia*, a prohibition on contact with the victim, the victim's family, and/or business associates. *Id.* at Dkt. Nos. 28 & 44.

### C. Plaintiff's Complaint

**\*3** Plaintiff has brought this civil action against eleven Defendants, of which include private citizens, federal employees, and a private business. Compl. at ¶¶ 6-16. Plaintiff asserts that he has brought this civil action pursuant to 🚩 42 U.S.C. §§ 1983 and 🚩 1985 in order to "redress the deprivation, under color of state law, by officials and private citizens, by way of conspiracy, of rights secured by the Constitution of the United States." *Id.* at ¶ 1. Because he has named as Defendants various federal employees, I also construe this action as brought pursuant to 🚩 *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). [8]

In liberally construing the Complaint, the Court recites the relevant allegations of fact contained therein. By his Complaint, Ross details various allegations of fact surrounding his affiliations and experiences with each of the named Defendants at various points in time, starting in 2004 and ending in 2016; most of the allegations concern the two prior prosecutions and convictions. *See* Compl. at ¶¶ 17-90.

The factual allegations in the Complaint begin in 2004 wherein Ross describes his initial interactions with Defendant Kristin Dempsey, [9] whom Ross notes married Defendant Thomas O'Donnell, an FBI agent. *Id.* at ¶¶ 17-21. According to the Complaint, at some point Ms. Dempsey, in her capacity as Vice President of Defendant Dempsey Uniform and Linen Supply, enlisted Plaintiff's services where he would, for a sum of money as compensation, "search through her competitor's refuse dumpsters with the intent of gathering invoices" to give to her. *Id.* at ¶ 19. Plaintiff had a similar arrangement with another individual, Michael Schapiro, owner of Schapiro Uniform Rental, [10] whereby Plaintiff would receive monetary compensation in exchange for obtaining competitor invoices; Mr. Schapiro is alleged to have been aware of the agreement between Plaintiff and Defendant Dempsey. *Id.* at ¶¶ 17 & 22. Plaintiff states that at some point he met with unnamed FBI agents during an investigation of Mr. Schapiro and then informed Mrs. Dempsey about that investigation. *Id.* at ¶¶ 23-24. Ross and

Mrs. Dempsey later had a private meeting where Dempsey offered Ross $200,000 in exchange for him not disclosing to the FBI her role in procuring stolen invoices; Dempsey subsequently destroyed all of the stolen invoices. *Id.* at ¶¶ 25-27. At some point according to the Complaint, Plaintiff demanded payment from Dempsey but she refused. *Id.* at ¶ 33. Plaintiff then enlisted the help of an individual from Africa who sent Dempsey "demand emails." *Id.* at ¶ 34. Dempsey, in turn, informed her husband, FBI Agent O'Donnell, about the emails, the FBI in New York are contacted, and Plaintiff is later arrested for "third party email threats." *Id.* at ¶¶ 35-36. No charges were pursued against Dempsey nor Shapiro despite their alleged role in the scheme to collect stolen competitor invoices. *Id.* at ¶¶ 37-39.

**\*4** According to the civil Complaint currently under review, upon his release on September 9, 2010 from prison as a result of the 2008 federal conviction for extortion, Plaintiff began his term of supervised release, which expired on September 9, 2013. *Id.* at ¶¶ 47 & 64. During this time, Plaintiff began a relationship with Defendant Dorcas Brandon. *Id.* at ¶ 51. At some point in time, USPO [11] Mike Pierce informed Plaintiff that he is being investigated after Ms. Brandon complained she received threatening emails from Ross; those claims were later determined to be unsubstantiated. *Id.* at ¶¶ 52-53. During this time-frame, Plaintiff also developed a board game, entitled "Real Life," for which he secured investors. *Id.* at ¶¶ 61-62.

Following the expiration of his term of supervised release, Plaintiff "goes public, via Facebook, to expose the actions of the Defendants against him, and his desire to pursue a civil action." *Id.* at ¶¶ 64-65. The Court again takes judicial notice of the fact that on August 28, 2013, Plaintiff filed a civil action in Broome County Supreme Court against Kristin Dempsey-O'Donnell; that action was thereafter removed to this Court by the Defendant on October 8, 2013. *See Ross v. O'Donnell*, Civ. No. 3:13-CV-1250 (LEK/DEP). Many of the allegations contained in that civil action pertain to the conviction before Judge Hurd. [12] Those allegations, construed as *Bivens* claims, were held to be "patently without merit." *Id.* at Dkt. No. 12, p. 7.

As noted above, starting on October 15, 2013, Plaintiff was criminally prosecuted by federal authorities for retaliation against a witness ("K.O.D."). *United States v. Ross*, Crim. No. 3:13-CR-418, at Dkt. No. 1. Plaintiff was indicted and remanded to custody by Judge Peebles on October 22, 2013, and he alleges that as a result of that fact all units of his

game "Real Life" and all investment into the product was "unwillingly forfeited permanently." Compl. at ¶¶ 72 & 73. In connection with Judge McAvoy's thirty-three month sentence, imposed on June 11, 2014, Plaintiff maintains that his defense counsel presented faulty sentencing information, and that he effectively precluded a witness from testifying on Ross's behalf at the sentencing hearing by providing him with the wrong sentencing date. Compl. at ¶ 75.

According to the civil rights Complaint, throughout 2014 and 2015, Plaintiff wrote a series of letters to various individuals complaining of the circumstances described above. *Id.* at ¶¶ 80-89. He was released from incarceration on March 8, 2015 and began his term of supervised release. *Id.* at ¶ 90. This civil action was initiated on October 5, 2016, with the filing of the Complaint.

## II. DISCUSSION

Within the Complaint, Plaintiff alleges four separate causes of action:

1) Conspiracy—asserted against all Defendants for acting in collusion which resulted in Ross's unlawful conviction and incarceration stemming from two criminal proceedings. Compl. at ¶¶ 91-99.

2) Malicious Abuse of Process—asserted against Defendants O'Donnell, Lyons, and Bokol for conspiring to cover up Defendant Dempsey's criminal behavior and instead pursuing Plaintiff; and against Defendants McAvoy, Benedict, Greenwald, Federal Public Defender's Office, and Federal Probation Office, who are alleged to have acted together to further the conspiracy. Compl. at ¶¶ 100-14.

**\*5** 3) Tortious Interference of Contract—against all Defendants for the loss of the development of his board game business venture. Compl. at ¶¶ 115-20.

4) Defamation—against Defendants Brandon and Dempsey for making false statements which led to Plaintiff's incarceration. Compl. at ¶¶ 121-24.

Ross seeks "actual, compensatory, and punitive damages in the amount of Ten Million ($10,000,000) USD for false imprisonment, loss of liberty and property interests, committed knowingly by the Defendants" and further asks for the "initiation of a criminal investigation against all

defendants, insofar as their actions and omissions correspond, for Conspiracy, False Claims, Abuse of Process, Obstruction of Justice, Tampering Evidence/Witnesses, Perjury, Restraint of Trade, and any other statutory violation occurring." *Id.* at ¶¶ 126 & 127.

### A. ⚑ Section 1983 Claims

First, the Court addresses Plaintiff's blanket introductory statement in the Complaint indicating that he has brought this action pursuant to ⚑ 42 U.S.C. §§ 1983 and ⚑ 1985. ⚑ 42 U.S.C. § 1983 "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." ⚑ *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (quoting ⚑ *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) & ⚑ 42 U.S.C. § 1983); *see also Myers v. Wollowitz*, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "⚑ § 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). It is well-settled, however, that parties may not be held liable under ⚑ § 1983 unless it can be established that they have acted under the color of State law. *See, e.g.,* ⚑ *Rounseville v. Zahl*, 13 F.3d 625 (2d Cir. 1994) (noting state action requirement under ⚑ § 1983); *Wise v. Battistoni*, ⚑ 1992 WL 280914, at *1 (S.D.N.Y. Dec. 10, 1992) (same) (citations omitted). State action is an essential element of any ⚑ § 1983 claim. *See Gentile v. Republic Tobacco Co.*, 1995 WL 743719, at *2 (N.D.N.Y. Dec. 6, 1995) (citing *Velaire v. City of Schenectady*, 862 F. Supp. 774, 776 (N.D.N.Y. 1994) (citation omitted). Nowhere in his Complaint does Plaintiff allege that any Defendant acted under color of State law, and indeed, it is clear that all Defendants are either private citizens, a private business, federal agencies, or federal employees. Accordingly, any claims brought against the Defendants pursuant to ⚑ 42 U.S.C. § 1983 should be **dismissed** from this action for failure to state a claim upon which relief could be granted.

### B. ⚑ Section 1985 Claims

Plaintiff also generally asserts that he is bringing an action pursuant to 42 U.S.C. § 1985 against all Defendants for participating in a conspiracy. The only relevant section of that statute is subsection (3) which states, in pertinent part:

> If two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ..., if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

**\*6** 42 U.S.C. § 1985(3).

To recover under this section, a plaintiff must show the existence of (1) a conspiracy (2) meant to deprive a person or persons of the equal protection of the laws or privileges and immunities under the laws with (3) "an overt act in furtherance of the conspiracy[,] (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States[,]" and (5) "some racial or perhaps otherwise class-based, invidious discriminatory animus[.]" *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (citations omitted). "In this context, 'class-based animus' encompasses only those groups with discrete and immutable characteristics such as race, national origin, and sex." *Martin v. New York State Dep't of Corr. Servs.*, 115 F. Supp. 2d 307, 316 (N.D.N.Y. 2000) (citations omitted). Thus, to recover damages under § 1985, Plaintiff must allege facts from which purposeful discriminatory intent can be inferred. *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 390-91 (1982) (cited in *Hill v. Philip Morris USA*,

2004 WL 1065548, at *4 (S.D.N.Y. May 11, 2004)); *see also Spencer v. Casavilla*, 903 F.2d 171, 174 (2d Cir. 1990) (finding that in order to state a claim under § 1985(3), a plaintiff "must allege, *inter alia*, that the defendants who allegedly conspired sought, with *discriminatory intent*, to deprive the plaintiff of a right covered by the Constitution or other laws") (emphasis added).

With regard to the § 1985 conspiracy claim, Plaintiff merely states that the Defendants conspired, but he provides no other facts, or even circumstances, from which this Court can surmise that any such conspiracy occurred. And more importantly, nowhere in the Complaint does Plaintiff suggest that any Defendant acted with discriminatory animus.

Therefore, Plaintiff's claims of conspiracy, pursuant to § 1985, should be **dismissed** for failure to state a claim.

### C. Plaintiff's Implied *Bivens* Claims

Having recommended dismissal of these claims, I will now assess Plaintiff's civil rights claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Named as Defendants are two individuals who are absolutely immune from suit, namely, Judge McAvoy and AUSA Craig Benedict. [13] *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994) (noting that "[j]udges enjoy absolute immunity from personal liability for acts committed within their judicial jurisdiction"); *Collins v. Lippman*, 2005 WL 1367295, at *3 (E.D.N.Y. June 8, 2005) (judicial immunity applies to actions seeking monetary and injunctive relief); *Hartman v. Moore*, 547 U.S. 250, 261-62 (2006) (citing *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976), for the proposition that federal prosecutors are absolutely immune from a *Bivens* action for actions related to the prosecutorial function). While Plaintiff has accused all the Defendants of colluding in order to deprive him of his liberty, such accusations are based upon conclusions and not facts upon which this Court may find that a plausible claim has been pled. Indeed, all of the acts noted in the Complaint alleged to have been committed by Defendants McAvoy and Benedict were performed within their judicial and prosecutorial functions, respectively. Thus, Plaintiff cannot state cognizable claims against these individuals and each should be **dismissed with**

Case 3:23-cv-01099-GTS-ML   Document 11   Filed 12/15/23   Page 34 of 85

Ross v. Dempsey Uniform and Linen Supply, Not Reported in Fed. Supp. (2016)

**prejudice** from this action pursuant to 28 U.S.C. § 1915(e) (2)(B)(iii).

**\*7** Also named in the Complaint are private individuals, namely, Kristin Dempsey and Dorcas Brandon. As with § 1983 claims, a *Bivens* action does not apply to purely private conduct. *Larry Carter Center v. Catholic Charities*, 2015 WL 4067559, at \*5 (N.D.N.Y. July 2, 2015) (citing cases). Only private conduct that is "fairly attributable" to a government actor may serve as a basis for a *Bivens* action. *Id.* In this regard, the private party's actions must have been "commanded or encouraged by the federal government, or that the defendants were so intertwined with the government as to become painted with color of [federal] action." *Strother v. Harte*, 171 F. Supp. 2d 203, 206 (S.D.N.Y. 2001) (internal quotation mark and citation omitted) (alteration in original). Here, the only allegations against the private individuals named in the Complaint, Dempsey and Brandon, are that they each provided (false) information to federal authorities which was later used as the basis to prosecute Plaintiff criminally. Such actions are insufficient to hold that either of these individuals acted under color of federal law. *See Strother v. Harte*, 171 F. Supp. 2d at 206 ("A private party is not transformed into a 'federal actor' merely because he or she invokes the judicial or administrative process."); *see also Ross v. O'Donnell*, 2014 WL 3735667, at \*4 (N.D.N.Y. July 29, 2014). As such, any *Bivens* action stated against Dempsey Uniform and Linen Supply, Mrs. Dempsey, and Ms. Brandon should be **dismissed with prejudice**.

Plaintiff also names other actors involved in his federal prosecutions, such as FBI Agents Lyons, Bokol, and O'Donnell, based upon their respective roles in the previous prosecutions, and against U.S. Probation Officer Matthew Brown, Federal Public Defender ("FPD") James Greenwald, Federal Probation Office, and the Federal Public Defender's Officer.

With regard to the United States Probation Office and the Federal Public Defender's Office, to the extent these entities are federal agencies for purpose of a *Bivens* action, then such entities cannot be sued under *Bivens* because a claim against a federal agency "is essentially a suit against the United States, and *Bivens* actions against the United States are barred under the doctrine of sovereign immunity." *Sereika v. Patel*, 411 F. Supp. 2d 397, 402 (S.D.N.Y. 2006) (citing *Robinson*

*v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 484-86 (1994).

As to remaining Defendants, generally, Plaintiff challenges the authority of the FBI agents to participate in a criminal investigation/prosecution of him while covering up for one of their own and for providing false evidence leading to his indictment, complains about FPD Greenwald's participation in the conspiracy aimed at prosecuting Plaintiff, and accuses the AUSA of withholding and concealing evidence, while relying upon misleading evidence in order to prosecute him. He generally accuses all the Defendants of maliciously abusing the process in order to cover up the wrongdoing of Mrs. Dempsey, at the expense of Ross's freedom.

As noted above, the AUSA is immune from suit. And, with regard to FPD Greenwald, a federal public defender cannot be sued under *Bivens* because he is not a federal officer acting under color of federal law. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 320-21 (1981). But Plaintiff's claims suffer a more dire obstacle because not only are his accusations conclusory, but are inappropriately raised in this civil action because any determination of the legality of those aspects of the criminal proceedings in Plaintiff's favor would undermine the validity of his federal conviction and is thus barred pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994). In that case, the Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not

Case 3:23-cv-01099-GTS-ML    Document 11    Filed 12/15/23    Page 35 of 85

Ross v. Dempsey Uniform and Linen Supply, Not Reported in Fed. Supp. (2016)

been so invalidated is not cognizable under 🚩 § 1983.

**\*8** 🚩 *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

Here, Plaintiff's federal convictions have not been overturned. Unless and until such convictions are rendered invalid or overturned, Plaintiff cannot maintain an action under *Bivens* for challenges to the evidence procured to support the indictment or any other substantive issue noted in his Complaint. [14] As such, any claims against the Federal Defendants challenging the validity of the prior federal prosecutions should be **dismissed with prejudice**.

A slightly different analysis is required for the Plaintiff's abuse of process claim against the FBI agents, as that claim has been characterized by courts, at least in 🚩 § 1983 actions, as separate and distinct from a malicious prosecution claim. An abuse of process claim requires a plaintiff to show that a defendant (1) employed regularly issued legal process to compel performance of some act, (2) with the intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside legitimate ends of process. 🚩 *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (citations omitted).

The first issue to be tackled is to determine whether the Courts in this District would even recognize an abuse of process *Bivens* claim. The Supreme Court has noted that *Bivens* is an extraordinary remedy which should rarely, if ever, be applied to new contexts. 🚩 *Corr. Servs. Corp v. Malesko*, 534 U.S. 61, 69 (2001). More to the point, the Second Circuit has specially addressed the claim asserted by the Plaintiff in this action and stated that it had "never recognized a *Bivens* cause of action for abuse of process *and decline to do so now.*" *Morales v. City of New York*, 752 F.3d 234, 238 (2d Cir. 2014) (emphasis added); *see also* 🚩 *Williams v. Young*, 769 F. Supp. 2d 594, 604 (S.D.N.Y. 2011) ("As far as this court is aware, no cause of action exists under *Bivens* for malicious abuse of process."). Thus, at the earliest stage Plaintiff's *Bivens* action fails.

Even if such a *Bivens* abuse of process action were theoretically possible, numerous impediments exist to asserting such a theory under the facts of this case. First, unlike a claim for malicious prosecution, an action for abuse of process does not require a favorable termination, and therefore, the claim accrues at the time the criminal process is set in motion, typically the date of arrest. 🚩 *Duametef v. Morris*, 956 F. Supp. 1112, 1118 ( S.D.N.Y. 1987). This would mean that any such claim arising out of the Plaintiff's initial prosecution, which began on December 19, 2007, with the indictment being handed down by the grand jury, resulting in Plaintiff's arrest on December 27, 2007, is time-barred since Plaintiff did not initiate this civil action until almost nine years later on October 5, 2016. *See* 🚩 *Chin v. Bowen*, 833 F.2d 21, 24 (2d Cir. 1987) (noting that *Bivens* actions brought in New York federal courts are subject to a three-year statute of limitations).

**\*9** Second, as noted by the pleadings, and as judicially noticed by the Court, Plaintiff pled guilty to both criminal charges, and this fact conclusively establishes that there was probable cause for his arrest and prosecution. *Parker v. Robenski*, 2015 WL 4041734, at \*4 (N.D.N.Y. July 2, 2015) ("Importantly, however, probable cause for an arrest may also be established as a matter of law as the result of a guilty plea.") (citing *Chilemi v. Town of Southampton*, 943 F.Supp.2d 365, 376 (E.D.N.Y. 2013) ("[A] conviction based on a voluntary plea of guilty ... establishes probable cause....")). While the effect of probable cause on a 🚩 § 1983 abuse of process claim is not altogether clear, [15] the Plaintiff is attempting to assert a *Bivens* action and not a 🚩 § 1983 claim. The only Supreme Court case to address such a *Bivens* action, albeit in the different context of a First Amendment retaliatory criminal prosecution, has held that where a claim is that a criminal prosecution was brought for an ulterior motive, *i.e.* to retaliate against someone, "want of probable cause *must* be alleged and proven." 🚩 *Hartman v. Moore*, 547 U.S. 250, 252 (2006) (emphasis added). No such allegation is or could be made in the present Complaint.

Which leads me to the third impediment for this claim. The Second Circuit has held that "to state a claim for abuse of criminal process, it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." 🚩 *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003). In other words, the proper use of legal process based on an improper or malicious motive, such as a desire for retaliation, is insufficient to satisfy

Case 3:23-cv-01099-GTS-ML    Document 11    Filed 12/15/23    Page 36 of 85

Ross v. Dempsey Uniform and Linen Supply, Not Reported in Fed. Supp. (2016)

the "collateral objective" requirement. *Id.* at 77-78. There must be an abuse of process, that is, a use of process that has as its direct object the achievement of an improper and ulterior "purpose or objective." *Id.* at 78. Here, the Plaintiff's Complaint does not plausibly suggest a collateral objective of the FBI Defendants, and at most alleges an improper motive, which is insufficient to state a claim. *Id.* at 77; *see also Tirse v. Gilbo*, 2016 WL 4046780, at * 17 (N.D.N.Y. July 27, 2016).

Finally, where, as here, the gist of the abuse of process claim is that the Plaintiff should never have been prosecuted and that the entire prosecutorial process was tinged with illegality, for which he seeks damages for the time that he spent imprisoned and for a declaration that the acts of the Defendants violated his rights, the *Heck* bar would apply to such a claim. *Parker v. Robenski*, 2015 WL 4041734 at *3 (citing *Zarro v. Spitser*, 274 Fed.Appx. 31, 34 (2d Cir. 2008)) (concluding same where § 1983 claims rested "on the alleged illegality of the entire investigation and prosecution of the case" and noting that granting relief under those circumstances "would require finding that the prosecutor acted without legal authority, without probable cause, or in violation of [p]laintiff's constitutional rights" and would "necessarily impugn the validity" of his conviction). Thus, for a multitude of reasons, it is recommended that the Plaintiff's abuse of process claims under *Bivens* be **dismissed with prejudice**.

### D. State Law Claims

**\*10** Having addressed the federal claims stated in the Complaint, all that remain are the State law claims of tortious interference with a contract and defamation. It is Plaintiff's contention that Defendants Dorcas and Dempsey defamed him by making false claims and accusations against him, resulting in damage to his career, reputation, and standing. He also states that these Defendants interfered with Plaintiff's ability to pursue a private enterprise based upon a new game concept he had created. Compl. at ¶¶ 115-24.

As to the defamation claims, it appears to be Plaintiff's contention that by providing information to FBI agents and Plaintiff's Probation Officer, Ms. Dempsey and Ms. Brandon tarnished Plaintiff's reputation and caused him to be remanded by Judge Peebles. Compl. at p. 14, ¶¶ 112 [16] & 123. These

events, according to the Complaint occurred in 2010-2011, and in October of 2013. *Id.* at ¶¶ 52, 53, & 72. In New York State, such claim is subject to a one-year statute of limitations. *See* N.Y. C.P.L.R. § 215(3). Because such actions attributed to these Defendants, even if taken as true, occurred more than one year prior to the initiation of this lawsuit, and because there is no indication in the Complaint that any tolling should apply, such claims should be **dismissed with prejudice**.

As for Plaintiff's remaining claim, I note that pursuant to New York State law, in order to state a claim for tortious interference with a contract, a plaintiff must allege

> (a) that a valid contract exists; (b) that a "third party" had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of contract; and (d) that the breach resulted in damage to the plaintiff.

*Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir. 1996) (citations omitted).

Here, there are no allegations that an actual and enforceable contract exists, nor, more importantly, are there any allegations that either Ms. Dempsey or Ms. Brandon were aware of the Plaintiff's business venture and acted with the intent of breaching any contract in furtherance of that entrepreneurial endeavor. Thus, Plaintiff fails to state a claim upon which relief could be granted and should be **dismissed**.

### III. CONCLUSION

Having considered the viability of the Complaint under the applicable standard of review, the Court has concluded that Plaintiff fails to state a claim upon which relief could be granted and has also sued individuals who are absolutely immune from suit. As such, his entire Complaint is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B). In light of his *pro se* status, the Court would typically, prior to outright dismissal, afford Plaintiff the opportunity to amend his Complaint in order to state cognizable claims. However, upon completing my review of the Complaint, I determine

Ross v. Dempsey Uniform and Linen Supply, Not Reported in Fed. Supp. (2016)

Case 3:23-cv-01099-GTS-ML    Document 11    Filed 12/15/23    Page 37 of 85

that any such amendment of any federal claims over which the Court would have jurisdiction would be futile in light of the facts presented and the legal obstacles outlined above.

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [the plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.").

Thus, for the reasons stated herein, it is hereby

**RECOMMENDED**, that the entire Complaint be **dismissed**, pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief can be granted and 28 U.S.C. § 1915(e)(2)(B)(iii) for naming Defendants who are protected by absolute immunity; and it is further; and it is further

**\*11**  **ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [17] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**All Citations**

Not Reported in Fed. Supp., 2016 WL 8652438

## Footnotes

1   In assessing the validity of a Complaint, the Court is permitted to take judicial notice of facts that are not subject to reasonable dispute, such as documents filed on a court's docket. *Marcus v. AT & T Corp.*, 938 F. Supp. 1158, 1164-65 (S.D.N.Y. 1996) (court may take judicial notice of public documents even if not included in or attached to complaint); *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 157 (1969) (taking judicial notice of related cases between same parties); *see also* FED. R. EVID. 201. Additionally, within his Complaint, Plaintiff makes reference to these prior federal prosecutions. *See generally* Compl.

2   As explained more fully during the plea colloquy, Ross attempted to get the money from Ms. Dempsey by enlisting the help of a man residing in Nigeria who sent threatening emails to Ms. Dempsey. *United States v. Ross*, Crim. No. 5:07-CR-572 (DNH), at Dkt. No. 31, Plea Tr. at pp. 14-16.

3   Named as a Defendant in this civil action is "Paul Bokal" who is identified as "an FBI Agent based in Binghamton, NY". Compl. at ¶ 16.

4   Within the criminal complaint, this individual is referred to as "Victim #1", and is later referred to by the initials "KOD". *United States v. Ross*, Crim. No. 3:13-CR-418 (TJM), *compare* Dkt. No. 1, Crim. Compl., *with* Dkt. No. 10, Indictment. Upon information and belief, based upon the information included in the criminal complaint, the Court's familiarity with the facts underlying the earlier criminal prosecution, and information included in the current civil Complaint, KOD is Kristen O'Donnell.

5   Mr. Greenwald is named as a Defendant in this civil action. Compl. at ¶ 9.

6   Mr. Benedict is named as a Defendant in this civil action. Compl. at ¶ 13.

Case 3:23-cv-01099-GTS-ML    Document 11    Filed 12/15/23    Page 38 of 85

Ross v. Dempsey Uniform and Linen Supply, Not Reported in Fed. Supp. (2016)

7    Judge McAvoy is named as a Defendant in this civil action. Compl. at ¶ 14.

8    A *Bivens* action is a judicially created remedy that allows individuals to recover for constitutional violations committed by federal agents, whereas, ⚑Section 1983 establishes somewhat parallel relief against state actors for violations of an individual's constitutional rights. ⚑*Carlson v. Green*, 446 U.S. 14, 18 (1980) ("*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right.");

⚑*Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) ("⚑Section 1983 provides a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."). Generally, case law under ⚑42 U.S.C. § 1983 applies to *Bivens* cases and the same immunity standards apply to both actions. ⚑*Chin v. Bowen*, 833 F.2d 21, 24 (2d Cir. 1987).

9    Plaintiff identifies this individual as "Kristen Dempsey O'Donnell ... wife of [Defendant] FBI Agent Thomas O'Donnell ... [and] Vice President of [Defendant] Dempsey Uniform and Linen Supply," a "uniform rental business corporation chartered in Pennsylvania" Compl. at ¶¶ 6 & 8. Notwithstanding, Plaintiff refers to her throughout the Complaint as "Kristin Dempsey", "Ms. Dempsey", or "D1 Demepsey". *See generally id.*

10   Neither Mr. Schapiro nor Schapiro Uniform Rental are named as Defendants herein.

11   Upon information and belief, Ross was being supervised during his term of supervised relief by United States Probation Officer ("USPO") Mike Pierce. Mr. Pierce is not named as a Defendant.

12   On July 29, 2014, the Honorable Lawrence E. Kahn, Senior United States District Judge, determined that many of the claims which would serve as the basis for removal jurisdiction were properly dismissed and the matter was remanded back to State court. *Ross v. O'Donnell*, Civ. No. 3:13-CV-1250 (LEK/DEP), at Dkt. No. 12.

13   The Court notes that although immunity from suit is a defense that would be raised by a defendant, the Second Circuit has held that, for purposes of an initial review under ⚑28 U.S.C. § 1915, a court may find that a complaint is based on an indisputably meritless legal theory if a defense "appears on the face of the complaint," and may validly raise such a claim *sua sponte*. ⚑*Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (collecting cases throughout the various Circuit Courts of Appeal that have upheld ⚑§ 1915 dismissals based upon defenses that appear on the face of the complaint). The Court notes, as set forth below, that Plaintiff will have an opportunity to present any objections he has to this Court's recommendations to the assigned District Judge.

14   The Court notes that many of these same arguments were set forth in Plaintiff's motion, pursuant to 28 U.S.C. § 2255, to vacate his criminal conviction entered by Judge McAvoy. *United States v. Ross*, Crim. No. 3:13-CR-418 (TJM), at Dkt. No. 36. On December 9, 2015, Judge McAvoy denied that motion, *id.* at Dkt. No. 57, and on June 8, 2016, the Second Circuit Court of Appeals denied the appeal, *id.* at Dkt. No. 67.

15   A significant line of cases have held that the existence of probable cause is a complete defense to any claim for abuse of process under § 1983because it shows both an excuse and justification of the prosecution. *E.g.* ⚑*Jones v. J.C. Penny's Dep't Stores Inc.*, 317 Fed.Appx. 71, 74 (2d Cir. 2009). Recently, however, the Second Circuit recognized the uncertain state of ⚑§ 1983 law on this issue, and concluded only that at the very least a police official charged with abuse of process for bringing a criminal complaint supported

**Ross v. Dempsey Uniform and Linen Supply, Not Reported in Fed. Supp. (2016)**

Case 3:23-cv-01099-GTS-ML    Document 11    Filed 12/15/23    Page 39 of 85

by probable cause is entitled to qualified immunity. 🚩 *Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 959 (2d Cir. 2015).

16    On page fourteen of the Complaint, Paragraph 112 immediately follows Paragraph 121; it is presumed that this is a typo and that Paragraph 112 is intended to be Paragraph 122.

17    If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

---

**End of Document**                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-01099-GTS-ML    Document 11    Filed 12/15/23    Page 40 of 85

Ross v. Dempsey Uniform and Linen Supply, Not Reported in Fed. Supp. (2017)

2017 WL 1207832
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Paul Raymond ROSS, Plaintiff,

v.

DEMPSEY UNIFORM AND LINEN SUPPLY; James
Greenwald, Asst. Federal Public Defender; Matthew
Brown, Senior U.S. Probation Officer in the Federal
Probation Office in Syracuse, NY; Dorcas Brandon;
Craig Benedict; Thomas McAvoy, Federal Court Judge;
Robert Lyons, FBI Agent; Paul Bokol; Kristen Dempsey
O'Donnell, Vice President of Dempsey Uniform and
Linen Supply; Thomas O'Donnell, FBI Agent; Federal
Public Defender's Office in Syracuse, NY, Defendants.

3:16-CV-1208 (NAM/DJS)
|
Signed 03/31/2017

**Attorneys and Law Firms**

Paul Raymond Ross, 14 Cartwright St. #2, Sidney, NY 13838,
Plaintiff, pro se.

## MEMORANDUM-DECISION AND ORDER

Hon. Norman A. Mordue, Senior U.S. District Judge:

**\*1** On October 5, 2016, plaintiff filed a civil rights suit
against the above captioned defendants. (Dkt. No. 1). Plaintiff
submitted a Motion to Proceed *In Forma Pauperis* ("IFP"),
which was granted December 13, 2016. (Dkt. Nos. 2,
10). After reviewing the sufficiency of the complaint, in
accordance with 28 U.S.C. § 1915(e), Magistrate Judge
Daniel J. Stewart issued a thorough Report-Recommendation
and Order, recommending dismissal of the complaint in its
entirety. (Dkt. No. 11). Plaintiff has filed an objection. (Dkt.
No. 12).

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court reviews
*de novo* those parts of the Report-Recommendation to which
plaintiff specifically objects. Where, however, an objecting
party makes only conclusory or general objections, or simply
reiterates the original arguments, the Court reviews for clear
error. *See Farid v. Bouey,* 554 F. Supp. 2d 301, 307

(N.D.N.Y. 2008). When no objections are made, the Court
conducts clear error review. *See Kaboggozamusoke v. Rye
Town Hilton Hotel,* 370 Fed.Appx. 246, 248, n.1 (2d Cir.
2010).

Magistrate Judge Stewart addressed plaintiff's claims of
conspiracy, malicious abuse of process, tortious interference
of contract, and defamation, against all defendants
concluding, for various reasons, that they fail to state a
claim upon which relief could be granted. In his objection,
plaintiff simply states general legal principles, and repeats his
allegations against the named defendants. His submissions
do not, however, provide any information that would impact
the conclusions reached by Judge Stewart in his report-
recommendation.

After a thorough review of the report-recommendation,
documents submitted by plaintiff, and applicable law, the
Court agrees with Magistrate Judge Stewart's analysis.
Consequently, the Report-Recommendation and Order is
adopted in its entirety. In light of the dismissal of the action,
the Court denies as moot plaintiff's letter motion for the
necessary service forms to be completed (Dkt. No. 3) and for
an order of protection (Dkt. No. 8).

It is therefore

ORDERED that the Order and Report-Recommendation
(Dkt. No. 11) of United States Magistrate Judge Daniel J.
Stewart is accepted and adopted; and it is further

ORDERED that this action be DISMISSED IN ITS
ENTIRETY WITH PREJUDICE pursuant to 28 U.S.C. §
1915(e)(2)(B)(ii)-(iii); and it is further

ORDERED that plaintiff's letter motion (Dkt. No. 3) and letter
request (Dkt. No. 8) are denied as moot; and it is further

ORDERED that the Clerk of the Court is directed to
serve copies of this Memorandum-Decision and Order in
accordance with the Local Rules of the Northern District of
New York.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 1207832

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 3:23-cv-01099-GTS-ML    Document 11    Filed 12/15/23    Page 42 of 85

Bullock v. DSS, CPS, Commissioner, Not Reported in Fed. Supp. (2018)

2018 WL 1115218
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Saunduallee BULLOCK, Plaintiff,

v.

DSS, CPS, COMMISSIONER; DSS; CPS; Onondaga
DSS/CPS; Joanie Mahoney; Jonie Mahoney;
and DSS/CPS Onondaga County, Defendants.

5:17-cv-1302 (BKS/TWD)
|
Signed 01/18/2018

**Attorneys and Law Firms**

SAUNDUALLEE BULLOCK, 123 Delong Ave., Syracuse,
NY 13208, pro se.

## <u>ORDER AND REPORT-RECOMMENDATION</u>

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge

**\*1** The Clerk has sent to the Court for review two
complaints filed in one action at the request of *pro se* Plaintiff
Saunduallee Bullock. (Dkt. Nos. 1 and 1-1.) Plaintiff names
Onondaga DSS/CPS, [1] Joanie Mahoney, [2] Jonie Mahoney,
DSS, DSS/CPS Onondaga County, DSS/CPS Commissioner,
and CPS as Defendants. Also before the Court is Plaintiff's
application to proceed *in forma pauperis* ("IFP Application").
(Dkt. No. 2.)

## I. PLAINTIFF'S IFP APPLICATION

A court may grant *in forma pauperis* status if a party "is
unable to pay" the standard fee for commencing an action.
28 U.S.C. § 1915(a)(1) (2006). After reviewing Plaintiff's
IFP Application (Dkt. No. 2), the Court finds Plaintiff meets
this standard. Therefore, Plaintiff's IFP Application (Dkt. No.
2) is granted.

## II. PLAINTIFF'S COMPLAINTS

Plaintiff's first complaint is brought under 42 U.S.C. §
1983 against Onondaga DSS/CPS, Mahoney, and DSS. (Dkt.
No. 1.) Section 1983 "establishes a cause of action for 'the

deprivation of any rights, privileges, or immunities secured by
the Constitution and laws' of the United States." German
v. Fed. Home Loan Mortg. Corp., 885 F. Supp. 537, 573
(S.D.N.Y. 1995) (quoting Wilder v. Virginia Hosp. Ass'n,
496 U.S. 498, 508 (1990) & 42 U.S.C. § 1983); *see also*
Myers v. Wollowitz, No. 95-CV-0272 (TJM)(RWS), 1995 WL
236245, at *2 (N.D.N.Y. Apr. 10, 1995) [3] (stating that "§
1983 is the vehicle by which individuals may seek redress for
alleged violations of their constitutional rights"). Plaintiff's
statement of claim is as follows:

> 2012 I was hit and run with a car
> me and stepson [J.S.] never receive
> benefits from county for [J.S.] for six
> years never took care [J.S.] medical or
> food and home for him and me 2017
> I was put on disabilities and they stop
> paying rent left me with a inviction.
> And put in fraud case to with day care.

*Id.* at ¶ 4 (unaltered text). Plaintiff lists three causes of action:

(1) Discrimination on me and stepson CPS;

(2) DSS never gave [J.S.] no benefits for him or me from
the age 13-19; and

(3) Made me homeless 2017 after I turn in job plus
disabilities status from doctor.

*Id.* at ¶ 5 (unaltered text). Plaintiff does not request any relief.
*See id.* at ¶ 6.

**\*2** Plaintiff's second complaint is brought pursuant to
Bivens v. Six Unknown Named Agents of the Federal
Bureau of Narcotics, 403 U.S. 388 (1971) against DSS/CPS
Onondaga County, DSS/CPS Commissioner, DSS, and CPS.
(Dkt. No. 1-1.) In *Bivens*, the Supreme Court recognized
an implied private cause of action for damages against
federal officers who violate a citizen's constitutional rights.
Bivens, 403 U.S. at 390; *see also* Feldman v. Lyons, 852
F. Supp. 2d 274, 278 (2012) (citing Corr. Servs. Corp. v.
Malesko, 534 U.S. 61, 66-67 (2001) (discussing the origin of
*Bivens* claims)); *see also* Hartman v. Moore, 547 U.S. 250,
254 n.2 (2006) ("Though more limited in some respects ... a

*Bivens* action is the federal analog so suits brought against state officials under ... 42 U.S.C. § 1983.”). Utilizing a form *Bivens* complaint, Plaintiff alleges “discrimination on me and [J.S.].” *Id.* at ¶ 4. Plaintiff lists three causes of action:

(1) No midical for [J.S.] or housing for him and me;

(2) [J.S.] and me no benefits from the age of 13-19; and

(3) Homeless didn't accept my disabilities job plus paper work.

*Id.* at ¶ 5 (unaltered text). Plaintiff again does not request any relief. *See id.* at ¶ 6.

## III. LEGAL STANDARD FOR INITIAL REVIEW

Section 1915(e) directs that when a plaintiff is allowed to proceed *in forma pauperis*, “the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.” 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). “An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory.” *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is “plausible on its face.” *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). “A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

In determining whether a complaint states a claim upon which relief may be granted, “the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor.” *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied*, 513 U.S. 836 (1994) (citation omitted). “[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.” *Iqbal*, 556 U.S. at 678. “Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.” *Id.* While Rule 8(a) of the Federal Rules of Civil Procedure (“FRCP”), which sets forth the general rules of pleading, “does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation.” *Id.* (internal quotation marks and citation omitted).

**\*3** Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed “without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.” *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where “the problem with [the plaintiff's] causes of action is substantive” such that “better pleading will not cure it.” *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## IV. ANALYSIS

Upon review and for the reasons below, the Court finds Plaintiff's complaints (Dkt. Nos. 1 and 1-1) fail to comply with the basic pleading requirements of Rules 8 and 10 of the FRCP and fail to state a claim upon which relief may be granted pursuant to 42 U.S.C. § 1915(e).

### A. General Pleading Standards

Rule 8 of the FRCP provides, in relevant part, that a complaint “shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief.” Fed. R. Civ. P. 8(a)(2). Rule 8(a) also requires the pleading to include “a demand for the relief sought.” *Id.* at 8(a)(3). Additionally, Rule 8(e)(1) instructs that “[e]ach averment of a pleading shall be simple, concise, and direct.” *Id.* at 8(e)(1). The purpose of Rule 8 “is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense.” *Hudson v. Artuz,*

Case 3:23-cv-01099-GTS-ML   Document 11   Filed 12/15/23   Page 44 of 85

Bullock v. DSS, CPS, Commissioner, Not Reported in Fed. Supp. (2018)

No. 95 CIV. 4768(JSR), 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (other citations omitted)).

Rule 10 of the FRCP requires, *inter alia*, that the allegations in a plaintiff's complaint be made in numbered paragraphs, each of which should recite, as far as practicable, only a single set of circumstances. Fed. R. Civ. P. 10(b); *see also Hudson*, 1998 WL 832708, at *2.

"When a complaint fails to comply with these requirements, the district court has the power, on motion or *sua sponte*, to dismiss the complaint or to strike such parts as are redundant or immaterial." *Simmons v. Abruzzo*, 49 F.3d 83, 86-87 (2d Cir. 1995) (citing *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)). "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* Further, if the court dismisses the complaint for failure to comply with Rule 8 of the FRCP, it should generally give the plaintiff leave to amend. *Id.*

Here, the Court finds Plaintiff's *pro se* complaints fail to satisfy the requirements of Rules 8 and 10 of the FRCP. (*See generally* Dkt. Nos. 1 and 1-1.) In the § 1983 complaint, Plaintiff's statement of the claim consists of a single paragraph, which references incidents from 2012 through 2017. (Dkt. No. 1 at ¶ 4.) Plaintiff also fails to state or specify the nature of his constitutional rights upon which the Defendants allegedly infringed. *See id.* Further, Plaintiff does not include a request for relief. *See id.* at ¶ 6. Similarly, in the *Bivens* complaint, Plaintiff's statement of the claim, while certainly short, fails to give a plain statement of the claim showing that the pleader is entitled to relief. (*See* Dkt. No. 1-1 at ¶ 4.) Nor does Plaintiff specify how each Defendant violated his constitutional rights or request any relief. *Id.*

**\*4** Furthermore, while Plaintiff's constitutional claims are not entirely clear to the Court, as explained below, Plaintiff has named Defendants that are not amenable to suit under § 1983 and *Bivens*. Additionally, although J.S. is not named as a plaintiff in this action, it appears Plaintiff seeks to bring § 1983 claims on behalf of his stepson. Lastly, Plaintiff's § 1983 claims, if any, may also be barred by the statute of limitations.

## B. Plaintiff's § 1983 Claims

To state a claim under § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States. *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993). "Allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987); *see also Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) ("[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.") (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *see also Johnson v. Gagnon*, No. 9:14-CV-916 (MAD/DEP), 2015 WL 1268199, at *12 (N.D.N.Y. Mar. 19, 2015) (same). In New York, actions brought under § 1983 are subject to a three-year statute of limitations. *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995). Under New York law, a § 1983 claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002).

### 1. Claims on Behalf of J.S.

A litigant in federal court has the right to act as his own counsel. *See* 28 U.S.C. § 1654 (1982) ("in all courts of the United States, the parties may plead and conduct their own cases personally or by counsel...."). Moreover, Rule 17(c) of the FRCP authorizes a general guardian to bring suit on behalf of a minor. Fed. R. Civ. P. 17(c)(1)(A). However, it is well established that "[a] person who has not been admitted to the practice of law may not represent anybody other than himself." *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) (citing *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) and 28 U.S.C. § 1654). The prohibition extends to non-lawyer parents seeking to represent their children. *See Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) ("It goes without saying that it

Case 3:23-cv-01099-GTS-ML    Document 11    Filed 12/15/23    Page 45 of 85

Bullock v. DSS, CPS, Commissioner, Not Reported in Fed. Supp. (2018)

is not in the interest of minors or incompetents that they be represented by non-attorneys. Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected."); *see also KLA v. Windham Southeast Supervisory Union*, 348 Fed.Appx. 604, 605-05 (2d Cir. 2009) (the prohibition on unlicensed laymen representing anyone other than themselves extends to non-lawyer parents seeking to represent their children); *Panzardi v. Jensen*, No. 13-CV-441 (MKB), 2014 WL 905546, at *2 (E.D.N.Y. Mar. 7, 2014) (non-lawyer parents are prohibited from representing their children).

Therefore, to the extent Plaintiff attempts to bring a § 1983 claim on behalf of his stepson, such claims are subject to dismissal.

## 2. Claims against Onondaga DSS/CPS and DSS

 **\*5** Plaintiff names Onondaga DSS/CPS and DSS as Defendants in this action. (Dkt. No. 1.) Although a municipality is subject to suit pursuant to § 1983, *see Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978), departments that are merely administrative arms of a municipality do not have the capacity to be sued as an entity separate from the municipality in which it is located. *Rose v. Cty. of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012) (citing *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002)); *see, e.g.*, *Schweitzer v. Crofton*, 935 F. Supp. 2d 527, 551 (E.D.N.Y. 2013) ("Plaintiff's claim against the Suffolk County Department of Social Services must be dismissed because it is not a suable entity."); *Pierce v. Chautauqua Cty.*, No. 06-CV-644, 2007 WL 2902954, at *3 (W.D.N.Y. Sept. 28, 2007) ("[S]ince the Chautauqua County Sheriff's Department and DSS are merely administrative arms of Chautauqua County, the claims against them must be dismissed."). Therefore, Onondaga County is the proper defendant in this case and the Court recommends dismissing Plaintiff's claims against Onondaga DSS/CPS and DSS pursuant to 28 U.S.C. § 1915(e). However, in deference to Plaintiff's *pro se* status, the Court construes Plaintiff's § 1983 claims as against Onondaga County, thus allowing consideration of Plaintiff's allegations against Onondaga DSS/CPS and DSS.

## 3. Claims against Onondaga County

Pursuant to the standard for establishing municipal liability laid out in *Monell*, 436 U.S. at 658, in order to set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. 658). For a *Monell* claim to survive a motion to dismiss, a plaintiff must allege "sufficient factual detail" and not mere "boilerplate allegations" that the violation of the plaintiff's constitutional rights resulted from the municipality's custom or official policy. *Plair v. City of New York*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) (collecting cases). A plaintiff must show the existence of an officially adopted policy or custom that caused injury *and* a direct causal connection between that policy or custom and the deprivation of a constitutional right. *Monell*, 436 U.S. at 690-94.

Here, Plaintiff has failed to identify or allege any facts showing that his constitutional rights were violated by customs or official policies of Onondaga County. *See Plair*, 789 F. Supp. 2d at 469 ("Following *Iqbal* and *Twombly*, *Monell* claims must satisfy the plausibility standard...."); *see also Meehan v. Kenville*, 555 Fed.Appx. 116, 117 (2d Cir. 2014) (summary order) (holding claim against municipal entity was properly dismissed under 28 U.S.C. § 1915 for "failure to plausibly allege that any constitutional violation resulted from a custom, policy or practice of the municipality"). Therefore, the Court recommends dismissing Plaintiff's *Monell* claims, if any, against Onondaga County pursuant to 28 U.S.C. § 1915(e). In deference to Plaintiff's *pro se* status, the Court recommends granting Plaintiff leave to amend his *Monell* claims against Onondaga County.

## 4. Official Capacity Claims

"A suit against a municipal officer in h[er] official capacity is functionally equivalent to a suit against the entity of which the officer is an agent." *Orange v. Cty. of Suffolk*, 830 F. Supp. 701, 706-07 (E.D.N.Y. 1993). Therefore, to

Case 3:23-cv-01099-GTS-ML    Document 11    Filed 12/15/23    Page 46 of 85

Bullock v. DSS, CPS, Commissioner, Not Reported in Fed. Supp. (2018)

the extent Plaintiff purports to sue Mahoney in her official capacity as Onondaga County Executive, such claim would be duplicative of Plaintiff's *Monell* claim against Onondaga County. *See, e.g., Rose v. Cty. of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012) (dismissing claims against county executives in their official capacities as duplicative of the *Monell* claim against the county); *Escobar v. City of New York*, No. 05 Civ. 3030, 2007 WL 1827414, at *19 (E.D.N.Y. June 27, 2007) (dismissing claims against the individual defendants in their official capacities as duplicative of the *Monell* claim against the county). Therefore, the Court recommends dismissing Plaintiff's 🟨 § 1983 claims, if any, against Mahoney in her official capacity pursuant to 42 U.S.C. § 1915(e).

### 5. Claims against Mahoney

**\*6** "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under 🟨 § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks and citations omitted). Additionally, "[b]ecause vicarious liability is inapplicable to ... 🟨 § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." 🟨 *Iqbal*, 556 U.S. at 676. ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). "Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." *Groves v. Davis*, No. 9:11-CV-1317 (GTS/RFT), 2012 WL 651919, at *6 (N.D.N.Y. Feb. 28, 2012) (citing 🟨 *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). Therefore, "a plaintiff must ... allege a tangible connection between the acts of a defendant and the injuries suffered." 🟨 *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

The Second Circuit has held that personal involvement by a supervisor necessary to state a claim under 🟨 § 1983 may be found where: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiff] by failing to act on information indicating that unconstitutional acts were occurring." 🚩*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[4]

Here, Plaintiff's complaint is devoid of allegations plausibly showing the existence of any of the *Colon* criteria in this case. (*See generally* Dkt. No. 1.) In fact, Mahoney's name only appears in the caption of the complaint and there is no explanation whatsoever of what claims are brought against her or how she violated Plaintiff's constitutional rights. "Where a defendant is listed in the caption but the body of the complaint fails to indicate what the defendant did to the plaintiff, dismissal is appropriate." *Scott v. Djeck*, No. 5:09-CV-1122 (GTS/GHL), 2010 WL 145297, at *3 (N.D.N.Y. Jan. 11, 2010); *see also Clark v. United States*, No. 1:16-CV-740 (BKS/CFH), 2016 WL 10570930, at *9, 11 (N.D.N.Y. Aug. 29, 2016). Therefore, the Court recommends dismissing Plaintiff's 🟨 § 1983 claims, if any, against Mahoney in her individual capacity pursuant to 42 U.S.C. § 1915(e) with leave to amend.

### 6. Claims against Private Actors

Private conduct is beyond the reach of 🟨 § 1983 "no matter how discriminatory or wrongful" that conduct may be. 🟨 *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) (citations omitted). Therefore, to the extent Plaintiff purports to sue Mahoney as a private actor, the Court recommends dismissing the claim with prejudice pursuant to 42 U.S.C. § 1915(e).

### 7. Claims for Discrimination

Plaintiff alleges "discrimination on me and stepson" of an unspecified nature. (Dkt. No. 1 at ¶ 5; *see also* Dkt. No. 1-1 at ¶ 4.) As discussed above, the purpose of Rule 8 of the FRCP "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson, supra*, 1998 WL 832708, at *1. Here, notwithstanding the above

Case 3:23-cv-01099-GTS-ML    Document 11    Filed 12/15/23    Page 47 of 85

**Bullock v. DSS, CPS, Commissioner, Not Reported in Fed. Supp. (2018)**

deficiencies, the Court further finds that Plaintiff's general allegation of "discrimination" fails to state a claim.

**\*7** To state an equal protection claim, a claimant must show that a government actor intentionally discriminated against him on the basis of race, nation origin, or gender. *Maher v. Roe*, 432 U.S. 464, 470 (1977); *see also Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) ("To prove an equal protection violation, claimants must prove purposeful discrimination directed at an identifiable or suspect class."). Such a showing has not been made here. Plaintiff's complaint is void of any allegations that he is a member of an identifiable or suspect class, nor has he alleged purposeful discrimination.

### C. Plaintiff's *Bivens* Claims

In the second complaint, Plaintiff sues DSS/CPS Onondaga County, DSS/CPS Commissioner, DSS, and CPS pursuant to *Bivens* claiming "discrimination on me and [J.S.]." (Dkt. No. 1-1.) However, "[a] *Bivens* action is intended to be one in which federal agents, as individuals, are liable for damages resulting from their actions when acting under color of federal law." *Shannon v. General Elec. Co.*, 612 F. Supp. 308, 323 (N.D.N.Y. 1993); *see also Moore v. Samuel S. Stratten Veterans Admin. Hosp.*, No. 1:16-cv-0475 (LEK/CFH), 2016 WL 3647180, at \*3 (N.D.N.Y. June 3, 2016) (holding parties can only be sued under *Bivens* if they are officers of the United States), *report-recommendation adopted by* 2016 WL 3659909 (June 30, 2016).

Inasmuch as these Defendants are not individual federal officials, the Court recommends dismissing Plaintiff's *Bivens* claims pursuant to 42 U.S.C. § 1915(e) with prejudice and without leave to amend. *See, e.g., Clark*, 2016 WL 10570930, at \*7-8 (recommending *sua sponte* dismissal of *Bivens* claims with prejudice and without opportunity to amend for failure to state a claim upon which relief may be granted), *report-recommendation adopted by* 2016 WL 6610734; *Moore*, 2016 WL 3647180 at \*3 (recommending *sua sponte* dismissal of *Bivens* claims with prejudice against the defendant hospital), *report-recommendation adopted by* 2016 WL 3659909.

### V. CONCLUSION

Based on the foregoing, the Court recommends dismissing Plaintiff's complaints (Dkt. Nos. 1 and 1-1) for failure to comply with the FRCP and pursuant to 42 U.S.C. § 1915(e). In deference to Plaintiff's *pro se* status, the Court recommends granting Plaintiff leave to amend his §

1983 claims as set forth herein.[5] However, because the problem with Plaintiff's *Bivens* claims is substantive, the Court recommends dismissing Plaintiff's *Bivens* claims with prejudice and without leave to amend.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**[6]; and it is further

**RECOMMENDED** that Plaintiff's complaints (Dkt. Nos. 1 and 1-1) be *sua sponte* **DISMISSED** for failure to comply with Rules 8 and 10 of the FRCP and for failure to state a claim on which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii); and it is further

**RECOMMENDED** that Plaintiff be granted thirty (30) days from the date of any Order adopting this Report-Recommendation to file an amended complaint pursuant to 42 U.S.C. § 1983 against Onondaga County and Onondaga County Executive Joanne M. Mahoney in her individual capacity; and it is further

**\*8 RECOMMENDED** that Plaintiff's *Bivens* claims against Defendants DSS/CPS Onondaga County, DSS/CPS Commissioner, DSS, and CPS be **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[7] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

**Bullock v. DSS, CPS, Commissioner, Not Reported in Fed. Supp. (2018)**

Case 3:23-cv-01099-GTS-ML    Document 11    Filed 12/15/23    Page 48 of 85

**All Citations**

Not Reported in Fed. Supp., 2018 WL 1115218

# Footnotes

1    For purposes of initial review, the Court presumes "DSS" refers to the "Department of Social Services" of Onondaga County and "CPS" refers to "Child Protective Services."

2    In the proposed summons (Dkt. No. 2-1), Plaintiff names "Onondaga County Executive Joanie Mahoney" as Defendant (Dkt. No. 2-1). Joanne M. Mahoney is County Executive for Onondaga County. *See generally* Onondaga County, New York, http:www.ongov.net (last visited Jan. 16, 2018). Thus, for purposes of initial review, the Court presumes Plaintiff intended to sue Onondaga County Executive Joanne M. Mahoney and will refer to Defendants "Joanie Mahoney" and "Jonie Mahoney" collectively as "Mahoney" throughout the Report-Recommendation.

3    Plaintiff will be provided with copies of unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

4    The Second Circuit has expressly declined to determine whether *Iqbal* eliminated any of the *Colon* bases for liability. *See* *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

5    If the District Court adopts this Report-Recommendation, any amended complaint brought under 42 U.S.C. § 1983 must comply with Rules 8 and 10 of the FRCP. Specifically, the amended complaint must contain a short and plain statement of the claim showing that Plaintiff is entitled to relief set forth in numbered paragraphs. Plaintiff must also set forth the type of relief sought.

6    Plaintiff should note that although his IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

7    If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**      © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Bullock v. DSS, CPS Commissioner, Not Reported in Fed. Supp. (2018)

Case 3:23-cv-01099-GTS-ML    Document 11    Filed 12/15/23    Page 49 of 85

2018 WL 1111059
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Saunduallee BULLOCK, Plaintiff,

v.

DSS, CPS COMMISSIONER, et al., Defendants.

5:17-CV-1302 (BKS/TWD)
|
Signed 02/26/2018

**Attorneys and Law Firms**

Saunduallee Bullock, Syracuse, NY Plaintiff, pro se.


**MEMORANDUM-DECISION AND ORDER**

Hon. Brenda K. Sannes, United States District Judge:

**\*1** Plaintiff pro se Saunduallee Bullock, commenced this action by filing a form civil rights complaint under 42 U.S.C. § 1983 and a form "Bivens Action" complaint, together with a motion for leave to proceed *in forma pauperis.* (Dkt. Nos. 1 and 1-1). This matter was referred to United States Magistrate Judge Thérèse Wiley Dancks who, on January 18, 2018, issued an Order and Report-Recommendation recommending that Plaintiff's complaints be dismissed for failure to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure and for failure to state a claim on which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii). (Dkt. No. 4 at 14). Magistrate Judge Dancks further recommended that Plaintiff be granted thirty (30) days to file an amended complaint under 42 U.S.C. § 1983 against Onondaga County and Onondaga County Executive Joanne M. Mahoney in her individual capacity, and that Plaintiff's *Bivens* claims against Defendants DSS/CPS Onondaga County, DSS/CPS Commissioner, DSS, and CPS be dismissed with prejudice and without leave to amend. (Dkt. No. 4 at 15). Magistrate Judge Dancks advised the Plaintiff that under 28 U.S.C. § 636(b)(1), he had fourteen days within which to file written objections to the report, and that the failure to object to the report within fourteen days would

preclude appellate review. (Dkt. No. 4 at 15). No objections to the Report-Recommendation have been filed. On February 20, 2018, the Plaintiff filed a motion for an extension of time to file an amended complaint, seeking the "maximum possible extension of time." (Dkt. No. 5).

As no objections to the Report-Recommendation have been filed, and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error. *See Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. Having reviewed the Report-Recommendation for clear error and found none, the Court adopts the Report-Recommendation in its entirety.

For these reasons, it is

**ORDERED** that the Report-Recommendation (Dkt. No. 4) is **ADOPTED** in its entirety; and it is further

**ORDERED** that plaintiff's complaints (Dkt. Nos. 1 and 1-1) are **DISMISSED** for failure to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure, and under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted; and it is further

**ORDERED** that plaintiff is granted forty-five (45) days from the date of this Order to file an amended complaint under 42 U.S.C. § 1983 against Onondaga County and Onondaga County Executive Joanne M. Mahoney in her individual capacity; and it is further

**ORDERED** that plaintiff's *Bivens* claims against Defendants DSS/CPS Onondaga County, DSS/CPS Commissioner, DSS, and CPS are **DISMISSED WITH PREJUDICE** and without leave to amend; and it is further

**ORDERED** that the Clerk serve a copy of this Order upon the plaintiff via regular and certified mail.

**\*2 IT IS SO ORDERED.**


**All Citations**

Not Reported in Fed. Supp., 2018 WL 1111059

WESTLAW    © 2023 Thomson Reuters. No claim to original U.S. Government Works.    1

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

## Attorneys and Law Firms

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

## DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:23-cv-01099-GTS-ML   Document 11   Filed 12/15/23   Page 51 of 85

additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss— the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right.

*See* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." Smiley v. Davis, 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge

recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See* Camardo v. General Motors Hourly–Rate Employees Pension Plan, 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); Chambrier v. Leonardo, 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); Schoolfield v. Dep't of Correction, 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); Vargas v. Keane, 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also* Scipio v. Keane, 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P.

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:23-cv-01099-GTS-ML    Document 11    Filed 12/15/23    Page 52 of 85

72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams,

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:23-cv-01099-GTS-ML    Document 11    Filed 12/15/23    Page 53 of 85

the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See* LaBounty v. Adler, 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing Ricciuti v. New York City Transit Authority, 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. Fonte v. Board of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting Williams v. Smith, 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. Gill v. Mooney, 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), 🚩*Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." 🚩*Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect within the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable 🚩§ 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. 🚩*Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); 🚩*Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (🚩section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under 🚩§ 1983. 🚩*Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under 🚩§ 1983. 🚩*Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:23-cv-01099-GTS-ML    Document 11    Filed 12/15/23    Page 55 of 85

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

## Footnotes

1    I note, however, that the report-recommendation would survive even *de novo* review.

    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-01099-GTS-ML    Document 11    Filed 12/15/23    Page 56 of 85

Mahmood v. United States Government, Not Reported in Fed. Supp. (2020)

2020 WL 3965125
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Mohammed Sayeed MAHMOOD, Plaintiff,
v.
UNITED STATES GOVERNMENT, Defendant.

Civ. No. 1:20-CV-207 (MAD/DJS)
|
Signed 03/17/2020

**Attorneys and Law Firms**

MOHAMMED SAYEED MAHMOOD, Plaintiff Pro Se,
9-4-86/89, Flat #201, Khan Tower, Salarjung Colony,
Hyderabad, Telangana 500 008, India.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

 **\*1** The Clerk has sent for review a civil Complaint filed
by Plaintiff. Dkt. No. 1, Compl. Plaintiff has not paid the
filing fee, but instead submitted a Motion to Proceed *in forma
pauperis* ("IFP"). Dkt. No. 2, IFP App. By separate Order,
this Court granted Plaintiff's Application to Proceed IFP. Also
pending are Motions for the Appointment of Counsel an to
Obtain and ECF Login. Dkt. Nos. 3 & 5. Now, in accordance
with 28 U.S.C. § 1915(e), the Court will *sua sponte* review
the sufficiency of the Complaint.

**I. DISCUSSION**

**A. Pleading Requirements**

Section 1915(e) of Title 28 of the United States Code
directs that, when a plaintiff seeks to proceed *in forma
pauperis*, "the court shall dismiss the case at any time if the
court determines that ... the action or appeal (i) is frivolous
or malicious; (ii) fails to state a claim on which relief may be
granted; or (iii) seeks monetary relief against a defendant who
is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).
Thus, it is a court's responsibility to determine that a plaintiff

may properly maintain his complaint before permitting him
to proceed further with his action.

In reviewing a *pro se* complaint, this Court has a duty to
show liberality toward *pro se* litigants, *see Nance v. Kelly,*
912 F.2d 605, 606 (2d Cir. 1990), and should exercise
"extreme caution ... in ordering *sua sponte* dismissal of a
pro se complaint *before* the adverse party has been served
and both parties (but particularly the plaintiff) have had
an opportunity to respond." *Anderson v. Coughlin,* 700
F.2d 37, 41 (2d Cir. 1983) (emphasis in original) (citations
omitted). Therefore, a court should not dismiss a complaint if
the plaintiff has stated "enough facts to state a claim to relief
that is plausible on its face." *Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 570 (2007). "A claim has facial plausibility
when the plaintiff pleads factual content that allows the court
to draw the reasonable inference that the defendant is liable
for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S.
662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550
U.S. at 556). Although the court should construe the factual
allegations in the light most favorable to the plaintiff, "the
tenet that a court must accept as true all of the allegations
contained in a complaint is inapplicable to legal conclusions."
*Id.* "Threadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice."
*Id.* (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 555).
"[W]here the well-pleaded facts do not permit the court
to infer more than the mere possibility of misconduct, the
complaint has alleged – but it has not 'show[n]'–'that the
pleader is entitled to relief.' " *Id.* at 679 (quoting FED.
R. CIV. P. 8(a)(2)). A pleading that only "tenders naked
assertions devoid of further factual enhancement" will not
suffice. *Id.* at 678-79 (citing *Bell Atl. Corp. v. Twombly,*
550 U.S. at 555, for the proposition that Federal Rule of
Civil Procedure 8 "demands more than an unadorned, the-
defendant-unlawfully-harmed-me accusation"). Allegations
that "are so vague as to fail to give the defendants adequate
notice of the claims against them" are subject to dismissal.
*Sheehy v. Brown,* 335 Fed. Appx. 102, 104 (2d Cir. 2009).

**B. Allegations Contained in Plaintiff's Complaint**

 **\*2** Plaintiff characterizes this action as one against the
United States Government for personal injury, assault and
battery, defamation, general damages, intentional infliction

Case 3:23-cv-01099-GTS-ML   Document 11   Filed 12/15/23   Page 57 of 85

Mahmood v. United States Government, Not Reported in Fed. Supp. (2020)

of mental distress and physical torture, and wage loss. Compl. at pp. 6-7. In summary, Plaintiff alleges a pattern of "unethical, unlawful, and inhumane Electronic Surveillance, Mind-Control, and Cyber-Stalking activities" by unnamed officials of the United States Government. *Id.* at p. 7. He makes slightly more specific allegations including alleged physical stalking and monitoring, as well as, phone and cyber stalking of Plaintiff, *id.* at p. 3, allegations that Defendant forced Plaintiff "to travel to United States through cyber stalking and mind control techniques," *id.* at p. 4, and forced Plaintiff to incur debt, make fraudulent money transfers, and make fraudulent benefits applications. *Id.* at p. 5.

### C. Review under Section 1915(e)

"Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). Where, however, the grounds for dismissal offer no basis for curing the defects in the pleading, leave to amend would be futile. *Kunz v. Brazill*, 2015 WL 792096, at *3 (N.D.N.Y. Feb. 25, 2015). When the basis for dismissal is a defendant's entitlement to immunity, for example, the pleading defects are "substantive rather than formal and [ ] leave to amend would be futile." *Jackson v. Pfau*, 523 Fed. Appx. 736, 737 (2d Cir. 2013).

Plaintiff's claims against the United States Government are subject to dismissal on the grounds of sovereign immunity. "Well-established principles of sovereign immunity bar suit against the United States unless it consents to be sued, the existence of such consent being a prerequisite for jurisdiction." *Pietrangelo v. U.S. Dist. Court Vermont*, 223 Fed. Appx. 20, 21 (2d Cir. 2007) (citing *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). "In any suit in which the United States is a defendant, there must be a cause of action, subject matter jurisdiction, and a waiver of sovereign immunity. The waiver of sovereign immunity is a prerequisite to subject-matter jurisdiction." *Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of Hous. & Urban Dev.*, 175 F.3d 132, 139 (2d Cir. 1999). "Consent to suit 'must be unequivocally expressed in statutory text, and cannot simply be implied.' " *Pietrangelo v. U.S. Dist. Court Vermont*, 223

Fed. Appx. at 21 (quoting *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004)).

Plaintiff makes no contention here that any waiver of this immunity applies to the allegations set forth in the Complaint. While the Federal Tort Claims Act ("FTCA") provides a limited immunity from suit for tort claims, it has strict exhaustion requirements. *Hill v. United States*, 2019 WL 5694016, at *5 (E.D.N.Y. Aug. 6, 2019). "The burden is on the plaintiff to both plead and prove compliance with the [FTCA's] statutory requirements." *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987). The Complaint neither mentions the FTCA nor alleges compliance with it. "Accordingly, even if a *pro se* plaintiff's complaint can be liberally construed to state a claim under the FTCA ... the court does not have subject matter jurisdiction over the FTCA claim if [the] plaintiff has neither pleaded that he filed an administrative claim within two years of the incident giving rise to the action, nor that he exhausted an administrative tort claim prior to initiating the instant action." *Moore v. Samuel S. Stratton Veterans Admin. Hosp.*, 2019 WL 251725, at *3 (N.D.N.Y. Jan. 17, 2019) (internal quotations omitted). As such, his claims against the United States should be dismissed with prejudice.

### D. Other Pending Motions

**\*3** In light of the recommended disposition of this case, Plaintiff's other pending Motions are denied.

"In deciding whether to appoint counsel, a court should first determine whether the indigent's position seems likely to be of substance." *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995). Here, given the Defendant's immunity from suit, Plaintiff cannot make this threshold showing of merit and the Motion for Appointment of Counsel is denied.

"Because this court is recommending dismissal at this time, the court will deny [P]laintiff's motion to obtain ECF privileges without prejudice." *Amato v. McGinty*, 2017 WL 9487185, at *11 (N.D.N.Y. June 6, 2017), *report and recommendation adopted*, 2017 WL 4083575 (N.D.N.Y. Sept. 15, 2017).

### II. CONCLUSION

Case 3:23-cv-01099-GTS-ML    Document 11    Filed 12/15/23    Page 58 of 85

Mahmood v. United States Government, Not Reported in Fed. Supp. (2020)

**ACCORDINGLY**, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED** with prejudice; and it is

**ORDERED**, that Plaintiff's Motion for Appointment of Counsel is **DENIED**; and it is further

**ORDERED**, that Plaintiff's Motion to Obtain an ECF Login and Password is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by certified mail, return receipt requested, upon Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [1] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**All Citations**

Not Reported in Fed. Supp., 2020 WL 3965125

## Footnotes

1    If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 1808206
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Mohammed Sayeed MAHMOOD, Plaintiff,

v.

UNITED STATES of America, Defendant.

1:20-CV-207 (MAD/DJS)
|
Signed 04/09/2020

**Attorneys and Law Firms**

MOHAMMED SAYEED MAHMOOD, 9-4-86/89, Flat #201, Khan Tower, Salarjung Colony, Hyderabad, Telangana 500 008, India, Plaintiff pro se.

**ORDER**

Mae A. D'Agostino, U.S. District Judge:

**\*1** Plaintiff commenced this action on February 25, 2020, against the United States of America asserting the following claims: (1) personal injury; (2) assault and battery; (3) defamation; (4) general damages; (5) intentional infliction of mental distress and physical torture; and (6) wage loss. *See* Dkt. No. 1. In a Report-Recommendation and Order dated March 17, 2020, Magistrate Judge Stewart reviewed the sufficiency of the complaint and recommended that the Court dismiss this action with prejudice. *See* Dkt. No. 7. Specifically, Magistrate Judge Stewart found that Plaintiff's claims, which are brought against the United States of America, are subject to dismissal on the grounds of sovereign immunity. *See id.* at 4-6. Neither party has objected to Magistrate Judge Stewart's Report-Recommendation and Order.

Section 1915(e)(2)(B) directs that, when a plaintiff seeks to proceed IFP, "(2) ... the court shall dismiss the case at any time if the court determines that - ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp.

2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The Second Circuit has held that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party declines to file objections or files "[g]eneral or conclusory objections or objections which merely recite the same arguments [presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted); *see also McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007). After the appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." 28 U.S.C. § 636(b)(1).

In the present matter, the Court finds that Magistrate Judge Stewart correctly determined that Plaintiff's complaint should be dismissed with prejudice. "Well-established principles of sovereign immunity bar suit against the United States unless it consents to be sued, the existence of such consent being a prerequisite for jurisdiction." *Pietrangelo v. U.S. Dist. Court Vermont*, 223 Fed. Appx. 20, 21 (2d Cir. 2007) (citing *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). "The waiver of sovereign immunity is a prerequisite to subject-matter jurisdiction." *Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of Hous. & Urban Dev.*, 175 F.3d 132, 139 (2d Cir. 1999).

**\*2** As Magistrate Judge Stewart correctly determined, Plaintiff makes no contention that any waiver of immunity applies to the allegations set forth in his complaint. Moreover, although the Federal Tort Claims Act ("FTCA") provides a limited waiver of sovereign immunity from suit for tort claims against the United States, it has strict exhaustion requirements and the burden is on the plaintiff to both plead and prove compliance with the FTCA's statutory exhaustion requirements. *See In re Agent Orange Prod. Liab. Litig.*,

**Mahmood v. United States, Not Reported in Fed. Supp. (2020)**

Case 3:23-cv-01099-GTS-ML    Document 11    Filed 12/15/23    Page 60 of 85

818 F.2d 210, 214 (2d Cir. 1987). Plaintiff's complaint neither mentions the FTCA nor alleges compliance with its exhaustion requirements. *See Pope v. Geo Grp.*, No. 18-CV-6900, 2019 WL 79426, *3 (E.D.N.Y. Jan. 2, 2019) ("Accordingly, even if a *pro se* 'plaintiff's complaint can be liberally construed to state a claim under the FTCA ... the court does not have subject matter jurisdiction over' the FTCA claim if [the] 'plaintiff has neither pleaded that he filed an administrative claim within two years of the incident giving rise to the action, nor that he exhausted an administrative tort claim prior to initiating the instant action' ") (quoting *Diaz v. MDC Detention* Ctr., No. 17-CV-3768, 2018 WL 472810, *2 (E.D.N.Y. Jan. 17, 2018)). As such, the Court dismisses Plaintiff's complaint. [1]

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Stewart's Report-Recommendation and Order (Dkt. No. 7) is **ADOPTED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED without prejudice**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 1808206

---

### Footnotes

1    Since Plaintiff's complaint can be liberally construed as attempting to bring a claim under the FTCA and because it is unclear from the complaint whether Plaintiff may still timely exhaust his administrative remedies, the dismissal will be without prejudice. *See Green v. Fed. Bureau of Prisons*, No. 11 Civ. 2554, 2012 WL 1694632, *3 (S.D.N.Y. May 15, 2012) (holding that if a court dismisses a complaint "for failure to exhaust administrative remedies, dismissal without prejudice is appropriate if the time permitted for pursuant administrative remedies has not expired") (citing 🚩 *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004)).

---

2018 WL 5811426
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

William PRAILEAU, in rem, Plaintiff,

v.

UNITED STATES, et al., Defendants.

Civ. No. 1:18-CV-1196 (MAD/DJS)
|
Signed 11/06/2018

**Attorneys and Law Firms**

WILLIAM PRAILEAU, Plaintiff, Pro Se, 1108 Barrett Street, Schenectady, New York 12305.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk has sent for review a civil Complaint filed by *pro se* Plaintiff William Praileau. Dkt. No. 1, Compl. Plaintiff has not paid the filing fee, but instead submitted a Motion to Proceed *In Forma Pauperis* ("IFP"). Dkt. No. 2, IFP App. By separate Order, this Court granted Plaintiff's Application to Proceed IFP. Now, in accordance with 28 U.S.C. § 1915(e), the Court will *sua sponte* review the sufficiency of the Complaint.

**I. DISCUSSION**

**A. Pleading Requirements**

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action.

In reviewing a *pro se* complaint, this Court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (emphasis in original) (citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2) ). A pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* at 678-79 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555, for the proposition that Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 Fed. Appx. 102, 104 (2d Cir. 2009).

**B. Allegations Contained in Plaintiff's Complaint**

**\*2** Plaintiff is a prolific litigator who has filed numerous prior lawsuits, in this Court and others, some involving claims nearly identical to those raised here. *See Praileau v. New York*, 2017 WL 6033738, at \*2 n. 2 (N.D.N.Y. Nov. 8, 2017), *report and recommendation adopted*, 2017 WL 6033420 (N.D.N.Y. Dec. 5, 2017). Plaintiff characterizes this action as one against

Case 3:23-cv-01099-GTS-ML   Document 11   Filed 12/15/23   Page 62 of 85

**Praileau v. United States, Not Reported in Fed. Supp. (2018)**

the United States and those he claims to be acting as its agents "as part of an enterprise engaged in covert institutionalized slavery." Compl. at p. 4. The Complaint contains a lengthy historical recitation of the history of slavery in the United States and asserts Plaintiff's position that the United States, acting as a corporation, has continued to utilize policies and practices to abuse the human rights of individuals. *Id.* at pp. 6-16. Plaintiff then asserts eight specifically enumerated causes of action asserting claims for false imprisonment, conspiracy, and abuse of process. He seeks 500 million dollars in damages. *Id.* at p. 40.

The Complaint identifies certain individuals and entities as Defendants. Compl. at pp. 1-3. Plaintiff also identifies a number of other individuals who are "members of the conspiracy," but notes that he lacks the fiscal means to serve them with process, *id.* at pp. 3-4, and so the Court concludes that no claims are asserted against these individuals and others who, though named in the Complaint, have not been specifically identified as Defendants.

**C. Review under Section 1915(e)**

"Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991) ). Where, however, the grounds for dismissal offer no basis for curing the defects in the pleading, leave to amend would be futile. *Kunz v. Brazill*, 2015 WL 792096, at *3 (N.D.N.Y. Feb. 25, 2015). When the basis for dismissal is a defendant's entitlement to immunity, for example, the pleading defects are "substantive rather than formal and [ ] leave to amend would be futile." *Jackson v. Pfau*, 523 Fed. Appx. 736, 737 (2d Cir. 2013).

*1. Sovereign Immunity*

Throughout the Complaint Plaintiff makes general allegations that the United States has acted unlawfully and/or is responsible for the actions of others Plaintiff alleges to be agents of the United States. These claims are subject to dismissal on the grounds of sovereign immunity. "Well-established principles of sovereign immunity bar suit against the United States unless it consents to be sued, the existence of such consent being a prerequisite for jurisdiction." *Pietrangelo v. U.S. Dist. Court Vermont*, 223 Fed. Appx. 20, 21 (2d Cir. 2007) (citing *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ). "In any suit in which the United States is a defendant, there must be a cause of action, subject matter jurisdiction, and a waiver of sovereign immunity. The waiver of sovereign immunity is a prerequisite to subject-matter jurisdiction." *Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of Hous. & Urban Dev.*, 175 F.3d 132, 139 (2d Cir. 1999). "Consent to suit 'must be unequivocally expressed in statutory text, and cannot simply be implied.' " *Pietrangelo v. U.S. Dist. Court Vermont*, 223 Fed. Appx. at 21 (quoting *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) ). Plaintiff makes no contention here that any waiver of this immunity applies to the allegations set forth in the Complaint and, as such, his claims against the United States should be dismissed with prejudice. [1]

**\*3** Plaintiff's claim against the United States District Court for the Northern District of New York is similarly barred by sovereign immunity. *Pietrangelo v. U.S. Dist. Court Vermont*, 223 Fed. Appx. at 22; *Neroni v. Peebles*, 2014 WL 12768331, at *3 (N.D.N.Y. June 20, 2014).

Plaintiff's claims against the New York State Unified Court System are also subject to dismissal. The Second Circuit has expressly held that "the New York State Unified Court System is unquestionably an arm of the State and is entitled to Eleventh Amendment sovereign immunity." *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009) (internal quotation and citation omitted).

*2. Absolute Immunity* [2]

In actions brought under 42 U.S.C. § 1983 judges and prosecutors enjoy absolute immunity from suit for actions taken in the performance of their duties. *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994) (noting that "[j]udges enjoy absolute immunity from personal liability for 'acts committed within their judicial jurisdiction' ") (quoting *Pierson v. Ray*, 386 U.S. 547 (1967) ); *Hartman v. Moore*, 547 U.S. 250, 261-62 (2006) (citing *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976), for the proposition that prosecutors

are absolutely immune for actions related to the prosecutorial function).

Defendants Hoye and Drago are identified by Plaintiff as County Court Judges. Compl. at p. 3. They are named as Defendants in Plaintiff's third cause of action where Plaintiff appears to allege that they acted improperly in their capacity as Judges. *Id.* at pp. 20-21. Specifically, Hoye is alleged have issued an invalid judgment against Plaintiff because a valid accusatory instrument was never presented against Plaintiff. *Id.* at ¶¶ 27-28. Defendant Drago is alleged to have "validated the exercise of jurisdiction with the false accusatory instrument." *Id.* at ¶ 30.[3] This conduct clearly relates to the official duties of a judge and so Plaintiff's claims in this regard are barred by absolute immunity. *Young v. Selsky,* 41 F.3d at 51; *Bliven v. Hunt,* 579 F.3d 204, 210 (2d Cir. 2009) ("[A]cts arising out of, or related to, individual cases before the judge are considered judicial in nature").

Next, Plaintiff contends that Schenectady County Assistant District Attorney Amy Burock violated his rights when she "presented a SUPERIOR COURT INFORMATION as an indictment VOTED ON BY THE GRAND JURY" in violation of New York law. Compl. at ¶ 30 (emphasis in original). These allegations clearly relate to her official duties as a prosecutor and are barred by absolute immunity. The law is well established that "absolute immunity extends to those acts, whether in or out of the courtroom, which occur in the course of the [prosecutor's] role as an advocate for the State.'" *Pinaud v. Cty. of Suffolk,* 52 F.3d 1139, 1148 (2d Cir. 1995) (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 272 (1993) ); *see also Byrne v. City of New York,* 736 Fed. Appx. 263, 265-66 (2d Cir. 2018). Thus, Plaintiff cannot state cognizable claims against these individuals and each should be dismissed with prejudice.[4]

### 3. Claims against the City of New York

**\*4** The last named Defendant in this action is the City of New York. Compl. at p. 2. While Plaintiff makes reference to certain events alleged to have taken place in the City of New York, *see, e.g., id.* at pp. 26-28, Plaintiff fails to articulate in what way the City of New York itself has violated any right of Plaintiff. The claim against the City, therefore, is entirely conclusory, not supported by any factual allegations, and properly subject to dismissal under section 1915(e). *Praileau v. United States,* 2017 WL 4350584, at *4 (dismissing claim against City of New York when the complaint "provides no facts to support a claim for relief against" it). Because better pleading might enable Plaintiff to state a claim against the City of New York, this dismissal should be without prejudice.[5]

## II. CONCLUSION

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be dismissed with prejudice as to Defendants The United States, United States District Court, Northern District of New York, New York State Unified Court System, Hoye, Drago, and Burock, pursuant to 28 U.S.C. § 1915 for failure to state a claim; and it is further

**RECOMMENDED**, that Plaintiff's Complaint be dismissed without prejudice as to Defendant City of New York pursuant to 28 U.S.C. § 1915 for failure to state a claim; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by certified mail, return receipt requested, upon Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[6] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir. 1989) ); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

## All Citations

Not Reported in Fed. Supp., 2018 WL 5811426

Praileau v. United States, Not Reported in Fed. Supp. (2018)

Case 3:23-cv-01099-GTS-ML    Document 11    Filed 12/15/23    Page 64 of 85

## Footnotes

1    The Court notes that similar claims made by Plaintiff have previously been denied under ⚑section 1915(e) (2)(B)(i) as frivolous. *Praileau v. United States*, 2017 WL 4350584, at *3 (S.D.N.Y. May 3, 2017).

2    The Court notes that although immunity from suit is a defense that would be raised by a defendant, the Second Circuit has held that, for purposes of an initial review under ⚑28 U.S.C. § 1915, a court may find that a complaint is based on an indisputably meritless legal theory if a defense "appears on the face of the complaint," and may validly raise such a claim *sua sponte*. ⚑*Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (collecting cases throughout the various Circuit Courts of Appeal that have upheld ⚑§ 1915 dismissals based upon defenses that appear on the face of the complaint). The Court notes, as set forth below, that Plaintiff will have an opportunity to present any objections he has to this Court's recommendations to the assigned District Judge.

3    Similar allegations against Hoye and Drago are made in paragraphs 102-106.

4    These claims, or at least nearly identical claims, have also been previously dismissed as barred under the rule in ⚑*Heck v. Humphrey*, 512 U.S. 477 (1994). *Praileau v. New York*, 2017 WL 6033738, at *4-5 (N.D.N.Y. Nov. 8, 2017), *report and recommendation adopted*, 2017 WL 6033420 (N.D.N.Y. Dec. 5, 2017).

5    The Court notes additionally that any claim against the City of New York resulting from events in the City of New York is mostly likely properly venued in either the Southern or Eastern District of New York, not in this Court. *Peterson v. Fed. Gov't of United States*, 2017 WL 6628660, at *1 (W.D.N.Y. Oct. 24, 2017) (citing venue provision in ⚑28 U.S.C. § 1391(b) ).

6    If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

---

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2023 Thomson Reuters. No claim to original U.S. Government Works.    4

Praileau v. United States, Not Reported in Fed. Supp. (2019)

Case 3:23-cv-01099-GTS-ML    Document 11    Filed 12/15/23    Page 65 of 85

2019 WL 422528
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

William PRAILEAU, Plaintiff,

v.

UNITED STATES of America, et al., Defendants.

1:18-CV-1196 (MAD/DJS)
|
Signed 02/04/2019

**Attorneys and Law Firms**

WILLIAM PRAILEAU, 1108 Barrett Street, Schenectady,
New York 12305, Plaintiff pro se.

### ORDER

Mae A. D'Agostino, U.S. District Judge

 **\*1** William Praileau, Plaintiff, acting *pro se*, filed a
complaint against the United States, the United States
District Court for the Northern District of New York,
the New York State Unified Court System, the City of
New York, Polly Hoye, Karen Drago, and Amy Burock
(collectively, "Defendants"). *See* Dkt. No. 1. Plaintiff asserts
that Defendants are "part of an enterprise engaged in covert
institutionalized slavery." *Id.* at 4. Plaintiff enumerates eight
causes of action based on false imprisonment, conspiracy,
abuse of process, and conversion. *See id.* at 16, 19, 20,
23, 29, 31, 32, 38. On the same day Plaintiff filed his
complaint, Plaintiff also filed an application to proceed *in
forma pauperis. See* Dkt. No. 2.

Magistrate Judge Daniel J. Stewart granted Plaintiff's
application and conducted an initial review of the complaint.
*See* Dkt. No. 5. Upon review, Magistrate Judge Stewart
recommended that the Court find that Plaintiff's complaint
failed to state a claim against Defendants. *See id.* at
8-9. Specifically, Magistrate Judge Stewart recommended
Plaintiff's complaint be dismissed with prejudice as to
the United States, the United States District Court for
the Northern District of New York, the New York State
Unified Court System, Polly Hoye, Karen Drago, and Amy
Burock. *See id.* As to Defendant City of New York, it
was recommended Plaintiff's complaint be dismissed without
prejudice. *See id.* at 9. The Report-Recommendation and

Order was entered on November 6, 2018 and a copy was
mailed to Plaintiff the same day. *See id.* On November
26 and 27, 2018, Plaintiff submitted his objections to the
recommendation. *See* Dkt. Nos. 8 & 9.

Plaintiff's objections contain a myriad of arguments against
the Court's exercise of personal jurisdiction over Plaintiff.
*See, e.g.,* Dkt. No. 8 (asserting the mailing of the
recommended disposition was "covert subterfuge to obtain
jurisdiction over the [Plaintiff]"). Plaintiff also objects to the
manner in which the recommended disposition was mailed to
him. *See id.* (arguing that the Court used the wrong address,
improperly used a zip code on the mailing, used a "legally
district [sic]" name on the mailing as compared to the name
used on the recommended disposition, and all of this was
willfully done under the auspices of "the corporation, THE
UNITED STATES"). Plaintiff concludes with a general, all
inclusive objection to the recommended disposition. *See id.*

When a party files specific objections to a magistrate judge's
report-recommendation, the district court makes a "de novo
determination of those portions of the report or specified
proposed findings or recommendations to which objection
is made." 28 U.S.C. § 636(b)(1). However, "[g]eneral
or conclusory objections, or objections which merely recite
the same arguments presented to the magistrate judge, are
reviewed for clear error. *See O'Diah v. Mawhir*, No. 9:08-
CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011)
(citing *Farid v. Bouey*, 554 F. Supp. 2d 301, 306 (N.D.N.Y.
2008) ).

 **\*2** As Magistrate Judge Stewart correctly found Plaintiff's
claims against the United States, the United States District
Court for the Northern District of New York, and the
New York State Unified Court System are subject to
dismissal based on the doctrine of sovereign immunity. "Well-
established principles of sovereign immunity bar suit against
the United States unless it consents to be sued, the existence
of such being a prerequisite for jurisdiction." *Pietrangelo v.
U.S. Dist. Court Vermont*, 223 Fed. Appx. 20, 21 (2d Cir.
2007) (citing *United States v. Mitchell*, 463 U.S. 206, 212
(1983) ). "Consent to suit 'must be unequivocally expressed
in statutory text, and cannot simply be implied.' " *Id.* (quoting
*Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004)
). Similarly, claims against the United States District Courts
and the New York State Unified Court System are barred by
the doctrine of sovereign immunity. *See Pietrangelo*, 223 Fed.

Praileau v. United States, Not Reported in Fed. Supp. (2019)

Case 3:23-cv-01099-GTS-ML    Document 11    Filed 12/15/23    Page 66 of 85

Appx. at 22; *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009).

Moreover, Magistrate Judge Stewart correctly held that Plaintiff's claims against Karen Drago, Amy Burock, and Polly Hoye are subject to dismissal based on the doctrine of absolute immunity. "Judges enjoy absolute immunity from personal liability for 'acts committed within their judicial jurisdiction.' " *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967) ). Plaintiff has identified Karen Drago and Polly Hoye as county judges. *See* Dkt. No. 1 at 3. Polly Hoye's alleged liability arises from "assum[ing] jurisdiction over the Plaintiff ... [although] a valid accusatory instrument ... was never properly acquired." *Id.* at 20. Karen Drago's alleged liability arises from the same. *See id.* (alleging that Defendant Drago "validated the exercise of jurisdiction with the false accusatory instrument"). The alleged liabilities of these County Judges clearly arises from alleged "acts committed within their judicial jurisdiction," *Pierson*, 386 U.S. at 554, and, as such, they cannot be held personally liable. *See Young*, 41 F.3d at 51.

Similarly, the doctrine of absolute immunity also "extends to those acts, whether in or out of the courtroom, 'which occur in the course of the [prosecutor's] role as an advocate for the State.' " *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1148 (2d Cir. 1995) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 272 (1993) ). Defendant Amy Burock's liability arises from her prosecution of Plaintiff's criminal case. *See* Dkt. No. 1. at 31-32. Clearly these alleged acts "occur[ed] in the course of [Burock's] role as an advocate for the State," *Buckley*, 509 U.S. at 272, and she is entitled to absolute immunity. Since these Defendants are entitled to immunity from suit, Magistrate Judge Stewart correctly determined that the claims against them should be dismissed with prejudice.

Plaintiff has also named the City of New York as a Defendant and alleges that some events giving rise to this suit took place there. *See* Dkt. No. 1 at 26-28. However, the allegations fail to allege how the City of New York, itself, is liable to Plaintiff. Better pleading may enable Plaintiff to properly state a claim against the City of New York, and for this reason, the Court dismisses the claim against the City of New York without prejudice. [1]

Upon review of the Report-Recommendation and Order and the applicable law, there Court hereby

**ORDERS** that Magistrate Judge Daniel J. Stewart's Report-Recommendation and Order is **ADOPTED** in its entirety for the reasons stated herein; and the Court further

**\*3 ORDERS** Plaintiff's Complaint is **DISMISSED with prejudice** as to the United States, the United States District Court for the Northern District of New York, the New York State Unified Court System, Polly Hoye, Karen Drago, and Amy Burock; and the Court further

**ORDERS** that Plaintiff's Complaint is **DISMISSED without prejudice** as to the City of New York; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 422528

---

**Footnotes**

1    The Court notes that any claim Plaintiff wishes to pursue against the City of New York resulting from events that occurred there would likely only be properly venued in either the Eastern or Southern District of New York, not in this Court. *See* 28 U.S.C. § 1391(b).

Praileau v. United States, Not Reported in Fed. Supp. (2019)

Case 3:23-cv-01099-GTS-ML    Document 11    Filed 12/15/23    Page 67 of 85

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Moore v. Samuel S. Stratten Veterans Administration Hospital, Not Reported in Fed....

Case 3:23-cv-01099-GTS-ML   Document 11   Filed 12/15/23   Page 68 of 85

2016 WL 3659909
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

David Allen MOORE, Plaintiff,
v.
SAMUEL S. STRATTEN VETERANS
ADMINISTRATION HOSPITAL, Defendant.

1:16-cv-0475 (LEK/CFH)
|
Signed 06/30/2016

**Attorneys and Law Firms**

David Allen Moore, Johnstown, NY, pro se.

### ORDER

Lawrence E. Kahn, U.S. District Judge

**\*1** This matter comes before the Court following a Report-Recommendation filed on June 3, 2016, by the Honorable Christian F. Hummel, U.S. Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3. Dkt. No. 11 ("Report-Recommendation").

Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." FED. R. CIV. P. 72(b); L.R. 72.1(c). If no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report-recommendation only for clear error. Barnes v. Prack, No. 11-CV-0857, 2013 WL 1121353, at \*1 (N.D.N.Y. Mar. 18, 2013); Farid v. Bouey, 554 F. Supp. 2d 301, 306-07 & 306 n.2 (N.D.N.Y. 2008); see also Machicote v. Ercole, No. 06 Civ. 13320, 2011 WL 3809920, at \*2 (S.D.N.Y. Aug. 25, 2011) ("[E]ven a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that

no party be allowed a second bite at the apple by simply relitigating a prior argument."). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b).

No objections were filed in the allotted time period. See Docket. The Court has reviewed the Report-Recommendation for clear error and has found none.

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 11) is **APPROVED and ADOPTED in its entirety**; and it is further

**ORDERED**, that Plaintiff's Applications (Dkt. Nos. 7, 10) to proceed *in forma pauperis* are **GRANTED**; and it is further

**ORDERED**, that the following claims are **DISMISSED with prejudice**: (1) Plaintiff's Bivens claims against Defendant Hospital; (2) Plaintiff's Bivens claims against the unnamed guard/officer in his official capacity; and (3) Plaintiff's claims for injunctive relief; and it is further

**ORDERED**, that Plaintiff's speedy trial claims be **DISMISSED without prejudice** and with leave to amend to permit Plaintiff the opportunity to (a) explain how the unnamed hospital guard was involved in the alleged speedy trial violations and/or (b) name any other defendants who may have been involved and provide sufficient detail of such involvement; and it is further

**ORDERED**, that Plaintiff's remaining claims survive initial review and require a response; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2016 WL 3659909

---

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 2770368
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Henry COX, Plaintiff,

v.

NEW YORK STATE; United
States of America, Defendants.

1:23-CV-0060 (MAD/CFH)
|
Signed April 4, 2023

**Attorneys and Law Firms**

Henry Cox, 08-B-1418, Upstate Correctional Facility, P.O.
Box 2001, Malone, New York 12953, Plaintiff pro se.

**REPORT-RECOMMENDATION & ORDER**

Christian F. Hummel, United States Magistrate Judge

 **\*1**  Plaintiff pro se Henry Cox purported to commence this
action on January 17, 2023, with the filing of a complaint.
See Dkt. No. 1. As plaintiff failed to pay this Court's filing
fee or submit a complete application for leave to proceed in
forma pauperis ("IFP"), the Court issued an order directing
administrative closure with opportunity to comply with the
filing fee requirement. See Dkt. No. 5. On February 1, 2023,
plaintiff submitted a motion to proceed in forma pauperis. See
Dkt. No. 6, 7. That day, the Clerk was directed to reopen
this action and restore it to the Court's active docket. See Dkt.
No. 8. Presently before the Court is review of plaintiff's IFP
application. See Dkt. Nos. 6, 7.

**I. IFP Application**

After review of plaintiff's renewed IFP application, the Court
concludes that he financially qualifies to proceed without
prepayment of this Court's filing fee. [1] Plaintiff is advised that
IFP status does not include other fees or costs that may be
associated with this litigation, including, but not limited to,
copying fees, transcription fees, and witness fees. As plaintiff
has been granted IFP status, the Court proceeds to review of
his complaint pursuant to 28 U.S.C. § 1915(e).

**II. Legal Standards**

Section 1915(e) of Title 28 of the United States Code
directs that, when a plaintiff seeks to proceed IFP, "the court
shall dismiss the case at any time if the court determines that ...
the action ... (i) is frivolous or malicious; (ii) fails to state a
claim on which relief may be granted; or (iii) seeks monetary
relief against a defendant who is immune from such relief."
28 U.S.C. § 1915(e)(2)(B). Likewise, under 28 U.S.C. §
1915A, a court must review any "complaint in a civil action
in which a prisoner seeks redress from a governmental entity
or officer or employee of a governmental entity" and must
"identify cognizable claims or dismiss the complaint, or any
portion of the complaint, if the complaint ... is frivolous,
malicious, or fails to state a claim upon which relief may
be granted; or ... seeks monetary relief from a defendant
who is immune from such relief." 28 U.S.C. § 1915A;
see Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999) (per
curiam) (explaining that section 1915A applies to all actions
brought by prisoners against government officials); Abbas
v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both
sections 1915 and 1915A are available to evaluate pro se
prisoner complaints).

It is a court's responsibility to determine that a plaintiff may
properly maintain his complaint before permitting him to
proceed with his action. Where the plaintiff is proceeding
pro se, the court must consider the claims "liberally" and
"interpret them 'to raise the strongest arguments that they
suggest.' " Cold Stone Creamery, Inc. v. Gorman, 361 F.
App'x 282, 286 (2d Cir. 2010) (summary order) (quoting
Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006)). It
is well-established that "[p]ro se submissions are reviewed
with special solicitude, and 'must be construed liberally and
interpreted to raise the strongest arguments that they suggest.'
" Matheson v. Deutsche Bank Nat'l Tr. Co., 706 F.Appx. 24,
26 (2d Cir. 2017) (summary order) (quoting Triestman v.
Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006))
(per curiam); Sealed Plaintiff v. Sealed Defendant, 537
F.3d 185, 191 (2d Cir. 2008) (Where a plaintiff proceeds pro
se, a court is "obliged to construe his pleadings liberally.")
(quoting McEachin v. McGuinnis, 357 F.3d 197, 200 (2d
Cir. 2004)). However, this approach "does not exempt a [pro
se litigant] from compliance with relevant rules of procedural

and substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). The Court may not "invent factual allegations that [the plaintiff] has not pled." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).

**\*2** "The [Second Circuit's] 'special solicitude' for pro se pleadings, Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994), has its limits, because pro se pleadings still must comply with Rule 8(a) of the Federal Rules of Civil Procedure." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at \*2 (S.D.N.Y. Dec. 13, 2019).[2] Pleading guidelines are set forth in the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought....

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d).

Further, Rule 10 of the Federal Rules provides:

[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted).

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

Ashcroft v. Iqbal, 556 U.S. 622, 678 (2009). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).

Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" does not suffice." Id. (internal quotation marks and alterations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order). Indeed, a complaint that fails to comply with these pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D.

352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

### III. **Complaint**

**\*3** Plaintiff seeks to sue the State of New York, "in full capacity," and the United States of America, "Federal Agencies." Dkt. No. 1 ("Compl."). Plaintiff alleges, generally, that his case is based upon the "mass incarceration" of minorities in the United States. See id. He says the "(PRS) sentencing, the sentencing, and the treatment thereof between white and Black people are Boas and racist denying due process rights of Blacks and subjects them to cruel and unusual punishment revolving around the 8 th amendment." Id. Plaintiff states that "African-Americans (Black people) are incarcerated 5x more than [sic] their white counterpart [sic]." Id. at 3. Plaintiff avers that there are "a number of problem's [sic] centered around the above problems that lead to Constitutional violations and should be reviewed and dealt with (addressed)." Id. Plaintiff states that the "[r]easons for the overflow of drugs and guns in inner city is on the shoulders of our government (contra-Vietnam war)." Id. Plaintiff contends that these "drugs and guns was [sic] used to take money out [sic] the inner-city and use it to support the war" which "caused destruction and actions of violence and dug use that lead [sic] to incarceration." Id. Plaintiff contends that this "target of the inner city reflect [sic] the number of Black people targeted and locked up or killed by these actions of government officials." Id.

Plaintiff further blames unspecified "Government Officials" for "money being cut from inner-city schools all over the United States and here in New York State" every year. See Compl. at 4. Plaintiff asserts that there "was a Bill introduced by the above mentioned ["David Weprin in Assembly"] in the beginning so they know that the problem existed yet they keep the sentencing and don't change nothing [sic] about it and know its disappropreating [sic] black people, and at the same time destroying the inner city." Id. Plaintiff contends that "[t]his is unconstitutional as Government Officials have

a [sic] obligation to/with absolute duties to uphold justice and serve and protect the people fair and equal in the eyes of the law; the 14 th Amendment (due process) protects that; the 5 th amendment (due process) protects that, the 8 th amendment (due process & crule [sic] and unusual punishment [sic] protects that." Id. Plaintiff proposes, the "13 th amendment shall be revisited." Id. at 4.

Plaintiff states that "[b]ecause of the above I been [sic] lost in the system since 11 years old and subjected to drug abuse and disappropreation [sic] of a Black household and in these same institutions for children all the way to an adult I been in these institutions from 11 to 34 years old for 19 ½ years, 18 1/12 years. It's almost like you cant [sic] get out once your [sic] in the grips of this system." Compl. at 5. Plaintiff states, "[w]hen is the United State [sic] government agencies and the States (New York State) gona [sic] take responsibility and clean up there [sic] mess and fix the enviorment [sic] they help destroy and continue to destroy to this day." Id. Plaintiff states he "lived through deaths and gun violence and drugs that you are responsible for." Id.

Plaintiff argues the "FRCAs [sovereign immunity] waiver applies only to the federal government and not to agencies within the Federal Government." Compl. at 5. He further states that sovereign immunity "shouldn't exist when there is a clear violation of the Constitution for then what would be the reason for 'Law' or the 'Unite [sic] States of America. This [illegible] gives way to abuse of power by government agencies." Compl. at 5. Plaintiff provides, "[y]our courts state: failure to state a claim upon which relief can be granted; All claims herein are stated with enough facts and address to what relief can be granted so as to there is no way this motion should be denied." Id. at 6.

Among those responsible for plaintiff's above complaints are "government agencies (FBI, CIA-Counterintel Program and 'War on Drugs with Contra & Vietnam War), the Judges sentencing Blacks and Whites, the Aid or lack thereof of the Gov. Budget toward Black; (People of Color) and Schooling and DOCCS." Compl. at 6. "The addressing [sic] officers and targeting Blacks not only with skin color in mind but with aggression and violence, and then the Immunity Clauses in these government agencies playing a high role in accountability or lack there of [sic]." Id. Plaintiff states, "[a]ll of which is in the body of this argument and needs to be addressed by these courts and I seek relief under this act after being subjected to all of the above for 34 years for

having my constitutional rights state and federal violated (5th amendment due process, 14th amendment due process, 8th amendment due process and cruel and unusual punishment, and the unconstitutional adoption of the 13th amendment, and by your dinial [sic] of the courts as it pertains to these issues silencing the voice of reason and change violating my 1st amendment." Id.

**\*4** Plaintiff also challenges the constitutionality of post-release supervision, apparently as it relates to the length of post-release supervision sentences for those who have been convicted of rape when compared to other crimes. See Compl. at 8. He states that post-release supervision "not only has cost us money but taken us outside our sentencing and going over the max with said supervision, this action the courts has already ruled on" but "what was not argued is the bias and discrimination within the post release supervision guidelines" specific to "a program set for rapist [sic] and people in jail for rape to supervise them for long period after their sentence." Id. Plaintiff states that the "bias is that the other crimes that fall under this post-release supervision act that don't have a thought process around it. It's just throw away the key and if they find it then post release supervision." Id. at 8. Plaintiff then appears to contend that people who have been convicted of rape are given greater opportunities for release when compared with people who have been convicted of different crimes. See id. at 9. Plaintiff believes that "something is wrong with that picture and it begins with sentencing and prison reform." Id. Plaintiff appears to suggest that the difficulties, bias, and discrimination that people of color face should be a consideration for sentencing and post-release supervision. See id.

Plaintiff states, "[t]o give someone a max time allowed under the sentencing guidelines in NYS and then PRS on top of that means 5 years past the max (if you violate you could add more time on top of the max) with that and the above actions it shows Constitutional violation under the 14th amendment and 8th amendment." See Compl. at 5. Plaintiff notes that his case "could be a potential class action lawsuit." Id.

For plaintiff's first cause of action, he states

> To stop discriminating against Black people dealing with post release supervision sentencing with bias as apose [sic] to their white counter

part [sic]. This is a violation to the Constitutional rights of Black people doing time in prison or who committe [sic] a crime. They are not being treated fair and/or equal.

Compl. at 13. For his second cause of action, plaintiff lists

> the fair use of post-release supervision, dealing with rape & vilent [sic] crimes. (PRS) was used for rapist not vilent [sic] crimes and is aplied [sic] diffrent [sic] favouring [sic] rape. Rape is a mental illness, the vilent [sic] crimes being committed is environmental making it a [sic] easyer [sic] fix[.] The sentencing should reflect that. [I]t violates Due Process.

Id.

For his third cause of action, plaintiff states

> [T]he due process of aplying [sic] (PRS) to determind [sic] sentencing as vilent [sic] crimes. There is a max time allowed under the sentencing guidelines and (PRS) can take you pass [sic] that max time (up to 5 years pass [sic] that max time). That person [sic] due process is violated when the time go pass [sic] the max with the (PRS) comes from Rape cases where PRS is ran with the sentencing just so it dont [sic] violate the sentencing guidelines.

Compl. at 13. For his fourth cause of action, plaintiff states

> Revisiting the 13th amendment provisions that opened the door for Jim Crow ie mass incarceration of black people (people of color) making it

unconstitutional why the build white cities off the bodies of people of color after being responsible for why they being locked up. This is targeting. So I ask targeting be stopped [sic] as well.

Id. at 14. Lastly, plaintiff's fifth cause of action states

> Mass incarcerating in the State of New York and the United States of America (federal agencies) violation of the rights and targeting Blacks (people of color (Latino) other) violation of the Constitution to not being subjected to disappropriation [sic] and disreguard [sic] of Black rights and life be stopped and people caught up in that violent Drug wave caused by the Government and sentenced be compensate [sic] suffered. myself included[.]

Id. Plaintiff seeks $500 million in compensatory damages and $500 million in punitive damages. See Compl. at 14.

### IV. Analysis

To the extent it can be determined, plaintiff appears to claim that his arrest, prosecution, incarceration, and sentence – and the arrests, prosecutions, incarcerations, and sentences of people of color in general – violate his First, Fifth, Eighth, and Fourteenth Amendment rights. See Compl. at 5. Although not explicitly stated as such, plaintiff also appears to seek to raise equal protection claims,[3] contending that people of color are being treated differently than similarly-situated white people insofar as people of color are being arrested and incarcerated at either higher rates than white people who have committed the same crimes. See generally Compl. Next, plaintiff appears to challenge the constitutionality of post-release supervision, generally, because post-release supervision could "extend a sentence" beyond the maximum allowable sentence for that crime. Plaintiff also appears to argue that post-release supervision is warranted and constitutional for those who have committed rape, but for those who have committed other crimes, it is unconstitutional.

Next, plaintiff asks the Court to "revisit" the Thirteenth Amendment as suggests that people of color, generally, are being "targeted" and incarcerated, apparently in violation of the Thirteenth Amendment's prohibition against slavery or involuntary servitude. See Compl. at 4.

**\*5** As a threshold issue, to the extent plaintiff purports to claim that he brings this case on behalf of himself or others similarly situated or will seek certification of this case as a class action in the future, see compl. at 5, is well-settled law that a class action cannot be maintained by a pro se litigant because a non-attorney cannot represent someone other than themselves. See, e.g., Miller v. Zerillo, No. 07-CV-1719, 2007 WL 4898361, at \*1 (E.D.N.Y. Nov. 2, 2007) (citing cases and recommending denial of class certification without prejudice should an attorney appear in the case); see also Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998); 28 U.S.C.§ 1654. Moreover, to the extent plaintiff's comment can be interpreted as a request for class certification, in addition to failing because plaintiff cannot proceed on a class action pro se, such a request is also denied because it was not made through a proper motion and does not satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. Thus, to the extent plaintiff's complaint seeks to allege that any wrongs were imposed on any persons other than himself, because he cannot proceed as a class action at this time, such claims will be interpreted only insofar as they impact plaintiff, individually. Accordingly, to the extent plaintiff's complaint can be read as seeking class certification, it is recommended that the request be denied.

On the merits, there are several bars to plaintiff's complaint, many of them fatal. First, because plaintiff seeks to sue the United States and/or its agencies, these claims are barred by sovereign immunity. Although plaintiff argues that federal agencies are not protected from suit by sovereign immunity, citing the Federal Torts Claims Act ("FCTA"), plaintiff misunderstands the law. See Compl. at 5.

"To begin with, the doctrine of sovereign immunity bars federal courts from hearing all suits against the federal government, *including suits against federal agencies*, unless sovereign immunity has been waived." Rochelle Marettta-Brooks, et al. Plaintiff, v. Comm'r of Soc. Sec., et al. Defendants, No. 5:22-CV-1261 (BKS/ML), 2023 WL 2655195, at \*5 (N.D.N.Y. Mar. 27, 2023) (emphasis added) (citing United States v. Mitchell, 445 U.S. 535, 538

(1980)); 🚩 Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994) (" 'Because an action against a federal agency ... is essentially a suit against the United States, such suits are ... barred under the doctrine of sovereign immunity, unless such immunity is waived.' "); see also 🚩 F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994) (citing 🚩 Loeffler v. Frank, 486 U.S. 549, 554 (1988)) (holding that sovereign immunity "shields the [United States] and its agencies from suit[.]"). In addition, plaintiff carries the burden of demonstrating that sovereign immunity has been waived. See 🚩 Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

Plaintiff does not mention 🚩 Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971),[4] but to the extent he names the United States as a defendant and appears to also seek to name the FBI and CIA, Compl. at 6, he would only be able to proceed under Bivens if he were to name specific federal officers. See ⚠️ Sereika v. Patel, 411 F. Supp. 2d 397, 402 (S.D.N.Y. 2006) (citing 🚩 Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994)) (noting that the United States cannot be sued under Bivens because a claim against a federal agency "is essentially a suit against the United States, and Bivens actions against the United States are barred under the doctrine of sovereign immunity."). "[T]o state a Bivens claim, a plaintiff must allege that he has been deprived of a constitutional right by a federal agent acting under color of federal authority and must allege that the individual defendant was personally involved in the constitutional violation." 🚩 O'Donoghue v. United States Soc. Sec. Admin., 828 F. App'x 784, 787 (2d Cir. 2020) (summary order). Claims can only be brought against federal agents in their individual capacities for actions taken while the employee was acting under the color of federal law and may only seek monetary damages. See, e.g., Rivera v. Fed. Bureau of Investigation, No. 5:16-CV-00997 (NAM/TWD), 2016 WL 6081435, at *4 (N.D.N.Y. Sept. 13, 2016), report and recommendation adopted, No. 5:16-CV-00997 (NAM/TWD), 2016 WL 6072392 (N.D.N.Y. Oct. 17, 2016) (" 'The only remedy available in a Bivens action is an award of monetary damages from defendants in their individual capacities.' .... Since a court may award only money damages on a Bivens claim, claims for injunctive relief are unavailable.") (quoting 🚩 Higazy v. Templeton, 505 F.3d 161, 169 (2d Cir. 2007) and citing Kurzberg v.

Ashcroft, 619 F.3d 176, 179 n.2 (2d Cir. 2010)). Further, "[a] plaintiff in a Bivens action must allege facts indicating that the defendant was personally involved in the claimed constitutional violation." Vazquez v. Astrue, No. 5:18-CV-1492 (DNH/ATB), 2019 WL 4686440, at *5 (N.D.N.Y. Sept. 26, 2019), report and recommendation adopted, No. 5:18-CV-1492 (DNH/ATB), 2019 WL 6914775 (N.D.N.Y. Dec. 19, 2019) (citing 🚩 Alharbi v. Miller, 368 F. Supp. 3d 527, 564 (E.D.N.Y. 2019) and 🚩 Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009)). Further, a plaintiff must show that "there is no alternative way in which the plaintiff can seek relief for the violation of the plaintiff's constitutional right." Moore v. U.S. Postal Service, No. 01-CV-1609, 2005 WL 165386, at *11 (N.D.N.Y. Jan. 13, 2005).

**\*6** To the extent plaintiff seeks to sue the United States or federal agencies for violations of his constitutional rights, regardless of the form of relief requested, plaintiff cannot proceed under Bivens. See, e.g., 🚩 Perez v. Hawk, 302 F. Supp. 2d 9, 18 (E.D.N.Y. 2004) ("[T]he United States is immune from constitutional tort claims against the United States, its agencies, or federal employees sued in their official capacities."); 🚩 Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).

Further, even if plaintiff had properly named individual federal officers as defendants – which he has not – very few constitutional claims can proceed under Bivens. The Supreme Court has held that Bivens allows claims with respect to two[5] additional and specific constitutional claims: pursuant to the Fifth Amendment relating to sex discrimination in employment and the Eighth Amendment Cruel and Unusual Punishments Clause for failure to provide adequate medical treatment to a federal prisoner. See Wiley v. Fernandez, 9:10-CV-652 (GTS/CFH), 2021 WL 6550821, at *4 (citing 🚩 Davis v. Passman, 442 U.S. 228 (1979); 🚩 Carlson v. Green, 446 U.S. 14 (1980)). Indeed, in 🚩 Ziglar v. Abbasi, 582 U.S. 120, 137 S.Ct. 1843, 1857 (2017), the Supreme Court of the United States "urged lower courts to exercise restraint in creating implied causes of action against federal officials to enforce constitutional rights in new contexts, and went so far as to clarify that ' "expanding the Bivens remedy is now a 'disfavored' judicial activity." ' " Wilson v. Bolt, 9:18-CV-416 (DNH/TWD), 2019 WL 5197335, at *5 (N.D.N.Y. May 28, 2019) (quoting 🚩 Ziglar, 137 S.Ct. at 1857) (additional citation omitted).

To the extent plaintiff cites the First Amendment and may be seeking to bring a claim for monetary damages pursuant to <u>Bivens</u>, even if plaintiff had properly named a federal agent in his or her individual capacity, [6] such a claim must be dismissed with prejudice as the Supreme Court of the United States recently confirmed, "there is no <u>Bivens</u>'s action for First Amendment retaliation." ⚑ Egbert v. Boule, 213 L. Ed. 2d 54, 142 S. Ct. 1793, 1807 (2022).

Next, although plaintiff cites the Fifth and Eighth Amendments in passing, he fails to set forth any specifics explaining how any federal agents violated his Fifth or Eighth Amendment rights. <u>See</u> Compl. at 6. Thus, even while <u>Bivens</u> has been extended in limited contexts to claims for Fifth or Eighth Amendment violations – sex discrimination in employment and medical indifference with respect to a federal prisoner – plaintiff does not set forth any allegations that fit within these narrow expansions of <u>Bivens</u> and the allegations within his case – concerning racial bias relating to his arrest, prosecution, incarceration, and sentencing – are wholly unrelated to these narrow constitutional claims found by the Supreme Court to be allowed under <u>Bivens</u>. [7] In sum, to the extent plaintiff seeks to bring claims for monetary damages or for injunctive relief for violations of his First, Fifth, or Eighth Amendment rights against United States, any federal agencies, or any federal employees under <u>Bivens</u>, it is recommended that such claims be dismissed with prejudice. In addition to dismissal on the merits, the Court notes that it would appear that any <u>Bivens</u> claims would also be barred by Heck unless and until plaintiff could satisfy Heck's conditions. [8]

**\*7** Despite the United States' general sovereign immunity from suit,

> The Federal Tort Claims Act ... provides a limited waiver of sovereign immunity that allows the United States to be sued for certain torts as if it had been a private party. The FTCA's "remedy against the United States" for damages "arising from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding against the employee." 28 U.S.C. § 2679(b)(1).

Xiang Li v. Duncan, No. 5:12-CV-1427 (LEK/DEP), 2013 WL 4483078, at \*2 (N.D.N.Y. Aug. 20, 2013) (internal citation omitted). However, the FTCA "bars suits against

federal agencies, such as the Department of Justice, which includes the USAO, and provides an exclusive remedy against the United States." <u>Id.</u> (citing 28 U.S.C. § 2679(a)).

Here, although plaintiff makes a passing reference to the FTCA, his complaint is lacking any facts that support a claim based on the FTCA. <u>See</u>, e.g., Lepre v. New York State Ins. Fund, No. 1:13-CV-0926 (GTS/CFH), 2014 WL 4093658, at \*6 (N.D.N.Y. Aug. 18, 2014) (noting that the FTCA waives sovereign immunity from torts committed by federal employees acting within the scope of their employment, including "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights [.]") (quoting 28 U.S.C. §§ 2680(h)). He does not state what claims he seeks to bring pursuant to the FTCA. Insofar as plaintiff may be seeking to raise his constitutional claims pursuant to the FTCA, such claims must be dismissed because, "although the FTCA waived the United States' sovereign immunity as to certain claims, it does not waive immunity for claims of constitutional violations." Rivera v. US N. Dist. Ct. Albany, No. 1:21-CV-995 (MAD/DJS), 2022 WL 17985924, at \*1 (N.D.N.Y. Dec. 28, 2022) (affirming Report-Recommendation of the Magistrate Judge by holding that "constitutional claims are subject to dismissal because the FTCA does not waive the United States' sovereign immunity as to claims asserting constitutional violations.") (citing ⚑ F.D.I.C. v. Meyer, 510 U.S. 471 (1994)).

Furthermore, even if plaintiff had set forth claims that would properly fall under the FTCA, he has not shown that he has exhausted his administrative remedies.

> Section 2675(a) of the FTCA states that an FTCA action "shall not be instituted" unless a claimant has "first presented the claim to the appropriate Federal agency" and received a final denial of that claim. <u>See also</u> 28 U.S.C. § 2401(b) (stating that an FTCA claim is "forever barred" unless presented in writing to the appropriate federal agency within two years of accrual).

Xiang Li, 2013 WL 4483078, at \*2; <u>see also</u> Lepre, 2014 WL 3093658, at \*7 ("[A]n FTCA claim must be filed with the court within six years of its accrual. A plaintiff's FTCA claim accrues at the time of injury.") (citing ⚑ Barrett v. United States, 689 F.2d 324, 327 (2d Cir. 1982)).

**\*8** Any potential FTCA claim that calls into question his arrest, prosecution, incarceration, or sentencing would be barred by <u>Heck</u> unless and until plaintiff is able to demonstrate favorable termination. The <u>Heck</u> applies to bar FTCA actions that imply the invalidity of a conviction. As plaintiff appears to base any FTCA claims on his allegations that his arrest, prosecution, incarceration, and sentence, including his post-release supervision, are based on racial bias and violate of his constitutional rights, these challenges can only be brought through a habeas corpus petition. [9]

Accordingly, it is recommended that any claim plaintiff may be seeking to raise against the United States under the FTCA be dismissed without prejudice and with opportunity to amend should plaintiff be able to demonstrate (1) that his conviction has been overturned or otherwise deemed invalidated by a court of law or an FTCA claim that does not call into question the validity of his conviction; (2) a claim against the United States that falls within the FTCA; and (3) proper exhaustion of his administrative remedies under the FTCA.

Next, plaintiff's claims against the State of New York for monetary damages are barred by the state's sovereign immunity. "As a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress." <u>Jackson v. Battaglia</u>, 63 F. Supp. 2d 214, 219-20 (N.D.N.Y. 2014) (citation omitted). Plaintiff appears to seek to bring his claims against the State of New York for the alleged violations of his constitutional rights under section 1983.

The Eleventh Amendment bars claims for money damages and injunctive or declaratory relief against a state or an arm of the state unless the state has specifically waived, or Congress has abrogated, its sovereign immunity.

See <u>Cory v. White</u>, 457 U.S. 85, 90-91 (1982); <u>Edelman v. Jordan</u>, 415 U.S. 651, 667-69 (1974). New York State has not waived its sovereign immunity and Congress has not abrogated its sovereign immunity in § 1983 actions. See <u>Jones v. N.Y.</u> <u>Div. of Military & Naval Affairs</u>, 166 F.3d 45, 49 (2d Cir. 1999).

<u>Ennis v. New York Dep't of Parole</u>, No. 5:18-CV-00501 (GTS/TWD), 2018 WL 3869151, at \*4 (N.D.N.Y. June 12, 2018), <u>report and recommendation adopted</u>, 2018 WL 3862683 (N.D.N.Y. Aug. 14, 2018). Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. See <u>Quern v. Jordan</u>, 440 U.S. 332, 340-41 (1979). Instead, plaintiff must seek to sue a state official(s) in his or her individual capacity. See <u>Farid v. Smith</u>, 850 F.2d 917, 921 (2d Cir. 1988) (noting that a lawsuit against a state official in his official capacity is a suit against the entity employing the official).

Moreover, although the Eleventh Amendment "generally does not bar claims for prospective injunctive or declaratory relief" against individual officers sued in their individual capacities, plaintiff does not name any state officials as defendants in this action. [10] <u>Quern, 440 U.S. at 338.</u> However, even if plaintiff had named individual state officers in their individual capacities – which he has not – his claims for prospective injunctive relief would still fail. As to his requested prospective injunctive relief, plaintiff appears to allege, generally, that terms of post-release supervision violate "due process" as post-release supervision can "extend" a sentence beyond its maximum term of imprisonment. Compl. at 8. However, as will be discussed below, <u>infra</u> at 16, his requested injunctive relief cannot be granted under section 1983 as claims regarding plaintiff's sentencing or post-release supervision term must instead be brought pursuant to a habeas corpus petition. Accordingly, it is recommended that (1) any claims that can be interpreted as being raised against the State of New York under <u>42 U.S.C. § 1983</u> for monetary damages for alleged violations of plaintiff's constitutional rights be dismissed due to the state's sovereign immunity under the Eleventh Amendment, and (2) any claims for injunctive relief relating to his term of post-release supervision be dismissed with prejudice as such relief must be sought pursuant to a habeas corpus petition and not pursuant to <u>section 1983</u>.

**\*9** Even if sovereign immunity were not a bar to plaintiff's claims against the United States and/or federal agencies and the State of New York, plaintiff's claims also fail under <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).

Plaintiff appears to allege that his sentence, and any period of post-release supervision, may be unconstitutional because it is a product of racial bias. This claim is not appropriately brought through a ⚑ section 1983 or Bivens case because a determination in plaintiff's favor regarding the constitutionality of plaintiff's criminal prosecution, conviction, or sentence would undermine the validity of his conviction; thus, it and is barred under Heck. See ⚑ Heck, 512 U.S. at 486-87. Plaintiff cannot recover damages in a ⚑ section 1983 action "for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless he can demonstrate that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. Plaintiff has not shown that his convictions have been overturned or otherwise resolved in his favor. [11]

Insofar as plaintiff may be suggesting that post-release supervision violates his constitutional rights by extending the length of his sentence, "such a challenge can only be brought in federal court pursuant to a ⚑ 28 U.S.C. § 2254 petition for a writ of habeas corpus, not through a ⚑ § 1983 complaint." Peoples v. Leon, No. 9:18-CV-1349 (LEK/DEP), 2019 WL 13158025, at *3 (N.D.N.Y. Feb. 19, 2019) (citing ⚑ Hardy v. Fischer, 701 F. Supp. 2d 614, 621 (S.D.N.Y. 2010) ("[P]laintiffs must bring challenges to the validity or duration of their PRS sentences by seeking a writ of habeas corpus.")). Accordingly, all claims relating to the length of plaintiff's sentence or post-release supervision also must be dismissed as such claims can be reviewed only through a petition from habeas corpus. See Peoples, 2019 WL 13158025, at *3.

Furthermore, to the extent plaintiff seeks to enjoin various unnamed law enforcement and/or government agencies from depriving people of their constitutional rights, plaintiff should "be cautioned that [he] would have to demonstrate that [he] has standing to seek such an injunction." Jackson v. Exec. Off. of United States Att'ys, No. 07CIV6591 (RJH/DCF), 2009 WL 10677067, at *8 (S.D.N.Y. Feb. 2, 2009), report and recommendation adopted sub nom. Jackson v. Exec. Off. for United States Att'ys, No. 07 CIV. 6591, 2009 WL 10677136 (S.D.N.Y. Mar. 26, 2009), aff'd sub nom. ⚑ Jackson v. Cnty.

of Rockland, 450 F. App'x 15 (2d Cir. 2011) (noting that to demonstrate standing for such injunctive relief, the plaintiff would need to show that "there is a substantial likelihood that she, personally, is likely to be injured again by any allegedly unconstitutional law enforcement practices.")

Similarly, to the extent plaintiff argues, generally, that people of color are being arrested and incarcerated for drug and other crimes at a disproportionately higher rate than white people, and seeks that the Court order that bias against people of color in arrest and sentencing cease and that the "13 [th] amendment" be "revisited" is not relief this Court can award. Initially, plaintiff fails to state how his constitutional rights were violated or specify the persons/ entities involved in the deprivation of his constitutional rights. Secondly, this Court does not direct legislative policy, such as sentencing reform; constitutional conventions; or control school funding. Such matters would appear more appropriate for elected officials. To the extent plaintiff may be suggesting that he is being subjected to "involuntary servitude" [12] in violation of the Thirteenth Amendment, such claim must fail because, in addition to being barred by Heck, such an allegation is frivolous. The Thirteenth Amendment explicitly states, "Neither slavery nor involuntary servitude, except as a punishment for a crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. CONST. AMEND. XIII (emphasis added). Plaintiff does not dispute that he is incarcerated following his conviction for a crime. According to the New York State DOCCS "Incarcerated Lookup," plaintiff is incarcerated for Robbery in the First Degree. See DOCCS Incarcerated Lookup, available at https://nysdoccslookup.doccs.ny.gov/ (last visited Mar. 30, 2023).

*10 Finally, the undersigned also must determine whether the recommendation is for dismissal with or without prejudice. When addressing a pro se complaint, a district court generally "should not [be] dismiss[ed] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." ⚑ Shomo v. City of New York, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks and citation omitted). However, the Court is not required to grant leave to amend when amendment would be futile. See ⚑ Cuoco v. Mortisugu, 222 F.3d 99, 112 (2d Cir. 2000). In this case, because "[t]he problem[s] with [plaintiff's] causes of action [are] substantive[,] better pleading will not cure [them,]"

and any attempt to amend would, therefore, be futile. Id.; see, e.g., Mahmoud v. United States Gov't, No. 1:20-CV-207 (MAD/DJS), 2020 WL 3965125, at *2 (N.D.N.Y. Mar. 17, 2020) ("As such, his claims against the United States should be dismissed with prejudice."), report and recommendation adopted sub nom. Mahmoud v. United States, No. 1:20-CV-207 (MAD/DJS), 2020 WL 1808206 (N.D.N.Y. Apr. 9, 2020); Praileau v. United States, No. 1:18-CV-1196 (MAD/DJS), 2018 WL 5811426, at *3 (N.D.N.Y. Nov. 6, 2018) (recommending the dismissal of claims against the United States and its agencies with prejudice because such claims were barred by sovereign immunity), report and recommendation adopted, No. 1:18-CV-1196 (MAD/DJS), 2019 WL 422528 (N.D.N.Y. Feb. 4, 2019); Moore v. Samuel S. Stratten Veterans Admin. Hosp., No. 1:16-CV-0475 (LEK/CFH), 2016 WL 3659909, at *1 (N.D.N.Y. June 30, 2016) (dismissing claims against agency of the United States with prejudice and without leave to amend).

Here, as plaintiff's potential ⚐ section 1983 and Bivens claims are barred by sovereign immunity, Heck v. Humphrey, and, to the extent it relates to the length or constitutionality of his sentence or post-release supervision, must be brought as a habeas corpus petition, no change to his pleading will cure these particular bars. However, despite finding it unlikely that plaintiff can state a cognizable claim for relief relating to the claims he set forth in this action, recognizing that plaintiff is pro se, the undersigned recommends providing plaintiff with one opportunity to amend to the extent he may able to state a cognizable claim for relief in an amended pleading.

## V. **Conclusion**

Wherefore, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's IFP application, dkt. nos. 6, 7, is **GRANTED** for purposes of filing; and it is

**RECOMMENDED**, that plaintiff's complaint, dkt. no. 1, be **DISMISSED as follows:**

(1) claims for monetary relief against the State of New York for alleged violations of his constitutional rights pursuant to ⚐ 42 U.S.C. § 1983; and all claims against the United States, the Federal Bureau of Investigation ("FBI"), and the Central Intelligence Agency ("CIA") pursuant to Bivens be **DISMISSED WITH PREJUDICE**;

(2) potential claims pursuant to the First, Fifth and Eighth Amendment claims pursuant to Bivens against federal agents in their individual or official capacities be **DISMISSED WITH PREJUDICE**;

(3) potential claims against state officers in their individual capacities for monetary or injunctive relief or in their official capacities for prospective injunctive relief for violations of plaintiff's constitutional rights pursuant to ⚐ 42 U.S.C. § 1983 be **DISMISSED WITHOUT PREJUDICE**;

(4) claims relating to the length or constitutionality of plaintiff's sentence or post-release supervision be **DISMISSED WITH PREJUDICE** and without opportunity to amend in this action, but without prejudice to plaintiff bringing a habeas corpus proceeding if he is able to do so; [13]

(5) constitutional claims against the United States pursuant to the Federal Tort Claims Act be **DISMISSED WITH PREJUDICE**;

(6) potential claims against the United States under the Federal Tort Claims Act, not arising from constitutional claims, be **DISMISSED WITHOUT PREJUDICE** and with opportunity to amend as specified herein;

**\*11** (7) potential claims that allege that plaintiff's arrest, prosecution, incarceration, or sentencing was the product of racial bias, in violation of ⚐ 42 U.S.C. § 1983, as stated against (a) the State of New York, for prospective, injunctive relief, and (b) potential claims against individual officers in their personal capacities for monetary or injunctive relief, which are barred by Heck v. Humphrey, be **DISMISSED WITHOUT PREJUDICE** and with opportunity to amend *only in the event that plaintiff can demonstrate that his conviction has been overturned or otherwise resolved in his favor;*

(8) plaintiff's apparent contention that unspecified defendants violated the Thirteenth Amendment and his request that the Court "revisit" the Thirteenth Amendment, either pursuant to ⚐ section 1983 or Bivens, be **DISMISSED WITH PREJUDICE**;

(9) plaintiff's apparent request to proceed as a class action be **DISMISSED WITHOUT PREJUDICE** [14]; and it is further

**RECOMMENDED**, that if the District Judge permits plaintiff an opportunity to amend, plaintiff be given thirty (30) days from the filing date of the District Judge's Decision & Order to file an amended complaint, [15] and if plaintiff fails to file an amended complaint within that time period, the matter be closed without further order of the Court;

**ORDERED**, that the Clerk of the Court serve this Report-Recommendation & Order on plaintiff in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14) days** within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW. See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a). [16]

**All Citations**

Slip Copy, 2023 WL 2770368

## Footnotes

1    Plaintiff is reminded that he will be required to pay this Court's $350 filing fee for incarcerated plaintiffs through installment payments through his inmate account. Plaintiff is required to pay this filing fee regardless of the outcome of this action. See 28 U.S.C. § 1915(b); Goins v. DeCaro, 241 F.3d 260, 262 (2d Cir. 2001).

2    Copies of all unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff pro se.

3    Plaintiff also makes similar allegations of "bias" in sentencing between people convicted of rape versus people convicted of other crimes. See Compl. at 8. However, plaintiff has failed to show that those who have been convicted of rapes and sentenced to periods of post-release supervision "similarly-situated" to persons who have been convicted of other (unspecified) crimes who have been sentenced to longer periods of post-release supervision or that there is no "rational basis" for the differential treatment. "The Equal Protection Clause 'is essentially a direction that all persons similarly situated should be treated alike.' " Bill & Ted's Riviera, Inc. v. Cuomo, 494 F. Supp. 3d 238, 245 (N.D.N.Y. 2020) (quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citation omitted)). As plaintiff does not, with respect to this argument, claim that he is a member of a constitutionally-protected class, he may only bring " 'an equal protection claim pursuant to one of two theories: (1) selective enforcement, or (2) 'class of one.' " Bill & Ted's Riviera, Inc., 494 F. Supp. 3d at 246 (quoting AYDM Assoc., LLC v. Town of Pamelia, 205 F. Supp.3d 252, 265 (N.D.N.Y. 2016)).

4    In Bivens, the Supreme Court of the United States "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." Correctional Services Corp. v. Malesko, 534 U.S. 61, 66 (2001).

5    Bivens itself recognized that "a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim." Hernandez v. Mesa, 206 L. Ed. 2d 29, 140 S. Ct. 735, 741 (2020)

6    As with his other claims, plaintiff's First Amendment claim also would fail under Bivens because plaintiff cannot proceed against the United States or its agencies, but has not identified the specific federal agents

that plaintiff alleges to have been personally involved in violating his First Amendment rights. Additionally, despite conclusorily claiming that his First Amendment rights were violated, plaintiff sets forth no facts to support a First Amendment violation.

7    Further, plaintiff has made only generalized and vague allegations and has failed to set forth facts to support a claim that a specific federal employee(s) deprived him of his federal or constitutional rights while acting under the color of federal authority. See O'Donoghue, 828 F. App'x at 787.

8    As the undersigned recommends dismissal on the merits with prejudice, dismissal without prejudice is not warranted on the basis of Heck because even if plaintiff were to overcome the Heck bar in the future, his Bivens claims would still be meritless.

9    As plaintiff has not actually set forth any clear FTCA claim, the undersigned cannot state with certainty that any FTCA claim plaintiff may raise would implicate Heck. Accordingly, the without prejudice dismissal recommendation takes into account the possibility that plaintiff may intend to raise an FTCA claim that would not call the validity of his conviction into question.

10   Plaintiff is advised that personal involvement of the state official in the alleged violation of constitutional rights is a prerequisite to an award of damages under § 1983. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).

11   Although plaintiff attempts to couch his allegations in the complaint and causes of action as non-specific and applying to people of color as a whole, it appears that this may an attempt to find a loophole to avoid a Heck dismissal. As already stated, plaintiff cannot bring claims on behalf of others. Accordingly, plaintiff's generalized language does not alter the fact that such a claim is barred by Heck.

12   To be clear, plaintiff makes no claim that he is being forced to work. Instead, it appears that he may be suggesting that his involuntary incarceration is violative of the Thirteenth Amendment.

13   The Court makes no comment as to whether plaintiff may properly proceed with a habeas corpus petition.

14   Dismissal without prejudice is recommended to account for the possibility that plaintiff could obtain counsel.

15   Plaintiff is advised that if the District Judge, following review of this Report-Recommendation & Order, permits plaintiff an opportunity to amend, plaintiff may proceed only on those claims that were not dismissed by this Court with prejudice. Further, any amended complaint will supersede and replace the original complaint it its entirety. Thus, plaintiff must replead any facts or claims he wishes to include and may not incorporate by reference any portion of the original complaint.

16   If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. See FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(C).

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 6862505
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Henry COX, Plaintiff,
v.
NEW YORK STATE; United
States of America, Defendants.

1:23-CV-00060 (MAD/CFH)
|
Signed October 18, 2023

**Attorneys and Law Firms**

HENRY COX, 08-B-1418, Upstate Correctional Facility, P.O. Box 2001, Malone, New York 12953, Plaintiff pro se.

### MEMORANDUM-DECISION AND ORDER

Mae A. D'Agostino, United States District Judge:

### I. INTRODUCTION

**\*1** On January 17, 2023, *pro se* Plaintiff Henry Cox commenced this action against the State of New York, in its "full capacity," and the United States of America, Federal Agencies, pursuant to 42 U.S.C. § 1983. *See* Dkt. No. 1. Plaintiff alleges that "his arrest, prosecution, incarceration, and sentence—and the arrests, prosecutions, incarcerations, and sentences of people of color in general—violate his First, Fifth, Eighth, and Fourteenth Amendment rights." *Id.* at 5. Plaintiff subsequently moved for leave to proceed *in forma pauperis* ("IFP"). *See* Dkt. No. 2. Magistrate Judge Christian F. Hummel conducted an initial review of the complaint and issued a Report-Recommendation and Order granting Plaintiff's IFP motion and recommending that Plaintiff's complaint be dismissed for failure to state a cognizable claim with leave to amend. *See* Dkt. No. 9. Plaintiff subsequently filed timely objections to the Report-Recommendation and Order, as well as a proposed amended complaint. *See* Dkt. Nos. 10, 12.

For the below-stated reasons, the Court adopts the Report-Recommendation and Order in its entirety. Additionally, upon review, Plaintiff's proposed amended complaint fails to cure the deficiencies outlined in Magistrate Judge Hummel's Report-Recommendation and Order, and this action is dismissed with prejudice.

### II. BACKGROUND

For a complete recitation of relevant background as alleged in the initial complaint, the Court refers to Magistrate Judge Hummel's Report-Recommendation and Order. *See* Dkt. No. 9.

### III. DISCUSSION

**A. Standard of Review**

When a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In making this determination, "the court has the duty to show liberality towards *pro se* litigants," however, "there is a responsibility on the court to determine that a claim has some arguable basis in law before permitting a plaintiff to proceed with an action in forma pauperis." *Moreman v. Douglas*, 848 F. Supp. 332, 333–34 (N.D.N.Y. 1994) (internal citations omitted).

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "de novo determination of those portions of the report or specific proposed findings or recommendation to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted); *see also McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendation made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**\*2** Since Plaintiff is proceeding *pro se*, the Court must review his pleading under a more lenient standard than that applied to " 'formal pleadings drafted by lawyers.' "

*Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quotation omitted). The Second Circuit has held that the court is obligated to "make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). Thus, a "document filed *pro se* is 'to be liberally construed,' ... and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**B. Plaintiff's Objection and Proposed Amended Complaint**

In response to Magistrate Judge Hummel's Report-Recommendation and Order, Plaintiff filed timely objections in the manner directed by the Court. *See* Dkt. No. 10. However, following Magistrate Judge Hummel's Report-Recommendation and Order, Plaintiff also filed a proposed amended complaint. *See* Dkt. No. 12. While Plaintiff filed the proposed amended complaint prior to a final decision on the Report-Recommendation and Order, the Court has reviewed same and finds that Plaintiff's objections and amended complaint fail for all the same reasons provided in Magistrate Judge Hummel's Report-Recommendation and Order. *See* Dkt. Nos. 9, 12.

Plaintiff's objections lack specificity and rather reaffirm the deficient arguments made in his original complaint. *See* Dkt. No. 10. Specifically, Plaintiff provides that his "objection stands against the entire order." *See id.* at 1. Further asserting that "a few of [his] arguments was [sic] misinterpreted" and urging the Court to "reread his argument." *See id.* Given the general and conclusory nature of these objections, the Court has reviewed the Report-Recommendation and Order for clear error and has found none. *O'Diah*, 2011 WL 933846, at *1 (citations and footnote omitted); *McAllan*, 517 F. Supp. 2d at 679.

Plaintiff's amended complaint proceeds in the same general and conclusory manner as his original complaint and objection, merely restating those same arguments upon which no cognizable claim can be asserted. *See* Dkt. Nos. 9, 10, 12. In this context, Plaintiff's proposed amended complaint makes virtually no attempt to replead his claims. *See* Dkt. No. 9. Rather than curing the deficiencies set out by Magistrate

Judge Hummel in the Report-Recommendation and Order, Plaintiff insists in his objection that "[t]his can be challenged under 1983," and uses his proposed amended complaint to recite the same arguments asserted in his original complaint. *See* Dkt. No. 10, 12. Moreover, Plaintiff's proposed amended complaint fails for all the same reasons stated in Magistrate Judge Hummel's Report-Recommendation and Order and Plaintiff's claims are dismissed for failure to state a claim. *See* Dkt. No. 9.

Ordinarily, a court should not dismiss the complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991). However, Plaintiff has already been given an opportunity to replead his claims and persists in his mistaken belief that they may be brought under 42 U.S.C. § 1983. *See* Dkt. Nos. 10, 12. Considering the Court reviewed those claims in Plaintiff's proposed amended complaint, even a liberal reading of Plaintiff's allegations fails to infer that a valid claim might be stated. *See* *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999). As such, Plaintiff's claims are dismissed without leave to amend.

**IV. CONCLUSION**

**\*3** After carefully reviewing the entire record in this matter and the applicable law, and for the above-state reasons the Court hereby

**ORDERS** that Magistrate Judge Hummel's Report-Recommendation and Order (Dkt. No. 9) is **ADOPTED in its entirety** for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiff's amended complaint (Dkt. No. 2) is **DISMISSED with prejudice**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close the case; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon Plaintiff in accordance with Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2023 WL 6862505

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

---

2023 WL 8003478
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

David Carmine LETTIERI, Plaintiff,

v.

The BROOME COUNTY HUMANE
SOCIETY, Department of Justice, and
Federal Bureau of Investigation, Defendants.

David Carmine Lettieri, Plaintiff,

v.

James Quinn Auricchio, Michael J. Roemer, Lawrence
Joseph Vilardo, and Paul E. Bonanno, Defendants.

23-CV-07777 (HG) (MMH), 23-CV-07830 (HG) (MMH)
|
Signed November 17, 2023

**Attorneys and Law Firms**

David Carmine Lettieri, Lockport, NY, Pro Se.

### MEMORANDUM & ORDER

HECTOR GONZALEZ, United States District Judge:

**\*1** The Court previously dismissed without prejudice these two lawsuits filed by Plaintiff, who is incarcerated in a county jail in the Western District of New York while awaiting sentencing for a conviction of enticement of a minor in violation of 18 U.S.C. § 2422(b). *See United States v. Lettieri*, No. 21-cr-20, 2023 WL 6531514, at \*1 (W.D.N.Y. Oct. 6, 2023) (denying plaintiff's post-trial motions for judgment of acquittal or for a new trial). The Court dismissed both of these cases, pursuant to the three-strikes rule in 28 U.S.C. § 1915(g), because Plaintiff sought *in forma pauperis* status but had already brought three lawsuits that had been dismissed *sua sponte* as frivolous or for failure to state a claim. Plaintiff has responded by filing, in both cases, motions for reconsideration and, alternatively, notices of appeal.

The Court denies Plaintiff's motions for reconsideration. Plaintiff incorrectly argues that the prison mailbox rule means that each of these two cases was deemed filed before he received the third dismissal relied upon by the Court to invoke the three-strikes rule. But when Plaintiff signed each of the complaints in these two cases, he dated them

September 25 and 26, respectively, so those are the earliest dates that he could have delivered them to the authorities where he is incarcerated to be mailed to the Court. The latest of the dismissals in Plaintiff's prior cases relied upon by the Court—*i.e.*, his third strike—came in a decision dated September 21, 2023, and a judgment was entered the same day. Therefore, Plaintiff had accumulated three strikes before he delivered either of his complaints in these two cases to authorities at the facility where he is incarcerated. Plaintiff's confidence that at least one of those decisions will be overturned on appeal does not prevent him from having accumulated three strikes. The Supreme Court has held that, when counting whether a plaintiff has received three strikes, "the courts must count [a] dismissal even though it remains pending on appeal." *Coleman v. Tollefson*, 575 U.S. 532, 534 (2015). Plaintiff has not cured his ineligibility for *in forma pauperis* status by paying the Court's filing fee, so the Court's dismissal of these two cases based on the three-strikes rule still stands.

In each motion for reconsideration, Plaintiff attempts to argue why venue would be proper in this District. For example, he argues that the dog that the Broome County Humane Society allegedly stole from a relative at a location in the Northern District of New York previously lived most of its life in Queens County. He also asserts that the judges and attorneys involved with his criminal trial in the Western District of New York were part of a wide-ranging "RICO conspiracy," but he provides no explanation as to how some aspect of that alleged conspiracy supposedly took place in this District. The Court does not find either of these two venue arguments to be valid. But even if Plaintiff's attempts to demonstrate proper venue in this District were successful, the Court still would not reconsider the dismissal of Plaintiff's cases because showing that venue is proper would not fix Plaintiff's ineligibility for *in forma pauperis* status and his failure to pay the filing fees to commence these two cases.

### CONCLUSION

**\*2** For the reasons set forth above, Plaintiff's motions for reconsideration are denied. Plaintiff's cases remain dismissed without prejudice pursuant to 28 U.S.C. § 1915(g). The Clerk of Court is respectfully directed to mail a copy of this order to Plaintiff. Since Plaintiff filed notices of appeal concurrently with his motions for reconsideration, those notices of appeal become effective as of the date of this

order denying the motions. *See* Fed. R. App. P. 4(a)(4)(B) (i). However, Plaintiff must either pay the $505.00 appellate filing fee for each case or obtain from the Second Circuit leave to appeal *in forma pauperis* because the Court reiterates its prior holding that any appeals from the Court's prior dismissal order, or this order denying Plaintiff's motions for reconsideration, would not be taken in good faith, and the Court therefore denies *in forma pauperis* status for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). Alternatively, since the Court's dismissal of these cases is without prejudice, Plaintiff may commence these lawsuits by filing new complaints in a district where venue would be proper and by paying that district's filing fee.

SO ORDERED.

**All Citations**

Slip Copy, 2023 WL 8003478

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.